## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun, | Case No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| City of Minneapolis, a Minnesota municipality, | |
| Defendant. | |

The plaintiffs for their Complaint allege as follows:

### Introduction

When an unexpected or unplanned pregnancy occurs, a woman might consider terminating her pregnancy through an abortion. When that happens, Pro-Life Action Ministries ("PLAM"), an interdenominational Christian organization, believes she is considering the killing of an unborn human being. The thought of having an abortion could lead her to the Minneapolis Planned Parenthood abortion facility. Yet, she may be unaware that there are alternatives to abortion, other resources exist, and that others care. PLAM volunteers would give her written information regarding her choices, the alternatives, the love and the care that exist for her and her unborn child.

PLAM ministers to these women in crisis through its trained sidewalk counselors. Sidewalk counselors meet these women outside the Minneapolis Planned Parenthood facility. When met on the sidewalk, sidewalk counselors walk up to the woman and offer written materials with extensive resources available to help her and verbally confirm these

1

resources while offering her help, ministering to her, and telling her that she does have a choice. They would let her know that people care about her, love her, and will help her and her unborn child. When a woman drives into the parking lot, PLAM volunteers or staff members would wave and flag her down to stop her in the driveway seeking a moment to connect. Each stop is a physical disruption of the woman in crisis from entering the facility.

Importantly, the City of Minneapolis knows of PLAM's ministry and work.  Here, the City of Minneapolis, through the enactment of Chapter 405 of the City Code, has created exclusion zones to prohibit any further exchanges between PLAM's ministries to a woman in crisis. The City prohibits sidewalk counseling through created driveway and sidewalk exclusion zones making the interaction of PLAM's ministry illegal. This case seeks to restore the constitutional rights of PLAM to conduct its life-saving sidewalk ministry within a traditional public forum.

The plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun bring this action seeking declaratory and injunctive relief under 42 U.S.C. § 1983 to challenge the constitutionality of Chapter 405 of the Minneapolis City Code. Declaratory and injunctive relief are sought for the violation of free speech, the right of expressive association, and the free exercise of religion as protected rights under the First Amendment of the U.S. Constitution.

## Parties

1.      Plaintiff Pro-Life Action Ministries (PLAM) is a Minnesota non-profit corporation. Founded initially as P.E.A.C.E. of Minnesota in 1981, it changed its name to Pro-Life Action Ministries in 1986. The organization works through its staff and volunteers

to save lives from abortion, infanticide, and euthanasia through peaceful direct-action and educational projects. PLAM is best known for its daily presence of staff or volunteers in front of abortion facilities offering prayer, love, support, and alternatives to abortion-bound mothers.

2.      PLAM established one of the first organized sidewalk counseling programs (sidewalk counseling had already been taking place in many locations, but more as individuals filling the void) in the nation. Shortly after coming into existence, PLAM was training new sidewalk counselors on a national basis. It has built one of the most comprehensive sidewalk counseling programs in the country. PLAM staff and volunteers peacefully reach out to women experiencing an unplanned pregnancy with love, truth, and support as they enter abortion facilities.

3.      PLAM is an interdenominational Christian organization dedicated to publicly defending the sanctity of human life. As such, PLAM, its staff and volunteers believe it is their assignment to serve and assist God's family in fulfilling His plan as found in I Chronicles 28:20: "Be strong and courageous and do it. Do not be afraid and do not be dismayed, for the LORD God, even my God, is with you. He will not leave you or forsake you, until all the work for the service of the house of the LORD is finished."

4.      Plaintiff Lucy Maloney is PLAM's Communications Manager. She has and continues to engage in sidewalk counseling associated with the intervention with pregnant women entering into abortion clinics, including the Minneapolis Planned Parenthood facility. When doing sidewalk counseling, from time to time, Maloney does so with PLAM volunteers. Maloney has personally ministered to mothers, and even fathers, outside the

3

Minneapolis Planned Parenthood facility to connect with them. She has offered information regarding free resources for supplies, financial help, housing, food, medical and adoption services, abortion pill reversal, and other related services, and prayer to let the pregnant woman know that others care about her, love her, and will help her and her unborn child.

5.      Maloney believes that she has an assignment to serve and assist God's family in fulfilling His plan as found in I Chronicles 28:20: "Be strong and courageous and do it. Do not be afraid and do not be dismayed, for the LORD God, even my God, is with you. He will not leave you or forsake you, until all the work for the service of the house of the LORD is finished."

6.      Plaintiff Thomas Wilkin the Sidewalk Counseling Manager of Pro-Life Action Ministries. He has and continues to do sidewalk counseling where he engages with pregnant women and others entering into abortion clinics, including the Minneapolis Planned Parenthood facility. The Minneapolis Planned Parenthood facility is located at 1200 Lagoon Ave, Minneapolis, Minnesota, 55408. He also does sidewalk counseling with PLAM volunteers and trains volunteers as well. Wilkin has personally ministered to mothers, and even fathers, outside the Minneapolis Planned Parenthood facility to connect with them. He offers compassion, not condemnation, and prayer to pregnant women who have found themselves in the situation that has brought them to an abortion facility and prays silently for them while offering sidewalk counseling.

7.      Wilkin believes that he has an assignment to serve and assist God's family in fulfilling His plan as found in I Chronicles 28:20: "Be strong and courageous and do it. Do not be afraid and do not be dismayed, for the LORD God, even my God, is with you. He

will not leave you or forsake you, until all the work for the service of the house of the LORD is finished."

8.     Plaintiff Debra Braun has been the Education Director of Pro-Life Action Ministries since 1986. Braun, as a PLAM staff person, has done sidewalk counseling outside abortion centers on a regular basis since 1986, including the Minneapolis Planned Parenthood facility. When she engages in sidewalk counseling, Braun also counsels with PLAM volunteers. Meanwhile, Braun has also trained hundreds of people in sidewalk counseling techniques. Finally, Braun is the editor of *Pro-Life Action News* and *Sidewalk Counseling News*, pro-life newsletters.

9.     Braun believes that she has an assignment to serve and assist God's family in fulfilling His plan as found in I Chronicles 28:20: "Be strong and courageous and do it. Do not be afraid and do not be dismayed, for the LORD God, even my God, is with you. He will not leave you or forsake you, until all the work for the service of the house of the LORD is finished."

10.     Defendant, City of Minneapolis, is a Minnesota municipality located in Hennepin County, Minnesota.

## Jurisdiction

11.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 (civil rights statutes) and the First Amendment of the United States Constitution.

12.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, Federal Rules of Civil Procedure 57 and 65, and has general legal and equitable powers.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 and other applicable law, because the alleged deprivations of PLAM's constitutional rights occurred in Hennepin County located within this District of Minnesota, and future deprivations of its constitutional rights are threatened and likely to occur in this District.

## Constitutional and City Code Provisions at Issue

14.     The First Amendment of the United States Constitution is accurately quoted, in part, stating that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

15.     Minneapolis City Code (Minn.) § 405.20, is accurately quoted, in part:

> **Disrupting access to reproductive healthcare facilities prohibited**. No person shall knowingly physically disrupt any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so, except:
> (1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility;
> (2) When using the driveway to move from the reproductive healthcare facility to the street or vice versa….

Exhibit 1 attached.

16.     Minneapolis City Code (Minn.) § 405.30, is accurately quoted, in part:

6

**Occupying driveways prohibited.** No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours, except:

(1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility….

Exhibit 1 attached.

## Facts

### I. The ministry of sidewalk counseling is a peaceful interaction with a pregnant woman to convey alternatives to abortion.

17. As a practice of their faith, Maloney, Wilkin, Braun, and PLAM volunteers have engaged in sidewalk counseling as part of their ministry outside the Minneapolis Planned Parenthood abortion facility since it started offering abortions at its present address, 1200 Lagoon Ave, Minneapolis, Minnesota.

18. PLAM staff or volunteers have frequently engaged in sidewalk counseling as part of their ministry outside of the Minneapolis Planned Parenthood facility.

19. Sidewalk counseling involves offering both verbal communication and written materials outlining alternatives to abortion and help for anyone wishing to pursue those alternatives.

20. Doing sidewalk counseling, Maloney, Wilkin, Braun, and PLAM staff members or volunteers believe they are answering God's call to courageous action for their unborn brothers and sisters.

21. Maloney, Wilkin, Braun, and PLAM volunteers typically initiate a conversation with would-be Planned Parenthood patients by asking if they would like some literature.

22.     Maloney, Wilkin, Braun, and PLAM volunteers inform women and their partners or companions, if any, of other life choices available to them for the unborn child other than abortion. This includes adoption, housing options, child care options, agency support, non-profit organizational assistance, including pre-natal care or services, parenting resources including diapers, formula, clothes, parenting classes, counseling and more, including information about child development that shows parents how the child has developed at different stages of their pregnancy. *See e.g.,* **Exhibits** (brochures).

23.     In addition, Wilkin, as well as other PLAM volunteers or staff, would often still warn those entering the Planned Parenthood facility seeking services other than for an abortion, that they are doing business with the facility and, hence, supporting an abortion provider. Such services include, but are not limited to pap smears, contraception, or other health-related services. Even then, Wilkin and other PLAM volunteers or staff, would refer them to alternative ethical sexual health resources. PLAM literature is offered "just in case" the person ever found herself in a tough situation in deciding whether to have an abortion to recognize that there are alternatives.

24.     Moreover, the only way to know if a woman might be seeking an abortion is to initiate a conversation.

25.     Regardless, during any conversation, Maloney, Wilkin, Braun, and PLAM volunteers consider it essential to maintain a caring demeanor, a calm tone of voice, and direct eye contact. They believe that this is the most effective means of communicating to dissuade a woman from having an abortion.

8

26.     Sidewalk counseling ministry is not meant to be loud, obnoxious, nor confrontational. These mannerisms are counter-productive when speaking with a woman or her partner or companion as they enter the Planned Parenthood facility.

27.     Conversely, Planned Parenthood volunteers have repeatedly initiated confrontational tactics to interfere with PLAM staff or volunteers, including making aggressive moves in which PLAM staff or volunteers feel physically threatened. In such cases, Planned Parenthood does nothing to curtail such outrageous tactics and, in fact, appears to encourage it.

28.     Maloney, Wilkin, Braun, and PLAM volunteers, in their sidewalk counseling ministry, require direct, even if momentary, interaction with a woman entering the Minneapolis Planned Parenthood facility whether it be at the facility's front door or driveway leading to the facility's back door off of the facility's parking lot. Their actions are deliberate, ultimately causing some delay entering into the abortion facility to talk but not to deliberately block them from entering the facility.

29.     When Maloney, Wilkin, Braun, and PLAM volunteers approach a woman on the sidewalk heading for the Planned Parenthood facility, they will approach the woman and place themselves in a position to initiate a conversation. Their actions are deliberate ultimately causing some delay entering into the abortion facility to talk but not to deliberately block them from entering the facility.

30.     Likewise, Maloney, Wilkin, Braun, PLAM staff and volunteers will flag down a car or hold out literature as it enters the driveway of the Planned Parenthood facility. If the car stops, it will ultimately delay the woman's entrance into the facility's parking lot. At that

time, Maloney, Wilkin, Braun, and PLAM volunteers will have an opportunity to speak with the woman briefly and to give them literature.

31.    An example of a driveway encounter is shown below in the sequence of still shots of footage from a Minneapolis Planned Parenthood facility security camera:







32.     The Minneapolis Planned Parenthood security camera footage was presented to public officials during public hearings prior to the enactment of Chapter 405.

33.     The still shots reflect how PLAM staff or volunteers signal a car, approach the car, and talk to the occupant(s) or hand the occupant(s) literature or both.

34.     The still shots show that the driveway and sidewalk intersect.

35.     The driveway to the entrance to the Minneapolis Planned Parenthood facility is part of the sidewalk.

36.     Here are two other photographs taken at the Minneapolis Planned Parenthood facility:





37.     The still shots show PLAM staff and volunteers walking onto the driveway.

38.     Emerson Avenue South, for the relevant Minneapolis city block here, has no parking on the east side of the street.

39.     The still shot below shows how a car, traveling north-to-south on Emerson Avenue South, has room to maneuver around a car turning into the driveway of the Minneapolis Planned Parenthood facility. Any car turning into the driveway or stopping in the driveway does not interfere with traffic.



40.     PLAM staff or volunteers that approach, stop, speak or hand out literature or both to an occupant(s) in a car that has stopped in the driveway does not interfere with Emerson Avenue South traffic.



41.     An accurate aerial depiction of the Minneapolis Planned Parenthood facility is provided above. Plaintiff Maloney obtained the photo from Google Earth.

42.     Maloney made the identifying marks. The markings show and mean the following: "Red"–no parking; "Yellow Square"–driveway entrance; the two "Solid Yellow Lines"–entrances to the Planned Parenthood facility; "Blue Square"–where Cub Foods delivery trucks use the intersection to back into the loading dock; and "Circled in Red"–a truck in the loading dock.

43.     Wilkins and Maloney have observed that Cub Foods delivery trucks interfere with Emerson Avenue South traffic on a regular basis.



44.     Thomas Wilkin took a video of the Cub Foods delivery truck on January 19, 2023. The video was taken looking north on Emerson Avenue South. The Minneapolis Planned Parenthood facility is to the left of the sidewalk.

45.     The still shot above is an example showing how Emerson Avenue South is blocked, not by PLAM staff members or volunteers, but by the delivery truck. The still shot of the video also shows the truck blocking a car entering the intersection to the north.

46.     PLAM staff members or volunteers rarely approach cars that have stopped on Emerson Avenue South to speak with people interested in their mission or to receive literature.

47.     Spectacularly, through the ministry and intercessions of PLAM volunteers or staff such as Maloney, Wilkins, and Braun, more than 3,600 babies have been rescued from abortion. It is also their belief that every time a woman chooses to leave the abortion facility and give life to her baby, another person is given a chance to develop, grow, dream and make a difference in our world. To them, baby-saved stories are proof that God is working in PLAM's ministry.

48.     PLAM staff and volunteers, specifically Maloney, Wilkins, and Braun, consider sidewalk ministry and counseling as part of their sincerely held religious beliefs and are undertaken in accordance with those same beliefs.

II.     **The City of Minneapolis specifically enacts an ordinance targeting the success of PLAM, its staff members, volunteers, and others similarly situated.**

49.     Given the purpose of PLAM, its staff members and volunteers, in offering alternatives consistent with their religious beliefs, and their successes, the City of Minneapolis, nevertheless, sought to prohibit PLAM's activities outside of the Minneapolis Planned Parenthood facility.

50.     In November 2022, the City of Minneapolis enacted as a new City ordinance, Chapter 405.

51.     Chapter 405 specifically relates to reproductive healthcare facilities.

52.     Chapter 405.10, governing definitions, identifies the meaning of "reproductive healthcare" facility. The definition is accurately quoted as follows: "a facility, other than a hospital, where abortions are offered or performed in accordance with state law, and shall include, but not be limited to, the structures, grounds, and parking facilities occupying the same lot as the facility."

53.     The definition does not include other facilities that provide other related reproductive healthcare for women. This would include such things or services as, but are not limited to, pap smears, contraception, or other health-related services. Even then, Wilkin and other PLAM volunteers or staff would refer them to alternative ethical sexual health resources.

54.     The Minneapolis Planned Parenthood facility, located at 1200 Lagoon Ave, Minneapolis, Minnesota, 55408, is the only Planned Parenthood facility in Minneapolis that performs abortions. By definition under Chapter 405.10, this facility is a "reproductive healthcare facility."

55.     When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's political opposition to abortion at Planned Parenthood abortion facilities.

56.     When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's sidewalk counseling ministry at Planned Parenthood abortion facilities.

57. When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's picketing activities that reflect opposition to abortion at Planned Parenthood abortion facilities.

58. When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's leafletting activities at Planned Parenthood abortion facilities.

59. Minneapolis City Councilmember Lisa Goodman was the chief author of Chapter 405.

60. Goodman made it publically known that the enactment of Chapter 405 was a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide.

61. Chapter 405.20 of the Minneapolis City Code is entitled "Disrupting access to reproductive healthcare facilities prohibited." It is accurately quoted, in part, as follows:

> No person shall knowingly physically disrupt any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so, except:
>
> (3) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility;
>
> (4) When using the driveway to move from the reproductive healthcare facility to the street or vice versa….

Minneapolis City Code (Minn.) § 405.20, (1), (2). Exhibit 1 attached.

62. The new Minneapolis ordinance makes it illegal to enter entrances to abortion clinics. Chapter 405.30 of the Minneapolis City Code is entitled "Occupying driveways prohibited." It is accurately quoted, in part, as follows:

No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours, except:

(2) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility....

Minneapolis City Code (Minn.) § 405.30, (1). Exhibit 1 attached.

63.     City of Minneapolis Chapter 405.10 defines "driveway." It is accurately quoted as follows:

*Driveway* shall mean that portion of a right-of-way, including a sidewalk or bikeway, that provides vehicular access from a street to a reproductive healthcare facility.

Minneapolis City Code (Minn.) § 405.10 (original emphasis). Exhibit 1 attached.

64.     Streets and sidewalks are "public places."

65.     Streets and sidewalks, as "public places" are historically associated with the free exercise of expressive activities.

66.     Streets and sidewalks, as "public places," are historically associated with the free exercise of expressive activities and are considered to be "public forums."

67.     City of Minneapolis Chapter 405.10 defines "disrupt." It is accurately quoted as follows:

*Disrupt* shall mean obstruct, impede, or hinder.

Minneapolis City Code (Minn.) § 405.10 (original emphasis). Exhibit 1 attached.

68.     With the enactment of Chapter 405, Goodman was quoted as stating, "Never in my 25 years of being here have I ever gotten to do something as meaningful in the reproductive rights movement. I am proud of the fact that the institution, the mayor, the

18

administration, the council, have come to an agreement that women want access. We want the state to do something, but we want women to have access right now."

69. Besides sidewalk counseling, from time to time, PLAM will organize and engage in peaceful protests against abortion.

70. The peaceful protests are intended to draw attention to signs or to present hand-held literature from protesters to passerby. It is knowingly done. Moreover, it could result in disrupting the flow of any other person walking on the sidewalk as they enter or exit an abortion facility, where protestors will knowingly seek to draw attention to their messaging, knowingly seek to engage in a conversation, or knowingly seek to hand out literature.

71. For example, PLAM holds a "40 Days for Life," prayer vigil at the Vandalia Planned Parenthood abortion facility, in Saint Paul, twice each year during Lent and Fall season. This year the prayer vigil was scheduled to be held from February 22, 2023 to April 2, 2023. The vigil is conducted on the public sidewalks outside the Saint Paul Planned Parenthood facility. Sidewalk counseling also continues during these event days.

72. Other prayer vigils will be planned for future dates.

73. PLAM hopes to hold similar events that involve picketing or prayer vigils on the sidewalks at the Minneapolis Planned Parenthood facility in the future.

74. The photo below shows PLAM volunteers at a prayer vigil at the Saint Paul Planned Parenthood abortion facility during a "40 Days for Life" event.



75.     As another example, each year, PLAM holds a "Jericho March" around the Saint Paul Planned Parenthood abortion facility.

76.     The Jericho March mimics the biblical battle of Jericho (Joshua 6). The biblical story tells of how God told Joshua to lead the Israelites in a march around Jeircho for seven days. On the seventh day, the walls of Jericho crumbled: "By faith the walls of Jericho fell, after the army had marched around them for seven days." Hebrews 11:30.

77.     PLAM's modern-day Jericho March is a march around the Saint Paul Planned Parenthood abortion facility. It begins in silence once a day for six days. On the seventh day, the march begins in silence, around the block six times. On the seventh walk around the block, PLAM staff members, volunteers, and other participants make a lot of noise. PLAM hopes to hold a Jericho March in the future at the Minneapolis Planned Parenthood facility.

78.     The Jericho March this year was scheduled for March 27, 2023 to April 2, 2023.

79.     Others will be planned for the future on different dates.

80.     The photo below shows PLAM volunteers on a "Jericho March" at the Saint Paul Planned Parenthood abortion facility:



81.     Although PLAM does not expect the walls of Planned Parenthood to crumble literally, its members and volunteers believe the idea of prayer will reach hardened hearts that will figuratively crumble because of prayers to God to end abortion.

82.     City of Minneapolis Chapter 405, specifically, 405.20, has created an exclusion zone of the public sidewalk outside the Minneapolis Planned Parenthood facility. It prohibits Maloney, Wilkin, Braun, PLAM staff and volunteers from speaking to women and offering literature in that zone.

83.     City of Minneapolis Chapter 405, specifically, 405.20 creates an exclusion zone for the public sidewalk outside the Minneapolis Planned Parenthood facility (along Emerson Avenue South in above aerial photograph). It prohibits Maloney, Wilkin, Braun, PLAM staff and volunteers from protesting against abortions as when staff members and volunteers picket on the sidewalk outside the facility.

84.     Such picketing is to draw attention against abortion using signs or during the picketing activity to present literature from protesters to passerby on the sidewalk or driveway including those seeking to enter the facility. It is knowingly done.

85.     Although not trying to block the person, PLAM picketing or marches could or will result in disrupting the flow of any other person walking on the sidewalk or in the driveway as they enter or exit an abortion facility, where protestors will knowingly seek to draw attention to their messaging.

86.     At times during picketing or other marches, while drawing attention to signs or other messaging, PLAM staff members or volunteers will continue to present hand-held literature to passerby on the sidewalk or the abortion facility's driveway. It is knowingly done.

87.     PLAM picketing or other marches messaging its opposition to abortion will continue in the future.

88.     City of Minneapolis Chapter 405, specifically, § 405.20 creates an exclusion zone in the driveway. (Yellow Square in Google aerial picture above).

89.     As it is denoted, the driveway "exclusion zone" is that area on the public way or sidewalk serving as the only entrance and exit from the parking lot used by the Planned Parenthood facility. All points of the driveway intersect and connect with the public sidewalk running parallel to Emerson Avenue South. (See Google aerial picture above).

90.     The City of Minneapolis Chapter 405, specifically § 405.20 prohibits anyone from entering the driveway's exclusion zone except to "cross[ ]…completely from one side of the driveway to the other side without stopping or slowing and continuing to a

destination beyond the furthest lot line of the [Minneapolis Planned Parenthood abortion] facility."

91.     The photo below is from Hennepin County Property records. Outlined in blue is the parcel lot of the Minneapolis Planned Parenthood facility at 1200 Lagoon Avenue, Minneapolis. It shows Lagoon Avenue to the south and 29th Street West to the North. Emerson Avenue South is to the East and Freemont Avenue South to the West.



https://gis.hennepin.us/property/?pid=3302924430226 (Last visited Mar. 23, 2023).

92.     The furthest lot line means that Maloney, Wilkin, Braun, PLAM staff and volunteers on the Emerson Avenue South sidewalk parallel to the Minneapolis Planned Parenthood facility, when conducting sidewalk counseling ministry and when a car stops in the driveway, must continue to cross Lagoon Avenue to the other side of the street, to what they assume is furthest lot line.

93.     This also means that Maloney, Wilkin, Braun, PLAM staff and volunteers on the Emerson Avenue South sidewalk parallel to the Minneapolis Planned Parenthood facility, in the above diagram, if going from north to south they must continue to and cross 29th Street West to the other side of the street. If going from south to north, to what they assume is the furthest lot line, causing them to cross Lagoon Avenue.

94.     Entering the exclusion zone driveway violates § 405.30.

95.     The exclusion zone effectively prohibits persons from walking onto or into the driveway except as expressly permitted under the exceptions of § 405.30.

96.     Maloney, Wilkin, Braun, PLAM staff members and volunteers do not fall within the exceptions of § 405.30.

97.     The effect of the driveway exclusion zone is to prohibit any access by Maloney, Wilkin, Braun, PLAM staff members and volunteers as opponents to abortion.

98.     The exclusion zones created under Chapter 405 prohibits Maloney, Wilkin, Braun, PLAM staff members and volunteers doing sidewalk counseling from speaking, praying, or interacting with those entering the Minneapolis Planned Parenthood facility, including and without limitation, even those who invite or otherwise solicit contact with the Plaintiffs within the exclusion zones.

99.     The exclusion zones created under Chapter 405 prevent Maloney, Wilkin, Braun, PLAM staff members and volunteers the ability to initiate the close, personal conversations they view as essential to their sidewalk counseling ministry within the exclusion zones.

100.     Another pernicious effect of the exclusion zone is to prohibit Maloney, Wilkin, Braun, PLAM staff members and volunteers from raising their voices from outside the zone at women entering or exiting the Planned Parenthood facility. This mode of communication is sharply at odds with the compassionate conversation and messaging the Plaintiffs wish to convey.

101.     Likewise, Minneapolis has created an exclusion zone that includes the entire sidewalk while picketing or marching under § 405.20 when they reach the driveway.

102.     The exclusion zones also make it substantially more difficult for women who are entering or exiting the Minneapolis Planned Parenthood facility seeking or planning an abortion to hear about abortion alternatives or PLAM messaging.

## Count I

**Violation of civil rights under 42 U.S.C. § 1983, for violation of freedom of speech, seeking declaratory, and permanent injunctive relief against the City of Minneapolis.**

103.     Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count I.

104.     The First Amendment of the U.S. Constitution guarantees, among other things, that government shall make no law "abridging the freedom of speech." U.S. Const., amend. I. It has been incorporated against the states. *Gitlaw v. New York,* 268 U.S. 652 (1925).

105.    Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on state violations of federal law and is accurately quoted, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

106.    This Court has statutory authority under 28 U.S.C. § 2201 to issue declaratory judgments.

107.    Public streets or sidewalks are considered a traditional public forum.

108.    The Minneapolis Planned Parenthood facility located at 1200 Lagoon Avenue, Minneapolis, is a reproductive healthcare facility in Minneapolis performing abortions, as defined under City of Minneapolis (Minn. ) § 405.10.

109.    Violations of Chapter 405 are issued through citations, subjecting the alleged violator to an administrative enforcement and hearing process. Civil fines and petty misdemeanor crimes can also be imposed. Minneapolis, Hennepin Cty, Minn., Admin. Enforcement and Hearing Process, §§ 2.10–2.120 (2021).

110.    Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage in sidewalk counseling at the Minneapolis Planned Parenthood facility.

111.    Maloney, Wilkin, Braun, and PLAM staff members and volunteers will wave down cars or hold out literature to stop them resulting in the cars stopping in the driveway at the Minneapolis Planned Parenthood facility.

112.    During sidewalk counseling either on the sidewalk or in the driveway, Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage women or their companions or both, in conversations about alternatives to abortion that could or will result in the physical disruption of those persons entering into the Planned Parenthood facility. They will also hand them literature about abortions and alternatives to abortion. *See e.g.,* **Exhibits** (brochures).

113.    In addition, Maloney, Wilkin, Braun, and PLAM staff members and volunteers will suggest to women to seek other ethical sexual health resources or clinics than those provided at the Minneapolis Planned Parenthood facility to avoid supporting the abortion facility.

114.    PLAM's sidewalk counseling has resulted in thousands of women changing their minds about going through with abortions. Many of these women have verbally expressed their deep gratitude to PLAM staff and volunteers for their presence and assistance on the sidewalk, especially after their babies are born.

115.    Women who seek abortions at the Minneapolis Planned Parenthood facility have a right to hear about alternatives to abortion and to hear PLAM's messaging about abortions or alternatives to abortion.

116.    Maloney, Wilkin, Braun, and PLAM staff members and volunteers have a right to speak to others about alternatives to abortion and PLAM's messaging about abortions or alternatives to abortion.

117.    Chapter 405 targets Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' sidewalk counseling.

118.    Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' sidewalk counseling is an object of Chapter 405.

119.    Because of Chapter 405's enactment, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have stopped their sidewalk counseling when cars are about to enter or exit the Minneapolis Planned Parenthood facility's driveway that intersects with the sidewalk.

120.    Besides sidewalk counseling, from time to time, PLAM will organize and engage in peaceful picketing, marches, or other types of protests against abortion. These events have occurred and will continue to occur in the future, including at the Minneapolis Planned Parenthood facility.

121.    City of Minneapolis public officials know that PLAM provides sidewalk counseling at Planned Parenthood facilities.

122.    City of Minneapolis public officials know that PLAM has held picketing, protests, or other marches against abortion at Planned Parenthood facilities, such as those held at the Saint Paul Planned Parenthood abortion facility.

123.    PLAM intends to hold protests, picketing, or other marches at the Minneapolis Planned Parenthood facility in the future.

124.    The peaceful protests in which Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage in or plan to engage in are intended to draw attention to signs or to present hand-held literature from protesters to passerby, all related to their opposition to abortion.

125.    Regardless of any law enacted in the State of Minnesota or federal law protecting abortion, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have the right to oppose those laws.

126.    Likewise, even with any suspension or possible repeal of Minnesota laws relating to abortions, such as waiting periods, where doctors or other health professionals would be required to provide abortion literature or related information, PLAM staff members and volunteers would be filling the state-created void through sidewalk counseling, picketing, marches, or other demonstrations. *See Dr. Jane Doe, et al. v. State of Minnesota, et al.,* Court File No. 62-CV-19-3868 Order and Memorandum (Judge Thomas A. Gilligan, Jr.).

127.    Picketing, protests, or other marches will also result in physically disrupting the flow of any other person walking on the sidewalk as they enter or exit an abortion facility, even for a moment, where protestors will knowingly seek to draw attention to their messaging, knowingly seek to engage in a conversation, or knowingly seek to hand out literature.

128.    Referring to the Minneapolis Planned Parenthood aerial photograph with Maloney's markings, by definition of City of Minneapolis (Minn.) § 405.30(1), in which occupying driveways is prohibited, Maloney, Wilkin, Braun, and PLAM staff members and volunteers cannot knowingly enter the driveway.

129.    The driveway is an exclusion zone created under Chapter 405.

130.    If Maloney, Wilkin, Braun, and PLAM staff members and volunteers enter the driveway, it cannot include any sidewalk counseling involving the stopping of cars to convey their messaging. Instead, they can only enter the driveway to go "completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility," as accurately quoted from § 405.30(1). The driveway is shown as the Yellow Square in the Google photo above.

131.    The driveway is an exclusion zone under § 405.30(1) for First Amendment activities relating to matters of public concern because for Maloney, Wilkin, Braun, and PLAM staff members and volunteers, physical disruption, as defined under Chapter 405, would occur. Having knowingly stopped a person would disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility.

132.    As another example of the created Chapter 405 exclusion zone, potential candidates for elected office or campaign volunteers, under § 405.30(1), are unable to engage in a conversation with a woman or companion or both entering or exiting the Minneapolis Planned Parenthood facility either on the sidewalk or the driveway or both.

133.    Candidates can do so, not to engage in political activities, but only to cross "the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility," as accurately quoted from § 405.30(1).

134.    The driveway is an exclusion zone under § 405.30(1) for First Amendment activities relating to matters of public concern because for political candidates, physical

30

disruption, as defined under Chapter 405, would occur. Having knowingly stopped a person would disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility.

135.    All other persons engaged in other speech activities, such as seeking a signature on a petition or otherwise educating a person on other matters of public concern, by providing written materials, under § 405.30(1) are unable to engage in a conversation with a woman or companion or both entering or exiting the Minneapolis Planned Parenthood facility either on the sidewalk or the driveway or both.

136.    All other persons so engaged in other political speech activities must cross "the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility," as accurately quoted from § 405.30(1).

137.    For all other persons so engaged in other political speech activities, the driveway is an exclusion zone under § 405.30(1) for First Amendment activities relating to matters of public concern because physical disruption, as defined under Chapter 405, would occur. Having knowingly stopped a person would disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility.

138.    Likewise, the entire sidewalk facing Emerson Avenue South parallel to the Minneapolis Planned Parenthood facility, as shown in the photograph above, is an exclusion zone under Chapter 405, such as under § 405.20. Whether engaged in activities Maloney, Wilkin, Braun, and PLAM staff members and volunteers have described above, petitioning political candidates or any other person engaged in political speech activities cannot do so

31

because it would involve a physical disruption as defined under Chapter 405. Stopping of the individual would hinder, obstruct, or impede a person from entering the Planned Parenthood facility to discuss either the signing of a petition or engaging in conversation regarding matters of public concern.

139.    Chapter 405 creates exclusion zones for any type of First Amendment activity as previously described.

140.    Minneapolis City Ordinance Chapter 405, by creating exclusion zones at the Minneapolis Planned Parenthood facility, is also the City's direct effort as a matter of public policy, to thwart or block Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' efforts to speak to or hand literature to those women or their partners or companions who are in the process of entering or exiting Planned Parenthood's property. This prohibition thwarts the message of Maloney, Wilkin, Braun, and PLAM staff members and volunteers regarding alternatives to abortion or even the abortion debate.

141.    As the apparent principal author of Chapter 405, Minneapolis council member Lisa Goodman has been quoted as stating, "Never in my 25 years of being here have I ever gotten to do something as meaningful in the reproductive rights movement. I am proud of the fact that the institution, the mayor, the administration, the council, have come to an agreement that women want access. We want the state to do something, but we want women to have access right now." "New Minneapolis ordinance makes it illegal to block entrance to abortion clinics," Ryan Janke, Fargo, ND, USA / The Mighty 790 KFGO | KFGOttps://kfgo.com/2022/11/18/new-minneapolis-ordinance-makes-it-illegal-to-block-entrance-to-abortion-clinics/ (last visited Jan. 12, 2023).

142.    Goodman also made it publically known that the enactment of Chapter 405 was a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide. *Id.*

143.    Therefore, the legislative intent of Chapter 405 was to target Maloney, Wilkin, Braun, and PLAM staff members and volunteers, interfering with their right to speech while protecting speech on only one side of the abortion debate. The exclusion zones ensure Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' position on abortion at the Minneapolis Planned Parenthood facility is quashed.

144.    The City of Minneapolis is aware of PLAM's sidewalk counseling ministry at the Minneapolis Planned Parenthood facility.

145.    Through Goodman's public comments and purpose in having Chapter 405 passed, Minneapolis is against the sidewalk counseling ministry Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage in.

146.    Moreover, Chapter 405 has no consent provision when a woman or her companion or both agree to Maloney, Wilkin, Braun, and PLAM staff members and volunteers causing a disruption to hear their speech opposing abortion or even alternatives of ethical sexual health facilities. Stopping a person in the exclusion zones is a violation of Chapter 405 because it is disrupting the person's physical advancement into the Planned Parenthood facility.

147.    City of Minneapolis Chapter 405 is insidious content and viewpoint speech gerrymandering designed to squelch dissenting speech and to squelch the practice of

sincerely held religious beliefs on the sidewalks or in the driveway of the Minneapolis

Planned Parenthood facility.

148.    Meanwhile, the City of Minneapolis already has an ordinance to prevent the

blocking of sidewalks. City of Minneapolis (Minn.) § 466.240:

> (a)No person or group of persons shall assemble or cause others to
> assemble on any sidewalk so as to obstruct the free passage of
> pedestrians thereon or interfere with the use thereof.
>
> (b)It shall be unlawful for any person individually or as a member of
> any group of persons to loiter, stand, sit, lie or remain upon or within
> any street, sidewalk, crosswalk or other public way or otherwise occupy
> any portion thereof with the intent or purpose to block, obstruct or
> interfere with the free passage of any pedestrian thereon or the orderly
> free flow of vehicular traffic on said street or public way.
>
> (c)This section shall not be interpreted to restrict the lawful exercise of
> freedom of speech and assembly.
>
> (d) Violation of this section is a petit misdemeanor. (Code 1960, As
> Amend., § 408.090; 84-Or-069, § 1, 4-27-84)

https://library.municode.com/mn/minneapolis/codes/code_of_ordinances/376408?nodeI

d=MICOOR_TIT18TRCO_CH466INGE (last visited Jan. 17, 2023).

149.    With the passage of Chapter 405, the City of Minneapolis has not taken less

restrictive measures to combat purported ills that it contends required the passage of the

Ordinance.

150.    The City of Minneapolis has a less restrictive generally-applicable measure

which serves the same purpose: its sidewalk blocking prohibition under City of Minneapolis

(Minn.) § 466.240, quoted above.

151.    Instead, the City of Minneapolis created exclusion zones that involve both the driveway and sidewalk parallel to the Minneapolis Planned Parenthood facility facing Emerson Avenue South.

152.    The creation of the exclusion zones foreclosed all speech of Maloney, Wilkin, Braun, and PLAM staff members and volunteers to engage in conversations about abortion alternatives with others within the created exclusion zones, previously allowed before the enactment of the offending ordinance.

153.    The creation of the exclusion zones foreclosed all speech of Maloney, Wilkin, Braun, and PLAM staff members and volunteers to engage in picketing or marches regarding their opposition to abortion previously allowed before the enactment of the offending ordinance.

154.    As another example of the reach of Chapter 405, with its creation of exclusion zones foreclosed the political speech activities of petitioning candidates or all others previously allowed before the enactment of the offending ordinance.

155.    The creation of exclusion zones foreclosed the ability of others who wish to hear the messaging of either Maloney, Wilkin, Braun, and PLAM staff members and volunteers.

156.     The creation of exclusion zones foreclosed the ability of others who wish to hear the messaging of candidates or others regarding issues of public concern.

157.    The creation of the exclusion zones does not achieve a compelling governmental interest. For example, as the chief author of Chapter 405, Goodman

35

announced the ordinance's enactment as a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide.

158.    The creation of the exclusion zones through Chapter 405 fails to leave open alternative channels for communication of PLAM's members' and volunteers' message regarding or relating to alternatives to abortion or the abortion debate.

159.    Chapter 405 is vague and overly broad.

160.    Under § 405.10, the word "disrupt" "shall mean obstruct, impede, or hinder."

161.    "Physical" is not defined in Chapter 405. The definition "physical" is found in dictionaries, and in one, means as accurately quoted as follows: "of or relating to the body as opposed to the mind." *New Oxford American Dictionary* 1321 (Angus Stevenson, Christian A. Lindberg eds., 3rd ed., Oxford University Press 2010).

162.    Sidewalk demonstrations, by their nature, can or will result, even if momentarily, in the physical disruption or impediment, or otherwise hinder a person from entering (or exiting) the Minneapolis Planned Parenthood facility as sidewalk demonstrations, picketing, or marching, as previously described, which are knowingly intentional acts.

163.    Sidewalk counseling, by its nature and intent to get a person's attention and to initiate a conversation with that person, that can or will result in the physical disruption or impediment, or otherwise hinder a person from entering the Minneapolis Planned Parenthood facility. Sidewalk counseling ministry, as previously described, is a knowingly intentional act.

164.    The still shots below show how sidewalk counseling in the driveway will occur and result in the physical disruption of a vehicle entering into the Minneapolis Planned Parenthood facility:







165.    Chapter 405's definitions are broader than those found in the FACE Act of 1994 which defines "physical obstruction" under 18 USC § 248(e)(4) as accurately quoted here as the "means rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous."

166.    Regardless, Maloney, Wilkin, Braun, and PLAM staff members and volunteers can face civil and criminal penalties for violations of Chapter 405.

167.    With the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have also curtailed their free speech activities related to sidewalk counseling on the sidewalk where it intersects with the driveway. As a result, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have lost their ability to engage with cars entering or exiting the Minneapolis Planned Parenthood facility. They cannot initiate conversations or present literature within the exclusion zone.

168.    In fact, the exclusion zone creates added dangers to both the occupant(s) of the car and Maloney, Wilkin, Braun, and PLAM staff members and volunteers. Occupants

who wish to hear Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' messaging, they must stop in the street with on-coming traffic. Likewise, Maloney, Wilkin, Braun, and PLAM staff members and volunteers must then enter the street to speak to the car's occupant(s) or to hand out literature or both.

169.    As a result, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have curtailed their speech activities.

170.    Maloney, Wilkin, Braun, and PLAM staff members and volunteers will and plan to violate the prescriptions of Chapter 405, when necessary, to do their sidewalk counseling to meet the goals and objectives embodied in their ministry.

171.    Likewise, with the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have also curtailed their free speech activities, such as that relating to protests, picketing, or other marches in opposition to abortion at the Minneapolis Planned Parenthood facility.

172.    For example, in a recent PLAM demonstration at the Minneapolis Planned Parenthood facility, because of the created exclusion zones with the enactment of Chapter 405, the march did not stay on the sidewalk along Emerson Avenue South and could not cross the driveway to the facility. Instead, to avoid the consequences of the penalties for violating the ordinance, they marched in the street along the curb—without a permit.

173.    The photographs below show how the PLAM marchers had to revert to the street along the curb to avoid the Chapter 405 created exclusion zones:





174. Marching in the street creates its own dangers because of Chapter 405.

175. Even with the realization of penalties for violating Chapter 405, Maloney,

Wilkin, Braun, and PLAM staff members and volunteers continue and will continue to

engage in sidewalk counseling, however, where they seek to engage in their activities is proscribed by Chapter 405 of the Minneapolis City Code.

176.    With their activities to continue sidewalk counseling there is a credible threat of prosecution under Chapter 405. The City of Minneapolis has not disavowed or otherwise refused to enforce Chapter 405.

177.    Even with the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers continue and will continue to engage in protests, picketing, or other marches in opposition to abortion at the Minneapolis Planned Parenthood facility.

178.    Maloney, Wilkin, Braun, and PLAM need not expose themselves to arrest or prosecution in order to challenge Chapter 405 of the Minneapolis City Code.

179.    Maloney, Wilkin, Braun, and PLAM need not await the consummation of threatened injury to obtain preventive relief.

180.    Maloney, Wilkin, Braun, and PLAM have protected rights under the First Amendment's Free Speech Clause.

181.    Maloney, Wilkin, Braun, and PLAM have described in the preceding paragraphs their protected rights under the First Amendment's Free Speech Clause.

182.    Maloney, Wilkin, Braun, and PLAM face credible threats of future prosecution because of Chapter 405's chilling effect on their desire to exercise their right to free speech.

183.    Maloney, Wilkin, Braun, and PLAM have pled the impact to their protected rights under the First Amendment's Free Speech Clause with that of Chapter 405 of the Minneapolis City Code.

184.    Chapter 405 of the Minneapolis City Code interferes with Maloney's, Wilkin's, Braun's, and PLAM's protected rights under the First Amendment's Free Speech Clause.

185.    The judgment of this Court will serve a useful purpose in clarifying and settling the legal issues asserted by Maloney, Wilkin, Braun, and PLAM to protect their protected rights under the First Amendment's Free Speech Clause from application of Chapter 405 of the Minneapolis City Code.

186.    The judgment of this Court will terminate and afford Maloney, Wilkin, Braun, and PLAM the relief needed from the uncertainty, insecurity, and controversy that has given rise to these proceedings.

187.    Chapter 405 violates the Free Speech Clause of the First Amendment.

188.    Because Chapter 405 violates the Free Speech Clause of the First Amendment, it is unconstitutional.

189.    Chapter 405 is facially unconstitutional.

190.    Chapter 405 is unconstitutional as applied.

191.    Chapter 405 is overly broad and thus, unconstitutional.

192.    Chapter 405 is under-inclusive and thus, unconstitutional.

193.    Chapter 405 is vague and thus, unconstitutional.

194.

195.    Maloney, Wilkin, Braun, and PLAM request this Court to reach a favorable decision for declaratory judgment under 42 U.S.C. § 1983, or any other applicable law or both, issue injunctive relief, and award nominal damages (if appropriate), as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

## Count II

**Violation of civil rights under 42 U.S.C. § 1983, for violating the right of expressive association, seeking declaratory and permanent injunctive relief against the City of Minneapolis.**

196.    Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count II.

197.    The First Amendment of the U.S. Constitution guarantees, among other things, the right "of the people to peaceably to assemble." This guaranty has also been incorporated against the states. *DeJonge v. Oregon,* 299 U.S. 353 (1937).

198.    Assembly on public streets and sidewalks is among the guarantees protected by the First Amendment. *Shuttlesworth v. Birmingham,* 394 U.S. 147 (1969).

199.    Public streets or sidewalks are considered a traditional public forum.

200.    Under 42 U.S.C. § 1983, the statute provisions provide persons a federal cause of action based on state violations of federal law and is accurately quoted, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

201.    This Court has statutory authority under 28 U.S.C. § 2201 to issue declaratory judgments.

202.     Referring to the Minneapolis Planned Parenthood Google aerial photograph with Maloney's markings, by definition of City of Minneapolis (Minn.) § 405.30(1), occupying driveways is prohibited.

203.     Maloney, Wilkin, Braun, and PLAM staff members or volunteers cannot knowingly enter the driveway to associate with others regarding a woman's consideration of having an abortion and to consider alternatives, including offering ethical sexual health clinic alternatives.

204.     As previously described, the still shot below shows how sidewalk counseling in the driveway will occur and result in the physical disruption of a vehicle entering into the Minneapolis Planned Parenthood facility:



205.     In this manner, Maloney, Wilkin, Braun, and PLAM staff members and volunteers will associate with the occupant(s) in the stopped car regarding abortion, abortion alternatives, or ethical sexual health clinic alternatives.

206.     Chapter 405 of the Minneapolis City Code prohibits Maloney, Wilkin, Braun, and PLAM staff members or volunteers to enter the driveway unless they cross "the driveway completely from one side of the driveway to the other without stopping or slowing

and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility," as accurately quoted from § 405.30(1).

207.    Chapter 405 targets Maloney's, Wilkin's, Braun's, and PLAM staff members' and volunteers' sidewalk counseling.

208.    Maloney's, Wilkin's, Braun's, and PLAM staff members' and volunteers' sidewalk counseling is an object of Chapter 405.

209.    Because of Chapter 405's enactment, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have stopped their sidewalk counseling when cars are about to enter or exit the Minneapolis Planned Parenthood facility's driveway that intersects with the sidewalk. Thus, they cannot interact or initiate a conversation with the occupant(s) in the car or give them literature within the exclusion zones.



210.    The driveway is depicted above as the Yellow Square in the Google photo with markings created by Plaintiff Lucy Maloney:

211.    As for another example, even candidates or potential candidates for elected office or campaign volunteers, under § 405.30(1), are unable enter the driveway to engage in a conversation with a car's occupant(s) when the car is entering or exiting the Planned Parenthood facility.

212.    The driveway is an exclusion zone under § 405.30(1) for First Amendment activities, including associating with others regarding matters of public concern because physical disruption, as defined under Chapter 405, would occur.

213.    Knowingly stopping a person, Maloney, Wilkin, Braun, and PLAM staff members or volunteers disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility and as such, is a violation of the Code.

214.    Maloney, Wilkin, Braun, and PLAM staff members or volunteers cannot knowingly enter the driveway to associate with others regarding a woman's consideration of having an abortion, to consider alternatives, or to direct the person(s) to alternative ethical sexual health clinics.

215.    Likewise, the plaintiffs or candidates for elected office or any other persons engaged in other political speech activities such as seeking a signature on a petition or otherwise educating a person on other matters of public concern, under § 405.30(1), are unable to engage in a conversation with a woman or companion or both entering or exiting the Minneapolis Planned Parenthood facility.

216. For all other persons so engaged in other political speech activities, the driveway is an exclusion zone under § 405.30(1) for First Amendment activities, including associating with others, regarding matters of public concern because physical disruption, as defined under Chapter 405, would occur. Having knowingly stopped a person would disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility. They cannot knowingly enter the driveway to associate with others regarding a woman's consideration of having an abortion and to consider alternatives.

217. Maloney, Wilkin, Braun, and PLAM staff members or volunteers use sidewalks for sidewalk counseling. Sidewalk counseling occurs at the Minneapolis Planned Parenthood facility and will continue to occur in the future.

218. With the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have also curtailed their expressive association activities related to sidewalk counseling on the sidewalk where it intersects with the driveway. As a result, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have lost their ability to engage with cars entering or exiting the Minneapolis Planned Parenthood facility. They cannot initiate conversations or present literature to associate with the occupant(s) within the exclusion zone.

219. In fact, the exclusion zone creates added dangers to both the occupant(s) of the car and Maloney, Wilkin, Braun, and PLAM staff members and volunteers. Occupants who wish to hear Maloney's, Wilkin's, Braun's, and PLAM staff members' and volunteers' messaging, they must stop in the street with on-coming traffic. Likewise, Maloney, Wilkin,

Braun, and PLAM staff members and volunteers must then enter the street to speak to the car's occupant(s) or to hand out literature or both.

220.    As a result, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have curtailed their expressive association activities.

221.    Maloney, Wilkin, Braun, and PLAM staff members and volunteers will and plan to violate the prescriptions of Chapter 405, when necessary, to do their sidewalk counseling to meet the goals and objectives embodied in their ministry. When they do so, however, their association activities are proscribed by Chapter 405 of the Minneapolis City Code.

222.    As previously described, sidewalk counseling seeks to advocate against the woman having an abortion or otherwise be able to tell her of alternatives to abortion, and of love and support available to her. Sidewalk counseling ministry are not intended to and does not incite imminent lawless action.

223.    Maloney, Wilkin, Braun, and PLAM staff members or volunteers use the sidewalks that parallel the Minneapolis Planned Parenthood facility on the Emerson Avenue east side to conduct peaceful picketing, marches, or other demonstrations against abortion. Such activities are planned at the Minneapolis Planned Parenthood facility in the future.

224.    People who enter or exit the Minneapolis Planned Parenthood facility are entitled to hear messages from Maloney, Wilkin, Braun, and PLAM staff members or volunteers related to abortion.

225.    People who enter or exit the Minneapolis Planned Parenthood facility are entitled to hear messages from others, such as candidates for political office, or others who engage in legal political speech activities on matters of public concern.

226.    Because people entering or exiting the Minneapolis Planned Parenthood facility are entitled to hear alternatives to abortion or other sexual health related matters from Maloney, Wilkin, Braun, and PLAM staff members or volunteers, they have a right to associate with the plaintiffs.

227.    As Maloney, Wilkin, Braun, and PLAM staff members or volunteers continue their sidewalk counseling activities there is a credible threat of prosecution under Chapter 405. The City of Minneapolis has not disavowed or otherwise refused to enforce Chapter 405.

228.    Chapter 405 has created exclusion zones to prohibit sidewalk counseling, picketing, marches, demonstrations, protests, petitioning, or other speech activities at the Minneapolis Planned Parenthood facility, prohibiting the right to associate.

229.    Protests or sidewalk counseling, among other things as previously described, seek to advocate for the woman against having an abortion or to provide them with abortion alternatives.

230.    Picketing, marches, demonstrations, protests, petitioning, or other speech activities at the Minneapolis Planned Parenthood facility are not intended and do not incite imminent lawless action.

231.    Peaceful sidewalk counseling and peaceful protests are protected First Amendment activities at the Minneapolis Planned Parenthood facility.

232.     Petitioning or speaking with others about issues of public concern in public, on public sidewalks, are protected First Amendment activities at the Minneapolis Planned Parenthood facility.

233.     Maloney, Wilkin, Braun, and PLAM staff members or volunteers engage in protected First Amendment activities at the Minneapolis Planned Parenthood facility.

234.     Sidewalk counseling ministry is a means to associate with others regarding all issues related abortion.

235.     Maloney, Wilkin, Braun, and PLAM staff members or volunteers will work together to advocate alternatives to abortion for women who seek an abortion at the Minneapolis Planned Parenthood facility.

236.     PLAM staff members or volunteers have succeeded with women who had sought an abortion to seek other alternatives. Hence, their activities at the Minneapolis Planned Parenthood facility is to associate with them and to convince them of those alternatives to abortion.

237.     Likewise, Chapter 405 prohibits the peaceful assembly of Maloney, Wilkin, Braun, and PLAM staff members or volunteers with either like-minded persons, or with women contemplating having an abortion as they enter or exit the Minneapolis Planned Parenthood facility.

238.     Moreover, Chapter 405 has no consent provision. When a person stops and speaks to Maloney, Wilkin, Braun, and PLAM staff members or volunteers, even if voluntarily, it is evidence of a violation of the City ordinance.

239. In a similar context, Chapter 405 prohibits any PLAM planned protests, picketing, marches, or other demonstrations at the Minneapolis Planned Parenthood facility that may enter into the facility's driveway or are held on the sidewalk running parallel to the facility along Emerson Avenue South. The prohibition will not allow for Maloney, Wilkin, Braun, and PLAM staff members or volunteers or other members of the public to engage in expressive association.

240. The intended peaceful protests are intended to draw attention to signs or to present hand-held literature to others. It is knowingly done. Moreover, it will also result in disrupting the flow of any other person walking on the sidewalk as they enter or exit an abortion facility, where protestors will knowingly seek to draw attention to their messaging, knowingly seek to engage in a conversation, or knowingly seek to hand-out literature.

241. Minneapolis City Ordinance, 405.20 prohibits Maloney, Wilkin, Braun, and PLAM staff members or volunteers from orchestrating protests, picketing, marches, or demonstrations on the public sidewalk of the Minneapolis reproductive healthcare facility.

242. Maloney, Wilkin, Braun, and PLAM have protected expressive association rights under the First Amendment.

243. There is a conflict between Maloney's, Wilkin's, Braun's, and PLAM's protected expressive association rights under the First Amendment and Chapter 405 of the Minneapolis City Code.

244. Maloney, Wilkin, Braun, and PLAM face credible threats of future prosecution because of Chapter 405's chilling effect on their desire to exercise their right to expressive association.

51

245.    Chapter 405 does not employ less restrictive means to protect the right of association. In fact, the City of Minneapolis already has an ordinance to prevent the blocking of sidewalks. City of Minneapolis (Minn.) § 466.240:

>   (a)No person or group of persons shall assemble or cause others to assemble on any sidewalk so as to obstruct the free passage of pedestrians thereon or interfere with the use thereof.
>
>   (b)It shall be unlawful for any person individually or as a member of any group of persons to loiter, stand, sit, lie or remain upon or within any street, sidewalk, crosswalk or other public way or otherwise occupy any portion thereof with the intent or purpose to block, obstruct or interfere with the free passage of any pedestrian thereon or the orderly free flow of vehicular traffic on said street or public way.
>
>   (c)This section shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly.
>
>   (d) Violation of this section is a petit misdemeanor. (Code 1960, As Amend., § 408.090; 84-Or-069, § 1, 4-27-84)

https://library.municode.com/mn/minneapolis/codes/code_of_ordinances/376408?nodeId=MICOOR_TIT18TRCO_CH466INGE (last visited Jan. 17, 2023).

246.    Maloney, Wilkin, Braun, and PLAM need not expose themselves to arrest or prosecution in order to challenge Chapter 405 of the Minneapolis City Code.

247.    Maloney, Wilkin, Braun, and PLAM need not await the consummation of threatened injury to obtain preventive relief.

248.    The judgment of this Court will serve as a useful purpose in clarifying and settling the legal conflict between the allegations asserted by Maloney's, Wilkin's, Braun's, and PLAM's protected expressive association rights under the First Amendment and with Chapter 405 of the Minneapolis City Code.

249.    The judgment of this Court would terminate and afford Maloney, Wilkin, Braun, and PLAM the relief needed from the uncertainty, insecurity, and controversy that has given rise to these proceedings.

250.    Chapter 405 violates the First Amendment's right of expressive association.

251.    Because Chapter 405 violates the First Amendment's right of expressive association, it is unconstitutional.

252.

253.    Maloney, Wilkin, Braun, and PLAM request this Court to reach a decision for declaratory judgment under 42 U.S.C. § 1983, or any other applicable law or both, issue injunctive relief, and award nominal damages (if appropriate), as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

## Count III

**Violation of civil rights under 42 U.S.C. § 1983, for violating the free exercise of religion seeking declaratory and permanent injunctive relief against the City of Minneapolis.**

254.    Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of the further allegations asserted under Count III.

255.    The First Amendment of the U.S. Constitution guarantees, among other things, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

256.    This clause has been incorporated against the States.

257.    Under 42 U.S.C. § 1983, the statutory provisions provide persons a federal cause of action based on state violations of federal law and is accurately quoted, in part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress….

258.    This Court has statutory authority under 28 U.S.C. § 2201 to issue declaratory judgments.

259.    The Minnesota Constitution also protects the free exercise of religion.

260.    Pro-Life Action Ministries is an interdenominational Christian organization.

261.    Maloney, Wilkin, Braun, and PLAM members or volunteers sincerely hold certain religious beliefs.

262.    When PLAM staff members or volunteers, such as Maloney, Wilkin, and Braun engage in sidewalk-counseling ministry with a woman seeking an abortion and offer alternatives to abortion, they are also conveying to her that she has a choice, letting her know that people care about her, love her, and will help her and her unborn child.

263.    In other words, sidewalk counseling ministry is Christian based.

264.    PLAM and Maloney, Wilkin, and Braun believe sidewalk counseling ministry is inspired by God.

265.     PLAM and Maloney, Wilkin, and Braun believe that sidewalk counseling ministry is a Christian way to advocate for God's family values.

266.     PLAM and Maloney, Wilkin, and Braun believe God has a good plan and purpose for every life and family, and see that it is their mission to help God's family have hope and a future.

267.     PLAM and Maloney, Wilkin, and Braun believe it is the organization's assignment, through their members or volunteers or both, to serve and assist God's family in fulfilling God's plan as found for, example, in Jeremiah 1:5 ("Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations." NIV Bible.) and 29:11 ( "For I know the plans I have for you," declares the Lord, "plans to prosper you and not to harm you, plans to give you hope and a future." NIV Bible).

268.     Maloney, Wilkin, and Braun also believe, individually, that it is their duty to serve and assist God's family in fulfilling God's plan as found for, example, in Jeremiah 1:5 ("Before I formed you in the womb I knew you, before you were born I set you apart; I appointed you as a prophet to the nations." NIV Bible.) and 29:11 ( "For I know the plans I have for you," declares the Lord, "plans to prosper you and not to harm you, plans to give you hope and a future." NIV Bible).

269.     Minneapolis Chapter 405 has created exclusion zones for both the driveway and sidewalk at the Minneapolis Planned Parenthood facility.

270.     The exclusion zones interfere with the sincerely held religious beliefs of Maloney, Wilkin, Braun, and PLAM staff members or its volunteers or both.

271.     The exclusion zones interfere with the sincerely held religious beliefs of Maloney, Wilkin, and Braun.

272.     The exclusion zones interfere with PLAM's exercise of religious beliefs.

273.     The exclusion zones interfere with Maloney's, Wilkin's, Braun's, and PLAM's exercise of religious beliefs.

274.     Maloney, Wilkin, Braun, and PLAM have a protected right to the free exercise of religion under the First Amendment.

275.     Maloney, Wilkin, Braun, and PLAM have a protected right to the free exercise of religion under the Minnesota Constitution.

276.     Chapter 405 of the Minneapolis City Code implicates not only the First Amendment right to the free exercise of religion, but also the right to free speech and the right to associate.

277.     Chapter 405 of the Minneapolis City Code burdens the free exercise of religion through the created exclusion zones.

278.     Chapter 405 does not employ less restrictive means to protect the free exercise of religion. In fact, the City of Minneapolis already has an ordinance to prevent the blocking of sidewalks. City of Minneapolis (Minn.) § 466.240:

> (a) No person or group of persons shall assemble or cause others to assemble on any sidewalk so as to obstruct the free passage of pedestrians thereon or interfere with the use thereof.
>
> (b) It shall be unlawful for any person individually or as a member of any group of persons to loiter, stand, sit, lie or remain upon or within any street, sidewalk, crosswalk or other public way or otherwise occupy any portion thereof with the intent or purpose to block, obstruct or interfere with the free passage of any pedestrian thereon or the orderly free flow of vehicular traffic on said street or public way.

(c)This section shall not be interpreted to restrict the lawful exercise of freedom of speech and assembly.

(d) Violation of this section is a petit misdemeanor. (Code 1960, As Amend., § 408.090; 84-Or-069, § 1, 4-27-84)

https://library.municode.com/mn/minneapolis/codes/code_of_ordinances/376408?nodeId=MICOOR_TIT18TRCO_CH466INGE (last visited Jan. 17, 2023).

279.    There is a conflict between Maloney's, Wilkin's, Braun's, and PLAM's protected free exercise of religion under the First Amendment and Chapter 405 of the Minneapolis City Code.

280.    The judgment of this Court will serve as a useful purpose in clarifying and settling the legal conflict between the allegations asserted by Maloney's, Wilkin's, Braun's, and PLAM's protected rights to exercise their religious beliefs under the First Amendment and with Chapter 405 of the Minneapolis City Code.

281.    The judgment of this Court will terminate and afford Maloney, Wilkin, Braun, and PLAM the relief needed from the uncertainty, insecurity, and controversy that has given rise to these proceedings.

282.    Chapter 405 violates the First Amendment's free exercise of religion clause.

283.    Because Chapter 405 violates the First Amendment's right to the free exercise of religion, it is unconstitutional.

284.    Maloney, Wilkin, Braun, and PLAM request this Court to reach a decision for declaratory judgment under 42 U.S.C. § 1983, or any other applicable law or both, issue injunctive relief, and award nominal damages (if appropriate), as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

## JURY TRIAL DEMANDED

285.    Plaintiffs Maloney, Wilkin, Braun, and PLAM demand a jury trial regarding the allegations asserted in the instant Complaint.

## RELIEF REQUESTED

**WHEREFORE,** the Plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun request that this Court:

A.    Declare Minneapolis City Code (Minn.) Chapter 405 facially unconstitutional or in the alternative unconstitutional as applied;

B.    Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right of free speech under the First Amendment;

C.    Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right of expressive association or assembly under the First Amendment;

D.    Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right to exercise religion clause under the First Amendment;

E.    Declare that that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's civil rights under 42 U.S.C. § 1983;

F.     Grant permanent injunctive relief against the enforcement of

Minneapolis City Code (Minn.) Chapter 405;

G.     Award nominal damages against the City of Minneapolis, if appropriate

or necessary;

H.     Award any compensatory damages against the City of Minneapolis, if

warranted;

I.     Award Pro-Life Action Ministries, Maloney, Wilkin, and Braun their

reasonable attorney fees, litigation expenses, and costs as allowed under

42 U.S.C. § 1988, and all other applicable laws, and grant such other

relief as this Court deems just to the Plaintiffs and their attorneys; and

J.     All other relief, monetary or otherwise, this Court deems just or

reasonable under the circumstances and claims alleged in this

Complaint.

Dated: April 5, 2023                        /s/Erick G. Kaardal
                                            Erick G. Kaardal, 229647
                                            Mohrman, Kaardal & Erickson, P.A.
                                            150 South Fifth Street, Suite 3100
                                            Minneapolis, Minnesota 55402
                                            Telephone: 612-341-1074
                                            Email: kaardal@mklaw.com

                                            *Attorneys for the Plaintiffs*