## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun, | Case No. 23-CV-00853 (JWB/DJF) |
| Plaintiffs, | |
| v. | **AMENDED COMPLAINT** |
| City of Minneapolis, a Minnesota municipality, | |
| Defendant. | |

The plaintiffs for their Amended Complaint allege as follows:

1.     The plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun bring this action seeking declaratory and injunctive relief under 42 U.S.C. § 1983 to challenge the constitutionality of Chapter 405 of the Minneapolis City Code. Chapter 405 creates driveway and sidewalk exclusion zones prohibiting First Amendment free speech and association activities such as sidewalk counseling, protesting, or petitioning.

2.     The plaintiffs' First Amendment activities take place at an existing Minneapolis abortion facility.  Declaratory and injunctive relief are sought to find Chapter 405 of the Minneapolis City Code unconstitutional as it violates the First Amendment.

### Parties

3.     Plaintiff Pro-Life Action Ministries (PLAM) is a Minnesota non-profit corporation. Founded initially as P.E.A.C.E. of Minnesota in 1981, it changed its name to Pro-Life Action Ministries in 1986. PLAM is an interdenominational Christian organization dedicated to publicly defending the sanctity of human life through sidewalk counseling. The

organization works through its staff and volunteers to save lives from abortion, infanticide, and euthanasia through peaceful direct-action and educational projects. PLAM is best known for its daily presence of staff or volunteers in front of abortion facilities offering prayer, love, support, and alternatives to abortion-bound mothers.  As such, PLAM, its staff and volunteers believe it is their assignment to serve and assist God's family in fulfilling His plan as found in I Chronicles 28:20: "Be strong and courageous and do it. Do not be afraid and do not be dismayed, for the LORD God, even my God, is with you. He will not leave you or forsake you, until all the work for the service of the house of the LORD is finished."

4.      Plaintiff Lucy Maloney is PLAM's Communications Manager. She has and continues to engage in sidewalk counseling associated with the intervention with pregnant women entering into abortion facilities, including the Minneapolis Planned Parenthood facility. When doing sidewalk counseling, from time to time, Maloney does so with PLAM volunteers. Maloney has personally ministered to mothers, and fathers too, outside the Minneapolis Planned Parenthood facility to connect with them. She has offered information regarding free resources for supplies, financial help, housing, food, medical and adoption services, abortion pill reversal, and other related services, and prayer to let the pregnant woman know that others care about her, love her, and will help her and her unborn child. Maloney believes that she has an assignment to serve and assist God's family in fulfilling His plan.

5.      Plaintiff Thomas Wilkin is the Sidewalk Counseling Manager of Pro-Life Action Ministries. He has and continues to do sidewalk counseling where he engages with pregnant women and others entering into abortion facilities, including the Minneapolis

Planned Parenthood facility. He also does sidewalk counseling with PLAM volunteers and trains volunteers as well. Wilkin has personally ministered to mothers, and fathers too, outside the Minneapolis Planned Parenthood facility to connect with them. He offers compassion, not condemnation, and prayer to pregnant women who have found themselves in the situation that has brought them to an abortion facility and prays silently for them while offering sidewalk counseling.  Wilkin believes that he has an assignment to serve and assist God's family in fulfilling His plan.

6.     Plaintiff Debra Braun has been the Education Director of Pro-Life Action Ministries since 1986. Braun, as a PLAM staff person, has done sidewalk counseling outside abortion centers on a regular basis since 1986, including the Minneapolis Planned Parenthood facility. When she engages in sidewalk counseling, Braun also counsels with PLAM volunteers. Meanwhile, Braun has also trained hundreds of people in sidewalk counseling techniques. Finally, Braun is the editor of *Pro-Life Action News* and *Sidewalk Counseling News*, pro-life newsletters.  Braun believes that she has an assignment to serve and assist God's family in fulfilling His plan.

7.     Defendant City of Minneapolis is a municipality in Hennepin County, Minnesota.

**Jurisdiction**

8.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343 (1)-(4) and 42 U.S.C. §§ 1983, 1985(2), (3) and § 1988 and the First Amendment of the United States Constitution.

9.     This Court is authorized to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and Fed. R. Civ. P. rules 57 and 65, and has general legal and equitable powers.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 and other applicable law, because the alleged deprivations of PLAM's constitutional rights occurred in Hennepin County located within this District of Minnesota and because future deprivations of its constitutional rights are threatened and likely to occur in this District.

## Facts

11.     As a practice of their faith, Maloney, Wilkin, Braun, and PLAM volunteers have engaged in sidewalk counseling outside the Minneapolis Planned Parenthood abortion facility since it started offering abortions at its present address, 1200 Lagoon Ave, Minneapolis, Minnesota.

12.     PLAM staff and volunteers have frequently engaged in sidewalk counseling as part of their ministry outside of the Minneapolis Planned Parenthood facility.

13.     Through the ministry and intercessions of PLAM volunteers and staff, such as Maloney, Wilkin, and Braun, more than 3,600 babies have been rescued from abortion.

14.     PLAM staff and volunteers, specifically Maloney, Wilkin, and Braun, consider sidewalk ministry and counseling as part of their sincerely held religious beliefs and are undertaken in accordance with those same beliefs.

15.     Sidewalk counseling involves offering both verbal communications and written materials outlining alternatives to abortion and help for anyone wishing to pursue those alternatives.

16.     Maloney, Wilkin, Braun, and PLAM volunteers typically initiate a conversation with would-be Planned Parenthood patients by asking if they would like some literature.

17.     Maloney, Wilkin, Braun, and PLAM volunteers also inform women and their partners or companions, if any, of other life choices available to them for the unborn child other than abortion. The information provided identifies such choices, including, but not limited to: housing options, child care options, agency support, non-profit organizational assistance, including pre-natal care or services, parenting resources including diapers, formula, clothes, parenting classes, counseling and more, while including information about child development that shows parents how the child has developed at different stages of the pregnancy. *See e.g.,* **Exhibit 2** (brochures).

18.     In addition, Wilkin, as well as other PLAM volunteers or staff, would also inform those entering the Planned Parenthood facility seeking services other than an abortion, that by doing business with the facility they are supporting an abortion provider. "Other" services include, but are not limited to, pap smears, STD testing, or other health-related services. Even then, Wilkin and other PLAM volunteers or staff, would refer them to other sexual health resources as an alternative to Planned Parenthood.  In addition, other PLAM literature is offered "just in case" the person ever found herself in a tough situation in deciding whether to have an abortion and to recognize that there are alternatives.

19.     The only way to know if a woman might be seeking an abortion is to initiate a conversation. And, as described, sometimes the women entering the facility are seeking services other than abortion, and they will engage in conversations with those individuals as well.  Regardless, during any conversation, Maloney, Wilkin, Braun, and PLAM volunteers

consider it essential to maintain a caring demeanor, a calm tone of voice, and direct eye contact. They believe that this is the most effective means of communicating to dissuade a woman from having an abortion.

20.     Sidewalk counseling ministry is not meant to be loud, obnoxious, nor confrontational. These mannerisms are counter-productive when speaking with a woman or her partner or companion as they enter the Planned Parenthood facility.

21.     Maloney, Wilkin, Braun, and PLAM volunteers, in their sidewalk counseling ministry, require direct interaction with a woman entering (or exiting) the Minneapolis Planned Parenthood facility whether it be at the facility's front door or driveway (which leads to the facility's back door off of the facility's parking lot). They will approach the woman and place themselves in a position to initiate a conversation.

22.     Their actions are deliberate, ultimately disrupting people from their progress entering into the abortion facility. For example, Maloney, Wilkin, Braun, PLAM staff and volunteers will flag down a vehicle or hold out literature as a vehicle enters (or exits) the driveway of the Minneapolis Planned Parenthood facility. If the vehicle stops, it will ultimately delay, hence, disrupt the woman's entrance into the facility's parking lot. At that time, Maloney, Wilkin, Braun, and PLAM volunteers will then have an opportunity to speak briefly with the occupants of the car and to give them literature.

23.     During sidewalk counseling either on the sidewalk or in the driveway, Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage women or their companions or both, in conversations about alternatives to abortion. Plaintiffs will also hand them literature about abortions, alternatives to abortion, and available options and other

related information regarding reproductive healthcare. *See e.g.,* **Exhibit 2** (brochures).  In addition, the plaintiffs will suggest to women to seek what they consider as other ethical sexual health resources or clinics to avoid supporting the Minneapolis Planned Parenthood abortion facility.

24.     The plaintiffs also believe that they provide a service to others who, by receiving information about alternatives to abortion, available options, or alternative reproductive care facilities or clinics and the like, they fill a void that should be easily made available to those recipients. Moreover, the plaintiffs have found that some recipients are grateful.

25.     The plaintiffs would also engage in other petitioning activities related to abortion laws, issues of public concern, or support for (or against) potential candidates seeking elected office, or ballot questions. This would include for instance, obtaining signatures on a petition.

26.     An example of a driveway encounter is shown below in the sequence of still shots of footage from a Minneapolis Planned Parenthood facility security camera:







27.    The photos are from Minneapolis Planned Parenthood security camera footage presented to public officials during public hearings prior to the enactment of Chapter 405.

28.    The still shots reflect how PLAM staff or volunteers signal a car, approach the car, and talk to the occupant(s) or hand the occupant(s) literature or both.

29.     The still shots show that the driveway and sidewalk intersect.  The driveway to the entrance to the Minneapolis Planned Parenthood facility is part of the sidewalk.

30.     Here are two other photographs taken at the Minneapolis Planned Parenthood facility:





31.     The still shots show how PLAM staff and volunteers walk into the driveway. Maloney, Wilkin, and Braun would approach vehicles in a similar fashion.

32.     Emerson Avenue South, for the relevant Minneapolis city block here, has no parking on the east side of the street.

33.     The still shot below also shows how a car, traveling north-to-south on Emerson Avenue South, has room to maneuver around a car turning into the driveway of the Minneapolis Planned Parenthood facility. The footage is from the Minneapolis Planned

Parenthood security camera presented to the Minneapolis City Council. The photo reveals that a car turning into the driveway or stopping in the driveway does not interfere with traffic.



34.     Besides sidewalk counseling, from time to time, PLAM will organize and engage in peaceful protests as well as petitioning activities related to abortion laws, issues of public concern, or support for (or against) potential candidates seeking elected office, or ballot questions. This would include for instance, obtaining signatures on a petition.

35.     These peaceful protests are intended to draw attention to the plaintiffs' messaging, including but not limited to handing out literature to others. It is knowingly done. Moreover, the protests will disrupt persons walking on the sidewalk as they enter or exit an abortion facility.

36.     For example, PLAM holds a "40 Days for Life" prayer vigil at the Vandalia Planned Parenthood abortion facility, in Saint Paul, twice each year during Lent and Fall season. The vigil is conducted on the public sidewalks outside the Saint Paul Planned Parenthood facility. Sidewalk counseling also continues during these event days.

37.     Prayer vigils will be planned for future dates.

38.     PLAM hopes to hold similar events that involve picketing, protesting, or prayer vigils on the sidewalks at the Minneapolis Planned Parenthood facility in the future.

39.     Similarly, PLAM volunteers engage in a "Jericho March," a seven-day march, presently held annually at the Saint Paul Planned Parenthood abortion facility. The plaintiff PLAM may hold a similar seven-day march in the future at the Minneapolis Planned Parenthood.

40.     PLAM picketing or other marches messaging its opposition to abortion will continue in the future.  Maloney, Wilkin, Braun also plan to join PLAM-planned picketing, other marches, or related activities messaging opposition to abortions in the future.

41.     In all, PLAM's sidewalk counseling has resulted in thousands of women changing their minds about going through with abortions. Many of these women have verbally expressed their gratitude to PLAM staff and volunteers for their presence and assistance on the sidewalk, especially after their babies are born.

42.     In November 2022, the City of Minneapolis enacted as a new City ordinance, Chapter 405.

43.     Chapter 405.20 of the Minneapolis City Code is entitled "Disrupting access to reproductive healthcare facilities prohibited." It is accurately quoted, in part, as follows:

> No person shall knowingly physically disrupt any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so, except:
> (1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility;

> (2) When using the driveway to move from the reproductive healthcare
> facility to the street or vice versa….

Minneapolis City Code (Minn.) § 405.20, (1), (2). **Exhibit 1** attached.

44.     Chapter 405.10, governing definitions, identifies the meaning of a "reproductive healthcare" facility. The definition is accurately quoted as follows: "a facility, other than a hospital, where abortions are offered or performed in accordance with state law, and shall include, but not be limited to, the structures, grounds, and parking facilities occupying the same lot as the facility."

45.     The definition of a "reproductive healthcare" applies to the Minneapolis Planned Parenthood facility. The facility is located at 1200 Lagoon Ave, Minneapolis, Minnesota.

46.     City of Minneapolis Chapter 405.10 defines "driveway." It is accurately quoted as follows:

> *Driveway* shall mean that portion of a right-of-way, including a sidewalk or bikeway, that provides vehicular access from a street to a reproductive healthcare facility.

Minneapolis City Code (Minn.) § 405.10 (original emphasis). **Exhibit 1** attached.

47.     The plaintiffs believe Chapter 405 created exclusion zones that prohibits them to enter street entrances to abortion clinics, that is, driveways, to engage in their speech and associational activities. For example, Chapter 405.30 of the Minneapolis City Code is entitled "Occupying driveways prohibited." It is accurately quoted, in part, as follows:

> No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours, except:
> (1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing

to a destination beyond the furthest lot line of the reproductive healthcare facility….

Minneapolis City Code (Minn.) § 405.30, (1). **Exhibit 1** attached.

48.     Likewise, the plaintiffs believe that under § 405.20, the language is so broad that it created an exclusion zone for sidewalks immediately adjacent to an abortion facility. By entering the intersection of the sidewalk and driveway during a protest, march, or similar related speech activities, the offending ordinance requires them to proceed until they reach and go beyond the facility's property boundary line.

49.     City of Minneapolis Chapter 405.10 defines "disrupt." It is accurately quoted as follows:

>       *Disrupt* shall mean obstruct, impede, or hinder.

Minneapolis City Code (Minn.) § 405.10 (original emphasis). **Exhibit 1** attached.

50.     The plaintiffs' expressive and associational activities and interaction through their sidewalk counseling, protests, picketing, engaging in conversations, or other similar speech activities would, by their very nature stop individuals and, thus, disrupt a person from entering into the Minneapolis Planned Parenthood abortion facility.

51.     When Maloney, Wilkin, Braun, and PLAM staff members and volunteers wave down cars or hold out literature, cars stopping in the driveway at the Minneapolis Planned Parenthood facility, they disrupt the person or persons from entering (or exiting) the facility.

52.     City of Minneapolis Chapter 405, specifically, 405.20, has created what the plaintiffs believe to be an exclusion zone of the public sidewalk outside the Minneapolis Planned Parenthood facility. It prohibits Maloney, Wilkin, Braun, PLAM staff and

13

volunteers from speaking to women and offering literature in that exclusion zone and otherwise engage in the First Amendment protected activity they engaged in prior to enactment of the ordinance.

53.     When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's political opposition to abortion at Planned Parenthood abortion facilities.

54.     When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's sidewalk counseling ministry and how that ministry was conducted at the Minneapolis Planned Parenthood abortion facility.

55.     When the City of Minneapolis enacted Chapter 405, city and elected officials were aware of PLAM's picketing, leafletting, protesting, and other speech related activities that reflect opposition to abortions or laws allowing for abortion.

56.     Minneapolis City Councilmember Lisa Goodman was the chief author of Chapter 405.

57.     Goodman made it publically known that the enactment of Chapter 405 was a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide.

58.     With the enactment of Chapter 405, Minneapolis council member Lisa Goodman was quoted as stating, "Never in my 25 years of being here have I ever gotten to do something as meaningful in the reproductive rights movement. I am proud of the fact that the institution, the mayor, the administration, the council, have come to an agreement that women want access. We want the state to do something, but we want women to have

access right now." "New Minneapolis ordinance makes it illegal to block entrance to abortion clinics," Ryan Janke, Fargo, ND, USA / The Mighty 790 KFGO | KFGOttps://kfgo.com/2022/11/18/new-minneapolis-ordinance-makes-it-illegal-to-block-entrance-to-abortion-clinics/ (last visited Jan. 12, 2023).

59. An accurate aerial depiction of the Minneapolis Planned Parenthood facility is provided below. Plaintiff Maloney obtained the photo from Google Maps.



60. Maloney made the identifying marks. The markings show and mean the following: "Red"–no parking; "Yellow Square"–driveway entrance; the two "Solid Yellow Lines"–entrances to the Planned Parenthood facility; "Blue Square"–where Cub Foods delivery trucks use the intersection to back into the loading dock; and "Circled in Red"–a truck in the loading dock.

61.    Chapter 405, specifically, § 405.20, creates what the plaintiffs believe to be an exclusion zone in the driveway as shown by a Yellow Square in the Google aerial picture above.

62.    As it is denoted in the picture, the driveway "exclusion zone" is that area on the public way or sidewalk serving as the only vehicle entrance and exit from the parking lot used by the Planned Parenthood facility. All points of the driveway intersect and connect with the public sidewalk running parallel to Emerson Avenue South. (See Google aerial picture above).

63.    As noted, the City of Minneapolis Chapter 405, specifically § 405.20, prohibits anyone from entering the driveway's exclusion zone except to "cross[ ]…completely from one side of the driveway to the other side without stopping or slowing and continuing to a destination beyond the furthest lot line of the [Minneapolis Planned Parenthood abortion] facility."

64.    The photo below is from Hennepin County Property records. Outlined in blue is the parcel lot of the Minneapolis Planned Parenthood facility at 1200 Lagoon Avenue, Minneapolis. It shows Lagoon Avenue to the south and 29th Street West to the North. Emerson Avenue South is to the East and Freemont Avenue South to the West.



https://gis.hennepin.us/property/?pid=3302924430226 (Last visited Mar. 23, 2023).

65.     To Maloney, Wilkin, Braun, and PLAM staff, this ordinance requirement means that while conducting sidewalk counseling ministry or other related activities, including petitioning, when a car stops in the driveway and the plaintiffs enter the driveway, they must continue to cross Lagoon Avenue to the other side of the street without stopping. Crossing Lagoon Avenue causes the plaintiffs to exit what they assume is the farthest lot line. Thus, the plaintiffs cannot engage with the occupants in the car when it is stopped in the driveway.

66.     This ordinance requirement also means that Maloney, Wilkin, Braun, PLAM staff and volunteers on the Emerson Avenue South sidewalk parallel to the Minneapolis Planned Parenthood facility, in the above diagram, if going from south to north they must continue to and cross 29th Street West to the other side of the street to exit the farthest lot

line. The plaintiffs believe that by entering the exclusion zone of the driveway without continuing to that point, they would violate § 405.30.

67.     The plaintiffs believe the exclusion zone effectively prohibits persons from walking onto or into the driveway to engage in their speech and association activities related to abortion, even with those persons entering or exiting the facility invite or otherwise solicit contact with the plaintiffs within the exclusion zones.

68.     In addition, the plaintiffs believe that the effect of the driveway exclusion zone prohibits them from engaging in any other type of petitioning activities.

69.     The plaintiffs believe that Minneapolis has created an exclusion zone that includes the entire sidewalk while picketing or marching under § 405.20 when they reach the driveway.

## Count I

### Violation of civil rights under 42 U.S.C. § 1983, for violation of freedom of speech, seeking declaratory and permanent injunctive relief against the City of Minneapolis.

70.     Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of Count I.

71.     The First Amendment of the U.S. Constitution guarantees, among other things, that government shall make no law "abridging the freedom of speech." U.S. Const., amend. I. The First Amendment has been incorporated against the states.

72.     By reason of the acts and actions previously described, through its laws, policies, practices, procedures, or customs, created, adopted, and enforced under the color of state law, the Defendant City of Minneapolis has deprived the plaintiffs Maloney, Wilkin,

Braun, and PLAM of their right to freedom of speech under the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

73.     Violations of Chapter 405 are issued through citations, subjecting the alleged violator to an administrative enforcement and hearing process. Civil fines and petty misdemeanor crimes can also be imposed. Minneapolis, Hennepin Cty, Minn., Admin. Enforcement and Hearing Process, §§ 2.10–2.120 (2021).

74.     The Plaintiffs are aware of the ordinance's penalties.

75.     The Defendant City of Minneapolis will seek to enforce the applicable provisions of Chapter 405 against the plaintiffs' expressive and associational activities in the future.

76.     The plaintiffs believe streets and sidewalks are "public places" which are considered "public forums" for expressive and associational activities.

77.     The Plaintiffs Maloney, Wilkin, Braun, and PLAM believe Chapter 405 creates exclusion zones preventing them from engaging in their expressive and association activities on the sidewalk which intersects driveways immediately adjacent to abortion facilities, such as the Minneapolis Planned Parenthood facility.

78.     Because of Chapter 405's prohibitions and exclusionary zones barring First Amendment activity, and the plaintiffs' knowledge of the ordinance's applicable penalties, the plaintiffs have curtailed their expressive and association related activities. For example, because of Chapter 405's enactment, Maloney, Wilkin, Braun, and PLAM staff members and

volunteers have stopped their sidewalk counseling when cars are about to enter or exit the Minneapolis Planned Parenthood facility's driveway that intersects with the sidewalk.

79.     Because of Chapter 405's prohibitions and exclusionary zones barring First Amendment activity, and the plaintiffs' knowledge of the ordinance's applicable penalties, the plaintiffs have curtailed their expressive and association related activities.

80.     The Plaintiffs recently held a protest on the street, instead of on the sidewalk to avoid the ordinance's requirement that if they enter the abortion facility's driveway, they would have to cross and exit the facility's property boundary. Protests on the sidewalks adjacent to the abortion facility are the Plaintiffs' preference because they are direct, intentional, and effective to draw attention of those people entering or exiting the facility.

81.     Such protests or marches are intended to draw attention against abortion using signs, or other messaging techniques, including presentation of literature from protesters to pedestrians on the sidewalk or driveway including those seeking to enter the facility. It is knowingly done and will disrupt a person's entrance to the facility.

82.     The photos below show that, in a recent protest, the ordinance's exclusion zone forced participants into the streets.  The ordinance's exclusion zone is inconsistent with the intentional efforts of the plaintiffs to have a "sidewalk" protest. The photograph below shows how PLAM marchers had to revert to the street along the curb to avoid the Chapter 405 created exclusion zones:



83.     Because of the enactment of Chapter 405, PLAM has curtailed any future

plans or events at the Minneapolis Planned Parenthood facility as they relate to protests or

other similar events such as those done at the Saint Paul abortion facility.

84.     Maloney, Wilkin, Braun, and PLAM believe they have a right to speak about

abortions or alternatives to abortion.

85.     Chapter 405 is not a generally-applicable law, because it targets Maloney,

Wilkin, Braun, and PLAM staff members' and volunteers' sidewalk counseling.

86.     Maloney, Wilkin, Braun, and PLAM staff members' and volunteers' sidewalk

counseling is an object of Chapter 405's prohibitions.

87.     Besides sidewalk counseling, from time to time, PLAM will organize and

engage in peaceful picketing, marches, or other types of protests against abortion. These

events have occurred and will continue to occur in the future, including at the Minneapolis

Planned Parenthood facility.

88.     As shown by the legislative history of Chapter 405, Minneapolis city officials targeted plaintiffs' activities because they knew that plaintiffs as well as other PLAM staff and volunteers provide sidewalk counseling and other services, specifically, at the Minneapolis Planned Parenthood facility.  Such legislative history includes, but is not limited to, comments made on the record by the Minneapolis City Councilmember Lisa Goodman, chief author of the ordinance.

89.     PLAM intends to hold protests, picketing, or other marches at the Minneapolis Planned Parenthood facility in the future.

90.     Regardless of any law enacted in the State of Minnesota or federal law protecting abortion, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have the right to oppose those laws. They believe they would be filling the state-created void of options other than abortion by providing information through sidewalk counseling, picketing, marches, or other demonstrations. The driveway is an exclusion zone under § 405.30(1) for First Amendment activities relating to abortion or other matters of public concern because, when Maloney, Wilkin, Braun, and PLAM staff members and volunteers stop a person to communicate with them, they do physically disrupt, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility, within the meaning of the ordinance.

91.     Chapter 405, by creating exclusion zones at the Minneapolis Planned Parenthood facility, is the City's direct effort, as a matter of public policy, to interfere with, thwart and block Maloney's, Wilkin's, Braun's, and PLAM staff members' and volunteers' efforts to speak to or hand literature to those women or their partners or companions who

are in the process of entering or exiting Planned Parenthood's property. This prohibition interferes, thwarts and blocks the messaging of Maloney, Wilkin, Braun, and PLAM staff members and volunteers regarding abortion, alternatives to abortion, or even their issues of public concern.

92. The municipal legislative intent of Chapter 405 was to target Maloney, Wilkin, Braun, and PLAM staff members and volunteers and to interfere with their rights to speech and to association. Chapter 405 only protects one side of the abortion debate. The exclusion zones ensure that Maloney's, Wilkin's, Braun's, and PLAM staff members' and volunteers' speech activities are stopped.

93. Based on Goodman's public comments and purpose in having Chapter 405 enacted, Chapter 405 is a policy, practice, procedure, or custom against the speech and associational activities Maloney, Wilkin, Braun, and PLAM staff members and volunteers engage in.

94. Moreover, Chapter 405 has no exception for when a person consents to stopping and talking to Plaintiffs, as Chapter 405 applies even if a woman or her companion or both agree to stop and communicate with Maloney, Wilkin, Braun, and PLAM staff members and volunteers to hear their speech opposing abortion or to hear their speech about alternatives provided by ethical sexual health facilities. Chapter 405 and its exclusion zone still apply because the actions are still disrupting the person's physical advancement into an abortion facility.

95. City of Minneapolis Chapter 405 is insidious content and viewpoint speech gerrymandering designed to squelch dissenting speech and to squelch the practice of

sincerely held religious beliefs on the sidewalks or in the driveway of the Minneapolis

Planned Parenthood facility.

96.     Meanwhile, the City of Minneapolis already has an ordinance to prevent the

blocking of sidewalks: City of Minneapolis (Minn.) § 466.240. It is accurately quoted, in part,

as follows

> (a)No person or group of persons shall assemble or cause others to
> assemble on any sidewalk so as to obstruct the free passage of
> pedestrians thereon or interfere with the use thereof.
> (b)It shall be unlawful for any person individually or as a member of
> any group of persons to loiter, stand, sit, lie or remain upon or within
> any street, sidewalk, crosswalk or other public way or otherwise occupy
> any portion thereof with the intent or purpose to block, obstruct or
> interfere with the free passage of any pedestrian thereon or the orderly
> free flow of vehicular traffic on said street or public way.

https://library.municode.com/mn/minneapolis/codes/code_of_ordinances/376408?nodeI

d=MICOOR_TIT18TRCO_CH466INGE (last visited Jan. 17, 2023).

97.     With the passage of Chapter 405, the City of Minneapolis has not taken less

restrictive measures.

98.     The City of Minneapolis has a less restrictive generally-applicable law which

serves the same purpose: its sidewalk blocking prohibition under City of Minneapolis

(Minn.) § 466.240, quoted above.

99.     The ordinance's creation of the exclusion zones foreclosed the speech

activities of Maloney, Wilkin, Braun, PLAM staff members and volunteers, previously

allowed before the enactment of the offending ordinance.

100.     The creation of the exclusion zones does not achieve a compelling

governmental interest. For example, as the chief author of Chapter 405, Goodman

announced the ordinance's enactment as a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide.

101.    The creation of the exclusion zones through Chapter 405 fails to leave open alternative channels for communication of PLAM's members' and volunteers' message regarding or relating to alternatives to abortion or the abortion debate.

102.    Chapter 405 is vague and unconstitutionally overbroad because, as the plaintiffs believe, it abuts upon sensitive areas of basic First Amendment freedoms resulting by its operation of inhibiting the exercise of free speech.

103.    Under § 405.10, the word "disrupt" "shall mean obstruct, impede, or hinder."

104.    "Physical" is not defined in Chapter 405.

105.    Sidewalk counseling, demonstrations, or driveway encounters as described, by their nature, can or will result in the physical disruption or impediment, or otherwise hinder a person from entering (or exiting) the Minneapolis Planned Parenthood facility as sidewalk demonstrations, picketing, or marching, as previously described, which are knowingly intentional acts.

106.    Regardless, Maloney, Wilkin, Braun, and PLAM staff members and volunteers do face civil and criminal penalties for any violations of Chapter 405.

107.    With the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have curtailed or stopped their free speech activities related to sidewalk counseling on the sidewalk where it intersects with the driveway. There exists a credible threat of prosecution under Chapter 405, and the City of Minneapolis has not disavowed or otherwise refused to enforce Chapter 405.

108.     Maloney, Wilkin, Braun, and PLAM need not expose themselves to arrest or prosecution in order to challenge Chapter 405 of the Minneapolis City Code, nor need they await the consummation of threatened injury to obtain preventive relief.

109.     Maloney, Wilkin, Braun, and PLAM have protected rights under the First Amendment's Free Speech Clause, which are being chilled by Chapter 405 and the threat of its enforcement.

110.     The judgment of this Court will serve a useful purpose in clarifying and settling the legal issues asserted by Maloney, Wilkin, Braun, and PLAM to protect their rights under the First Amendment's Free Speech Clause from application of Chapter 405 of the Minneapolis City Code.

111.     A favorable judgment of this Court will afford the Plaintiffs the relief needed from the uncertainty, insecurity, and controversy that has given rise to these proceedings.

112.     Chapter 405 violates the Free Speech Clause of the First Amendment because it is facially or as applied unconstitutional violating the Free Speech Clause of the First Amendment.

113.     Chapter 405 is also underinclusive and, thus, unconstitutional.

114.     Chapter 405 is vague and, thus, unconstitutional.

115.     Chapter 405 does not employ less restrictive means to protect the right of free speech.  The City of Minneapolis already has a generally-applicable ordinance to prevent the blocking of sidewalks under City of Minneapolis (Minn.) City Code § 466.240. This ordinance is alone legally sufficient to meet the municipality's identified government interest.

116.    As a direct and proximate result of the Defendant City of Minneapolis's violation of the First Amendment, as established through the allegations of this complaint, the Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional right to free speech.

117.    The Plaintiffs request this Court to reach a favorable decision for declaratory judgment, issue related injunctive relief, and award nominal damages, as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

**Count II**

**Violation of civil rights under 42 U.S.C. § 1983, for violating the right of expressive association, seeking declaratory and permanent injunctive relief against the City of Minneapolis.**

118.    Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of Count II.

119.    The First Amendment of the U.S. Constitution guarantees, among other things, the right "of the people to peaceably assemble." This guarantee has also been incorporated against the states. Assembly on public streets and sidewalks is among the guarantees protected by the First Amendment.

120.    The Plaintiffs believe that they have a right to expressively associate with others, such as persons entering or exiting an abortion facility in the pursuit of the Plaintiffs' political, social, educational, religious, and cultural goals. And, such persons entering or exiting an abortion facility have an equal opportunity to expressively associate with the plaintiffs.

121.    Plaintiffs, through their sidewalk counseling ministry, protests, marches, and other speech activities, seek to expressively associate with others to convey messages regarding abortion, alternatives to abortion, and other available options.

122.    Chapter 405 targets Maloney, Wilkin, Braun, and PLAM staff members and volunteers from engaging in expressive associational activities with others to meet their respective goals and objectives as previously described and alleged.

123.    With the realization of penalties for violating Chapter 405, Maloney, Wilkin, Braun, and PLAM staff members and volunteers have also curtailed their expressive associational activities as previously described and alleged.

124.    If Maloney, Wilkin, Braun, and PLAM staff members or volunteers continue their expressive associational activities, there is a credible threat of prosecution under Chapter 405. The City of Minneapolis has not disavowed or otherwise refused to enforce Chapter 405.

125.    Likewise, Chapter 405 prohibits the peaceful assembly of Maloney, Wilkin, Braun, and PLAM staff members or volunteers with either like-minded persons, or with women contemplating having an abortion as they enter or exit the Minneapolis Planned Parenthood facility.

126.    Moreover, Chapter 405 has no exception for a consenting person who is entering or exiting the abortion facility. When a person entering or exiting the abortion facility voluntarily stops and speaks to Maloney, Wilkin, Braun, and PLAM staff members or volunteers, it is still a violation of the City ordinance.

127.   Maloney's, Wilkin's, Braun's, and PLAM's protected expressive association rights under the First Amendment are violated by Chapter 405 of the Minneapolis City Code.  The defendant's credible threats of future prosecution have a chilling effect on plaintiffs' exercise of their right to expressive association.

128.   Chapter 405 does not employ less restrictive means to protect the right of expressive association.

129.   As a direct and proximate result of the Defendant's violation of the First Amendment, plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional right to expressive association.

130.   The Plaintiffs request this Court to reach a favorable decision for declaratory judgment, issue related injunctive relief, and award nominal damages, as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

**Count III**

**Violation of civil rights under 42 U.S.C. § 1983, for violating the free exercise of religion seeking declaratory and permanent injunctive relief against the City of Minneapolis.**

131.   Plaintiffs Maloney, Wilkin, Braun, and PLAM adopt and incorporate by reference all previous paragraphs as if fully restated in support of Count III.

132.   The First Amendment of the U.S. Constitution guarantees, among other things that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." This guarantee has also been incorporated against the states.

133.   Pro-Life Action Ministries is an interdenominational Christian organization.

134.    Maloney, Wilkin, Braun, and PLAM staff members or volunteers sincerely hold certain religious beliefs as previously described and alleged.

135.    When PLAM staff members or volunteers, such as Maloney, Wilkin, and Braun engage in sidewalk-counseling ministry with a woman seeking an abortion and offer alternatives to abortion, they are also conveying to her that she has a choice, letting her know that people care about her, love her, and will help her and her unborn child.

136.    Plaintiffs' sidewalk counseling ministry is Christian based.  They believe sidewalk counseling ministry is inspired by God and that sidewalk counseling ministry is a Christian way to advocate for God's family values.  The Plaintiffs' work is part of their religious belief that God has a good plan and purpose for every life and family, and they see that it is their mission to help God's family have hope and a future.

137.    PLAM and Maloney, Wilkin, and Braun believe it is the organization's assignment, through the work of their members or volunteers or both, to serve and assist God's family in fulfilling God's plan.  Maloney, Wilkin, and Braun also believe, individually, that it is their duty to serve and assist God's family in fulfilling God's plan as found, for example, in Jeremiah 1:5 and 29:11.

138.    Maloney, Wilkin, Braun, and PLAM identify Chapter 405's exclusion zones as interfering with their sincerely held religious beliefs.

139.    The exclusion zones interfere with Maloney's, Wilkin's, Braun's, and PLAM's exercise of their religious beliefs.

140.    Maloney, Wilkin, Braun, and PLAM have a protected right to the free exercise of religion under the First Amendment.

141. Chapter 405's exclusion zones burden the Plaintiffs' free exercise of religion.

142. Chapter 405 does not employ less restrictive means to protect the free exercise of religion.

143. There is a conflict between Maloney's, Wilkin's, Braun's, and PLAM's protected free exercise of religion under the First Amendment and Chapter 405 of the Minneapolis City Code.

144. Chapter 405 does not employ less restrictive means to protect the free exercise of religion.

145. Chapter 405 violates the First Amendment's Free Exercise of Religion Clause and thus is unconstitutional.

146. As a direct and proximate result of the Defendant City of Minneapolis's violation of the First Amendment, as established through the allegations of this complaint, the plaintiffs Maloney, Wilkin, Braun, and PLAM have suffered irreparable harm, including the loss of their fundamental constitutional right to free exercise of religion.

147. The Plaintiffs request this Court to reach a favorable decision for declaratory judgment, issue related injunctive relief, and award nominal damages, as well as awarding reasonable attorney fees and costs under 42 U.S.C. § 1988.

## JURY TRIAL DEMANDED

148. Plaintiffs Maloney, Wilkin, Braun, and PLAM demand a jury trial.

## RELIEF REQUESTED

**WHEREFORE,** the Plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun request that this Court:

A. Declare Minneapolis City Code (Minn.) Chapter 405 facially unconstitutional or in the alternative unconstitutional as applied;

B. Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right of free speech under the First Amendment;

C. Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right of expressive association or assembly under the First Amendment;

D. Declare that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's protected right to exercise religion under the First Amendment;

E. Declare that that the Minneapolis City Code (Minn.) Chapter 405 violated Pro-Life Action Ministries', Maloney's, Wilkin's, and Braun's civil rights under 42 U.S.C. § 1983;

F. Grant preliminary and permanent injunctive relief against the enforcement of Minneapolis City Code (Minn.) Chapter 405;

G. Award nominal damages against the City of Minneapolis, if appropriate or necessary;

H. Award any compensatory damages against the City of Minneapolis, if warranted;

I.     Award Pro-Life Action Ministries, Maloney, Wilkin, and Braun their

reasonable attorney fees, litigation expenses, and costs as allowed under

42 U.S.C. § 1988, and all other applicable laws, and grant such other

relief as this Court deems just to the Plaintiffs and their attorneys; and

J.     All other relief, monetary or otherwise, this Court deems just or

reasonable under the circumstances and claims alleged in this

Complaint.

Dated:  May 15, 2023                    /s/Erick G. Kaardal
                                        Erick G. Kaardal, 229647
                                        Mohrman, Kaardal & Erickson, P.A.
                                        150 South Fifth Street, Suite 3100
                                        Minneapolis, Minnesota 55402
                                        Telephone: 612-341-1074
                                        Email: kaardal@mklaw.com
                                        *Attorneys for the Plaintiffs*