## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun, | Case No. 23-CV-853 (JWB/DJF) |
| Plaintiffs, | |
| v. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| City of Minneapolis, a Minnesota municipality, | |
| Defendant. | |

## <u>INTRODUCTION</u>

After a rise in violent protests at reproductive healthcare facilities, the City enacted an ordinance that prohibits: (1) knowingly physically disrupting any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so, with four exceptions; or, (2) knowingly entering onto or creating an obstruction within a driveway during the reproductive healthcare facility's business hours, with four exceptions. Minneapolis Code of Ordinances, Ch. 405 (the "Ordinance").

Plaintiffs' allegations—that the Ordinance violates their First Amendment rights to speech, assembly, association, and religion, and that the Ordinance is unconstitutionally overbroad and vague—cannot survive as a matter of law and

all should be dismissed.  Plaintiffs' First Amendment speech and assembly claims fail because the Ordinance is a content-neutral, reasonable time, place and manner restriction supporting important governmental interests in public safety and health care access.  Plaintiffs' First Amendment association claim fails because the Ordinance does not impose a significant burden on Plaintiffs' associational rights. Plaintiffs' First Amendment free exercise claim fails because the Ordinance is neutral and generally applicable.

Plaintiffs' unconstitutional overbreadth argument fails because the Amended Complaint does not allege any facts to support that this claim differs in any way from their as-applied claim, which also fails.  Plaintiffs' vagueness claim fails because a person with ordinary intelligence understands what conduct is prohibited and because the Ordinance prohibits only knowing violations.

## FACTS

### I.     THE RISE OF VIOLENT PROTESTS AND DISRUPTIONS AT REPRODUCTIVE HEALTH CARE FACILITIES

Minneapolis reproductive healthcare facilities have experienced a steady rise in violent and physically disruptive conduct. Declaration of Tracey Fussy, Exhibit 1 at 3.  Planned Parenthood security access supervisor Kelly Williams testified that patients, employees and guests have repeatedly had difficulty accessing the building in the normal course of business as the result of protesters impeding traffic in front of the building gates. Fussy Dec., Exhibit 1 at 5-6. Senior

Director of Operations for Planned Parenthood Chrissy Anderson testified that the facility has had to employ escorts and traffic guides in order to protect the safety of people inside and outside of the facility. *Id*. at 11. Nonetheless, in the past two years, it has become common for protestors to stand in the driveway blocking access. *Id*. at 12. One protestor chased a patient out of the parking lot when the patient was leaving. *Id*.

The photos and videos entered into the legislative record in support of the Ordinance demonstrate the legitimacy of public safety concerns and the reality of obstructions of access. *Id*., Exhibits 4 (a) and (b). Multiple photographs show individuals stopping cars while the cars are at least partially in the street, disrupting the flow of traffic. *Id*. Individuals standing in the driveway also pose a risk of getting hit by a car as drivers attempt to navigate the vehicle entrance to the facility. *Id*., Exhibit 1 at 6. Videos show that community members using the sidewalk have had to walk into the street at the driveway to avoid these obstructions. *Id*., Exhibits 4 (a) and (b).

## II.   POLICE STAFFING AND RECRUITMENT HAS DECREASED SIGNIFICANTLY

The crime rate in Minneapolis has increased since the May 2020 murder of George Floyd. *Id*., Exhibit 2 at 2, 23. In January 2020, the total number of sworn officers in the Minneapolis Police Department ("MPD") was 879, with 25 of them on long term leave. *Id*. at 3. In stark contrast, in April 2021, it was projected that

MPD would have 690 sworn officers, with 46 of them on long term leave. *Id.* at 4. In April 2022, it was projected that MPD would have 637 sworn officers on leave, with none on long term leave. *Id.*

The 2020 budget provided for 888 sworn MPD officers. *Id.* However, the COVID-19 pandemic forced the City to make mid-2020 budget cuts, including layoffs of all Community Service Officers, institute a hiring freeze, and canceling an August 2020 police Academy. *Id.* The 2021 budget provided for 770 sworn officers with 118 held vacant in 2021. *Id.* at 5. Budgetary limitations notwithstanding, even when there are sworn officer positions to fill, the City has had difficulty attracting potential candidates. *Id.* at 6.

## III.    PRE-EXISTING SIDEWALK AND STREET ORDINANCES

Prior to the Ordinance, two other ordinances addressed blocking or obstructing people and vehicles on streets and sidewalks. Minneapolis Code of Ordinances ("MCO") section 385.65 provides that "[n]o person, in any public or private place, shall… walk, stand, sit, lie, or place an object in such a manner as to block passage by another person or a vehicle, or to require another person or a driver of a vehicle to take evasive action to avoid physical contact." It explicitly exempts First Amendment-protected speech and assembly.

Another provision, MCO section 466.240, states that "[i]t shall be unlawful for any person individually or as a member of any group of persons to loiter,

stand, sit, lie or remain upon or within any street, sidewalk, crosswalk or other public way or otherwise occupy any portion thereof with the intent or purpose to block, obstruct or interfere with the free passage of any pedestrian thereon or the orderly free flow of vehicular traffic on said street or public way." Like MCO section 385.65, it also explicitly exempts the lawful exercise of freedom of speech and assembly.

## IV.    THE ORDINANCE

As outlined above, the Ordinance prohibits two categories of conduct. First, in section 405.20, no one shall knowingly physically disrupt a person's access to, ingress to, or egress from the facility, absent four noted exceptions. The first two exceptions relate to persons using the driveway as a means to reach another destination. For example, driving through the driveway to enter the facility or walking across the driveway to reach a destination beyond the facility. The third and fourth exceptions relate to persons who need to use the driveway when acting within the scope of their employment duties. For example, firefighters or persons who work at the clinic.

Second, in section 405.30, the Ordinance states that no one shall knowingly enter the driveway or create an obstruction of the driveway during business hours, other than for the same exceptions as listed in 405.20. The Ordinance only applies to reproductive healthcare facilities as only those facilities were found to be

experiencing a specific rise in violent protests.  (Ex. 1 (Committee Hearing) at 3, ln 13-20).  The Ordinance also only applies to the driveway of the facility itself and the section of sidewalk that runs through the driveway.

## V.    PLAINTIFFS' PRACTICE

Plaintiffs are self-professed "sidewalk counselors" whose religion forbids abortions.  Compl. at ¶3. They attempt to disrupt women attempting to enter or exit reproductive healthcare facilities and place themselves in a position to have a personal conversations with those women, with the goal being to convince those women that Plaintiffs will help them should they decide not to have an abortion. Compl. at 19, 21, 22. They stop vehicles from entering the driveway to the facility to start that conversation and to distribute their literature at them.  Compl. at 22, 26-31, 50-51. Plaintiffs also engage in protests at the facility. Compl. at 34-40. They assert that they understand the Ordinance to prohibit such actions if they physically obstruct or hinder people or vehicles in the driveway.  Compl. at 65-68. They believe the only way to reach women is to physically obstruct their access to the facility. Compl. at 91. They assert that they have stopped engaging with women at the facility because they do not want to be prosecuted for violating the Ordinance. Compl. at 107.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain enough facts to state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009). When making the plausibility determination, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations."  *Wiles v. Capitol Indemnity Corp.,* 280 F.3d 868, 870 (8th Cir. 2002).

Additionally, the Court is not strictly limited to the four corners of the complaint. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.,* 643 F.3d 1115, 1120 (8th Cir. 2011).  Courts must consider materials incorporated into the complaint.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference. . . "); *see also Dittmer Properties, L.P.*

*v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (considering documents referred to "either directly" or "by inference" in the complaint). Likewise, courts should consider any document that is embraced by or integral to the complaint. *See e.g., Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004) (documents "embraced" by the complaint are "not matters outside the pleading"); *Zean v. Fairview Health Services*, 858 F.3d 520, 527 (8th Cir. 2017) (questionnaire and consent form were embraced by the complaint even though they contradicted consent allegation in Telephone Consumer Protection Act claim arising out of a contractual relationship); *Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928, 931, n. 3 (8th Cir. 2012) (considering matters "integral to the claim" does not convert a Rule 12(b)(6) motion to one for summary judgment). If a plaintiff does not provide the documents upon which the complaint relies to the court, "the defendant is free to do so." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003).

## ARGUMENT

I.    **PLAINTIFFS' FIRST AMENDMENT CLAIMS FAIL AS A MATTER OF LAW BECAUSE THE ORDINANCE IS CONSTITUTIONAL WITH RESPECT TO PLAINTIFFS' RIGHTS TO FREE SPEECH AND ASSEMBLY**

The Ordinance is a content-neutral law that is narrowly-tailored to serve an important government purpose. Although streets and sidewalks are traditional public forums, the government may nonetheless enact reasonable time, place and manner restrictions on First Amendment activities, provided the

restrictions are justified without reference to the content of the regulated speech. *Phelps-Roper v. Ricketts*, 867 F.3d 883, 891 (8th Cir. 2017) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). When the restrictions are content neutral, the restrictions must be "narrowly tailored to serve a significant governmental interest, and…leave open ample alternative channels for communication of the information." *Ward*, U.S. at 791. Here, the Ordinance is a reasonable time, place and manner restriction that is content neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication.

## A. The Ordinance is content neutral

The Ordinance does not attempt to regulate the content of any individual's speech, but rather aims to regulate physical conduct through restrictions on the time, place and manner of the individual's physical activity—including both expressive and non-expressive activity—to ensure patients can physically enter and exit healthcare facilities safely. Plaintiffs argue the Ordinance is not content-neutral for two reasons: (1) it is only in effect at reproductive health facilities; and (2) alleged stray remarks by one legislator. For the reasons outlined below, both of these arguments fail.

### 1. The Ordinance serves purposes unrelated to content of expression

Plaintiffs first argue that the Ordinance is not content neutral, because it is only in effect at reproductive health care facilities and therefore targets their speech. This argument fails as a matter of law.

The first inquiry in determining content neutrality is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791 (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295, (1984)). A regulation is content-neutral if it is "justified without reference to the content of the regulated speech." *Id.* When a regulation's purpose is unrelated to content, the regulation is deemed neutral, "even if it has an incidental effect on some speakers or messages but not others." *Id.* (citing *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47-48, (1986)). The government's purpose of the law is what controls. *Ward,* U.S. at 791.

The government purposes for the Ordinance, as stated in the legislative file, include public safety, patient access to healthcare, and the unobstructed use of public sidewalks and streets, in response to physical conduct which blocked patient access to the clinic.   In response, the Ordinance prohibits physically disruptive conduct, without reference to any particular actor or any particular associated speech or other expressive activity, and creates a very limited "buffer zone" comprised of only the facility's own driveway and the sidewalk directly crossing the driveway. It is only in those two very specific areas that persons may

not knowingly physically disrupt persons seeking access to the facility. Moreover, because the problems are occurring only at reproductive healthcare facilities, the Ordinance is limited to those locations. Accordingly, the Ordinance directly addresses the problem the City faces without regard to who is obstructing access or what type of content they seek to express, and regardless of whether the physical obstruction does or does not constitute expressive activity.

Courts have consistently held that buffer zone laws are content neutral. *See e.g., Hill v. Colorado*, 530 U.S. 703 (2000); *see also McCullen v. Coakley*, 573 U.S. 464 (2014); *see also Turco v. City of Englewood, New Jersey*, 935 F.3d 155 (3d Cir. 2019); *see also Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019), *cert. denied sub nom. Price v. City of Chicago, Illinois,* 141 S. Ct. 185, 207 L. Ed. 2d 1116 (2020). In *McCullen v. Coakely*, the Supreme Court considered and rejected the same argument Plaintiffs make here with respect to a similar but more restrictive law under First Amendment challenges. 573 U.S. 464, 471-72 (2014). There, a Massachusetts law created a 35-foot buffer zone around entrances and driveways of facilities, other than hospitals, that performed abortions. *McCullen*, 573 U.S. at 472. The *McCullen* plaintiffs, self-professed sidewalk counselors, argued that the law was content-based, because it was specifically in effect only at facilities that performed abortions. *Id.* at 477-78. The *McCullen* court concluded that the fact that the law

inevitably restricted more abortion-related speech than other topics did not make the facially content neutral law become content based. *Id.* at 479-80.

> [a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.

*Id.* at 480 (citing *Ward* at 791).

In *McCullen*, the stated purposes of the Massachusetts law were identical to the purposes of the Ordinance here: public safety, patient access to healthcare, and unobstructed use of sidewalks. The *McCullen* Court noted that all of those purposes had previously been deemed to be content neutral. *Id.* (citing *Boos*, 485 U.S. 312, 321 (1988). Moreover, the Court found that governments enact laws to counter the actual problems that confront them and thus a law need not be overbroad by regulating problems that do not exist to be content neutral. *Id.* at 481 (quoting *Burson v. Freeman*, 504 U.S. 191, 308 (1992). Here, the problems are occurring at reproductive healthcare facilities and not other locations. The Ordinance directly addresses the problem the City faces and without regard to who is obstructing access or what message they may or may not be attempting to communicate.

    **2.  Stray remarks by a single legislator do not demonstrate a lack of content neutrality**

Plaintiffs next argue that the purpose of the Ordinance is not content neutral based solely on two alleged statements made by one of the many council members

who voted for the Ordinance, without reference to where or when the statements were made.  Plaintiffs allege that Council Member Lisa Goodman stated, without reference to when and where this alleged statement was made, that the Ordinance "was a creative decision while she awaits a codifying of abortion rights in Minnesota and nationwide." (Compl. at ¶57). Plaintiffs also allege that Council Member Lisa Goodman stated:

> Never in my 25 years of being here have I ever gotten to do something as meaningful in the reproductive rights movement. I am proud of the fact that the institution, the mayor, the administration, the council, have come to an agreement that women want access. We want the state to do something, but we want women to have access right now.

(Compl. at ¶58). Rather than suggesting a motive to target the content of Plaintiffs' speech, these statements support one of the purposes of the Ordinance: to protect individuals' physical access to reproductive healthcare facilities in the face of an uptick of physical obstruction.  Her alleged comments are about healthcare access, which is thwarted when the driveway to the facility is obstructed. Her alleged comments are not about the content of Plaintiffs' speech.

But even if these comments were indicative of a purpose other than public safety, patient access to healthcare, and the unobstructed use of sidewalks, Plaintiffs' argument fails because they are, at most, stray comments by a single legislator.   "Stray remarks of individual legislators are among the weakest evidence of legislative intent." *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct 2228,

2256 (2022).  Arguments attempting to discredit laws based on legislative motives are historically disfavored because piecing motive of a whole body is a "hazardous matter." *Dobbs*, 142 S.Ct at 2255-56 (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)). "This Court has been reluctant to attribute those motives to the legislative body as a whole because what motivates one legislator to make a speech about a statute is not necessarily what motives scores of others to enact it." *Id*. at 2256 (quoting *O'Brien*, 391 U.S. at 384)).

The Eighth Circuit has also dismissed such arguments, finding that an isolated statement by an individual legislator is not a sufficient basis from which to infer the intent of the entire legislative body without showing that a "significant segment" of the legislature shared the single legislator's views, and courts will not conclude that their statements accurately reflect the legislative purpose underlying the law.  *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1551 (8th Cir. 1996) (citing *O'Brien*, 391 U.S. at 383–84) (when determining constitutionality of a statute, it would be improper to decide its fate "on the basis of what fewer than a handful of Congressmen said about it."). Goodman's alleged comments did not take place within any legislative hearing, and there is no indication that any other council member voted based on those comments.  It is undisputed that physical access to reproductive healthcare is in fact the problem that is confronting the City and what the Ordinance addresses.

**B. The Ordinance is narrowly tailored to a significant governmental interest.**

To survive a First Amendment speech and assembly challenge, content neutral restrictions must be narrowly tailored to serve a significant governmental interest. Plaintiffs allege that the Ordinance is not narrowly tailored because it is not the least restrictive means of serving the government's interest. They also allege that the City does not have a significant interest and that the Ordinance does not leave open alternative channels for communication. But as outlined below, these allegations conveniently ignore the record. To the contrary, the Ordinance is narrowly tailored to serve a significant governmental interest and does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.

**1. The Ordinance serves a significant interest.**

As noted above, public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways, have already been held to be significant government interests. *McCullen*, 573 U.S. at 486-87 (citing *Schenck v. Pro–Choice Network of Western N.Y.*, 519 U.S. 357, 376 (1997); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 767–768 (1994)). As in *McCullen*, the Ordinance clearly serves these interests. *Id.* at 487.

### 2. The Ordinance is narrowly tailored and does not burden more speech than necessary.

A content-neutral restriction of speech, "need not be the least restrictive or least intrusive means of" serving the government's interests. *Id*. at 798. Courts do not interpret the least restrictive test literally. *McCullen*, 573 U.S. at 486. And government are not required "to refute every conceivable option in order to satisfy the least restrictive [test]." *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996)).

> [R]estrictions on time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.

*Ward*, 491 U.S. at 797-98 (quoting *U.S. v. Albertini*, 472 U.S. 675, 689 (1985).

Here, the Ordinance is narrowly tailored to its purposes. The Ordinance is aimed at conduct that occurs outside of and physically obstructs access to reproductive healthcare facilities, which is defined as "a facility, other than a hospital, where abortions are offered or performed in accordance with state law, and shall include, but not be limited to, the structures, grounds, and parking facilities occupying the same lot as the facility." MCO § 405.10. Moreover, Section 405.20 prohibits disruption of access to, ingress to, or egress from a facility, but only by physical means. Section 405.30 only prohibits obstructing the standard width driveway of a facility and only during the facility's business hours. It limits the use of the driveway to those who are using it as a direct path from point A to point B or as part of the scope of their employment.

With respect to Section 405.20, the Ordinance is the exact type which the *McCullen* court cited as an example of an acceptable law. *See* 573 U.S. at 490-92. The limitations the Ordinance imposes on the driveway are nowhere near as geographically expansive as those in *McCullen* and, unlike *McCullen*, are limited to the times and locations where public safety, patient access, and use of sidewalks and street obstruction issues are occurring.  Courts have upheld fixed "buffer zones" against First Amendment challenges not only for abortion clinics but in other circumstances, including funerals. See, e.g., *Hill v. Colorado*, 530 U.S. 703 (2000) (upholding floating 8-foot buffer zone around individuals outside abortion clinics); *Schenck v. Pro-Choice Network Of W. New York*, 519 U.S. 357 (1997) (upholding fixed 15-foot buffer zone around abortion clinic); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753 (1994) (upholding fixed 36-foot buffer zone around abortion clinic entrances and driveway); *Fischer v. City of St. Paul*, 894 F. Supp. 1318, 1327 (D. Minn. 1995) (upholding temporary fixed buffer zone that included all public sidewalks surrounding abortion clinic); *Phelps-Roper v. Ricketts*, 867 F.3d 883, 895 (8th Cir. 2017) (upholding temporary fixed 500-feet buffer zone around funerals); *Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678, 683 (8th Cir. 2012) (upholding temporary fixed 300-feet buffer zone around funerals).

The Ordinance is even more narrowly tailored than the buffer zones upheld in other cases.  Here, sidewalk counselors such as Plaintiffs can stand on the side

of a driveway and protest or speak or hold up literature as long as they do not enter the driveway itself in doing so.  Unlike *McCullen*, they can be less than 35 feet away from persons with whom they demand to speak to closely.  537 U.S. at 469. They are, at most, half the width of a standard driveway away, a typical distance society kept during the COVID-19 pandemic, and certainly within conversational distance. Should Plaintiffs speak to a person entering the driveway while Plaintiffs are on the side of the driveway, the person can simply walk over to them if they are interested in hearing from them.  Ample avenues of communication still remain open.  Plaintiffs are merely required to stay out of the confines of the physical driveway. In *McCullen*, the plaintiffs argued their speech was restricted only once they were no longer able to stand on the sidewalks beside the driveway.  *Id*. at 490. Here, Plaintiffs may still do so.

Plaintiffs are essentially arguing that they cannot exercise their protected First Amendment Rights without being physically disruptive. Plaintiffs go so far as to admit holding a protest in the street, to avoid having to comply with the Ordinance.  (Compl. at ¶ 80-83).  What they do not mention is that they could simply hold a protest on the sidewalk and move out of the way when someone needs to access the clinic.  Likewise, they are free to exercise their speech rights and attempt to engage others in conversation, so long as, while

doing so, they do not employ physical disruption as a means of keeping that individual in the conversation against their will.

### 3. Existing Ordinances were not capable of ameliorating the problem.

Plaintiffs argue the City already has an ordinance that prohibits the blocking of sidewalks which would meet the City's governmental interests.  Compl. at ¶115. What Plaintiffs crucially omit is that MCO § 466.240 exempts from its prohibition the exercise of First Amendment activities.   Because much of the physically disruptive conduct at which the Ordinance is aimed is undertaken by individuals who claim to be exercising First Amendment rights, Section 466.240 cannot and does not meet the problem the City faces, because it does not allow for the time, place and manner restriction that the Ordinance provides.  The Ordinance merely removes the First Amendment exemption from the existing ordinance and narrowly applies it to the places—reproductive healthcare facilities—that are facing obstruction of their driveways, regardless if the obstruction is for the purpose of expressive or non-expressive activity. The Ordinance is precisely the type of restriction that the *McCullen* Court opined would satisfy the First Amendment.  *Id*. at 492 (citing Worcester, Mass., Revised Ordinances of 2008, ch. 12, § 25(b)("No person shall stand, or place any obstruction of any kind, upon any

street, sidewalk or crosswalk in such a manner as to obstruct a free passage for
travelers thereon;") Boston, Mass., Municipal Code, ch. 16–41.2(d) (2013)).

> **4.  Surveillance is not a less restrictive alternative because the City
> does not have the resources to monitor the facility at issue.**

The City is currently facing an increased crime wave and reduced staffing
within the Minneapolis Police Department.   The City does not have, as an
alternative to the Ordinance, the personnel to surveil the facility for persons
obstructing the driveway and order them to move as *McCullen* suggested
Massachusetts had.  *Id*. at 496.

This situation is akin to *Burson v. Freeman*, 504 U.S. 191, 207 (1992), where
First Amendment restrictions were upheld. There, police officers surveilling
polling places for statutory violations was not a less restrictive option, because
they were generally barred from the vicinity of the polls. Similarly, in *Reilly v. City
of Harrisburg*, 790 Fed.Appx. 468, 477 (3rd Cir. 2019), the Third Circuit considered
the law enforcement capabilities of a city to determine whether utilizing police
force was a viable, less restrictive alternative to speech restrictions.  In *Reilly*, the
City of Harrisburg was $300 million in debt, placed under receivership and could
not hire additional officers or pay for overtime for officers to patrol clinics.  790
Fed.Appx at 477 (*citing Turco v. City of Englewood*, 935 F.3d 155, 167, 169 (3rd Cir.
2019) (recognizing relevance of a police department's "finite resources" in the
narrow tailoring analysis)).  The Third Circuit concluded that the city's inability to

utilize police forces to enforce less restrictive laws and the law's reduction from a 24-foot to a 20-foot buffer zone were sufficient to demonstrate it tried or considered some less restrictive alternatives.  *Id.* at 478.

Here, the City's police force is indisputably diminished significantly at the height of a violent crime wave.  It too has finite resources, and an inability to hire as many officers as needed to provide constant coverage of the facility during business hours.  This, coupled with the existing ordinances' inability to prevent the obstruction of driveways when the obstruction is connected with the exercise of First Amendment activities, demonstrate that the City could not implement less restrictive alternatives.  Accordingly, the Ordinance is narrowly tailed to serve a significant government interest.

## II.   THE AMENDED COMPLAINT CONTAINS ONLY BALD, CONCLUSORY ASSERTIONS THAT THE ORDINANCE IS VAGUE AND OVERBROAD.

Plaintiff argues the Ordinance is vague and unconstitutionally overbroad because it "abuts upon sensitive areas of basic First Amendment resulting by its operation of inhibiting the exercise of free speech." Compl. at ¶102.  Put simply, Plaintiffs' allegation is that the Ordinance is overbroad and vague because it inhibits speech. Plaintiffs provide no factual allegations, and this conclusory assertion is insufficient as a matter of law.

### A. The Ordinance is not facially overbroad.

Plaintiffs' overbreadth argument fails because they include no factual allegations to demonstrate that their challenge to the First Amendment as applied to their activities is substantially different than their challenge on facial overbreadth and because the Ordinance regulates conduct and not pure speech.

### 1. The Ordinance regulates conduct and not pure speech.

The Ordinance regulates the conduct of physical disruption and obstructing the driveway to the facility. Overbreadth challenges are weakened when the law moves away from merely prohibiting pure speech to a scenario in which the thrust of the law is to prohibit certain conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Even when evaluating laws that, if worded too broadly may deter protected speech, there is a balancing point where the law prohibiting conduct will stand nonetheless. *Broadrick*, 413 U.S. at 615.

The purpose and language of the Ordinance make clear that it regulates acceptable situations to enter occupancy of the driveway, rather than speech within the driveway. The Ordinance leaves available ample room on the sidewalks abutting the driveway for protests, communicating with patients, and holding up signs or literature, furthering the conclusion that the Ordinance is not directed at pure speech. If the objective of the Ordinance *was* actually to prevent pure speech, which it is not, little value would be gained by allowing speech so close to the driveway. If the purpose was to regulate pure speech, it would include

portions of the sidewalk next to the driveway and surrounding the reproductive

healthcare facility, which it does not.  Speech is only incidentally regulated if the

person enters the driveway.  Thus, it is physical conduct that triggers the

Ordinance, not speech.  Accordingly, the Ordinance regulates conduct and not

pure speech.

>   **2.  The Amended Complaint makes no factual allegations supporting a difference between Plaintiffs' "as applied" challenge and their facial overbreadth challenge.**

When the law affects conduct and speech, the "overbreadth of a statute must

not only be real, but substantial as well, judged in relation to the statute's plainly

legitimate sweep." *Id.*

> [T]he party before the court must identify a significant difference
> between his claim that the statute is [facially] invalid on overbreadth
> grounds, and his claim that it is unconstitutional as applied to his
> particular activity.

*Josephine Havlek Photographer, Inc. v. Vill. Of Twin Oaks,* 864 F.3d 905, 912

(quoting *Van Bergen v. Minn.*, 59 F.3d 1541, 1549 (8th Cir. 1995).

Here, Plaintiffs make only bald, conclusory assertions regarding their facial

overbreadth challenge. However, the Court is "free to ignore legal conclusions,

unsupported conclusions, unwarranted inferences and sweeping legal

conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.*,

280 F.3d 868, 870 (8th Cir. 2002).  The Amended Complaint contains no factual

allegations regarding any scenarios, let alone realistic and substantial scenarios,

where the Ordinance would inhibit First Amendment challenges NOT before the Court. Plaintiffs have failed to allege any significant difference between their claim that the ordinance is facially invalid on overbreadth grounds and their claim that it is unconstitutional as applied to their activities. *See Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, (1984)holding overbreadth challenge failed as plaintiff failed to identify any significant difference between their claim that ordinance is overbroad and their claim that it is unconstitutional as applied). In the absence of factual allegations supporting descriptions of arguable overbreadth, courts do not apply such "strong medicine" as the overbreadth test. Plaintiffs' claim fails because they have alleged no facts, substantial descriptions, of facial overbreadth posed by the Ordinance and because they shed no light on how their as-applied challenge differs from their facial overbreadth claim. *N.Y. State Club Ass'n v. City of N.Y.,* 487 U.S. 1, 14 (1988). Plaintiffs' claim fails because they have alleged no facts, substantial descriptions, of facial overbreadth posed by the Ordinance and because they shed no light on how their as-applied challenge differs from their facial overbreadth claim.

Moreover, Plaintiffs' single sentence allegation of overbreadth fails to satisfy the requirements of *Twombly*. Here, the Court should ignore the "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping

legal conclusions cast in the form of factual allegations," *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002), and dismiss this claim.

**B.    The Ordinance is not vague.**

Plaintiffs allege that the Ordinance is vague because it abuts First Amendment activity. To survive a vagueness challenge, a governmental policy must satisfy a two-prong test: (1) give adequate notice of what conduct is prohibited; and (2) not be subject to arbitrary enforcement. *Rowles v. Curators of University of Missouri*, 983 F.3d 345, 356 (8ᵗʰ Cir. 2020) (citing *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009). To give adequate notice, the law: (1) must provide persons of ordinary intelligence a reasonable ability to know what they cannot do; and, (2) cannot authorize or encourage arbitrary and discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

**1. The Ordinance sufficiently puts individuals on notice what conduct is prohibited.**

Plaintiffs provide no factual allegations about how or why the Ordinance is vague or whether they claim a facial challenge or an as-applied challenge. Instead, Plaintiffs allege merely that the word "physical" is not defined. The Complaint offers no allegations to support how it is vague, and to whom. Here, there is not a single alleged fact that supports Plaintiffs' vagueness assertion. For these reasons, Plaintiffs' vagueness claim fails the motion to dismiss standard and should be dismissed on that basis alone. *Iqbal,* 556 U.S. at 678. Additionally, it is

difficult to envision a scenario in which a person of common, ordinary intelligence could not understand that physically disrupting someone would mean disrupting someone (as defined) with something tangible like, for example, with the disrupter's own body.   In fact, Plaintiffs seem to have forgotten that they themselves figured this out in their original Complaint, where they noted that "The definition "physical" is found in dictionaries, and in one, means as accurately quoted as follows: "of or relating to the body as opposed to the mind." (Original Complaint ¶ 161) (quoting New Oxford American Dictionary 1321 (Angus Stevenson, Christian A. Lindberg eds., 3rd ed., Oxford University Press 2010)).

OBJOBJ

A similar law was enacted in Colorado and upheld in *Hill v. Colorado*, 530 U.S. 703 (2000), despite a vagueness claim.  There, the statute made it unlawful for any person within 100 feet of a healthcare facility's entrance to "knowingly approach" within 8 feet of another person. *Hill*, 530 U.S. at 703 (2000).   The plaintiffs argued the term "approach" was vague, opining that an outstretched arm constitutes approaching within the context of the law.  *Id*. At 733. The *Hill* Court noted that words will always be susceptible to some degree of uncertainty because they are not mathematical equations. *Id*. At 733.  The *Hill* Court, however, found the law was not vague because it was clear what the ordinance as a whole prohibited.  Here, the original and Amended Complaint themselves demonstrate

that Plaintiffs know what they are prohibited from doing under the Ordinance: stay out of the driveway unless they fall into one of the exemptions.  Multiple allegations in the Amended Complaint bemoan that Plaintiffs cannot enter the driveway to force a conversation or literature upon a person seeking to enter the facility or walk back and forth across the driveway in protest in a manner that does not fall within the exemptions.  Any suggestion that Plaintiffs do not understand what they can or cannot do under the Ordinance is disingenuous.

Further, as part of its determination that the ordinance in *Hill* was not vague, the Court especially noted that the ordinance required a "knowing" approach; a scienter requirement which ameliorated any concern of accidently violating the ordinance.  *Id*. at 732-33.  Here, the Ordinance also contains a "knowing" requirement ("[n]o person shall knowingly physically disrupt," MCO § 405.20; "[n]o person shall knowingly enter," MCO § 405.30), which also ameliorates any concerns that any person does not know what "physical" means in the context of the Ordinance as a whole. Accordingly, Plaintiffs' vagueness challenge fails.

### 2. The Ordinance does not authorize or encourage arbitrary enforcement.

Plaintiffs again offer no factual allegations to support their claim that law enforcement are arbitrarily or discriminatorily enforcing the Ordinance; the claim should be dismissed for that reason alone. *Iqbal,* 556 U.S. at 678.  The Ordinance is clear as to the time, location and conduct that is prohibited.  Section 405.20

prohibits knowingly physically disrupting any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempting to do so. Section 405.30 prohibits knowingly entering onto or creating an obstruction within the driveway of a reproductive healthcare facility during the facility's business hours. Both sections include the same four exceptions for allowed conduct. Plaintiffs clearly understand these exemptions, as they describe their applicability in detail in their Complaint. See Compl. ¶¶ 64-66.

Moreover, the Ordinance language is sufficiently specific that police have not been given broad discretion to determine whether conduct is prohibited. *See Grayned v. City of Rockford*, 408 U.S. 104, 109-10 (1972). In *Grayned*, the city code prohibited, for the protection of schools,

> noisy or diversionary activity that disrupts or is about to disrupt normal school activities. It forbids this willful activity at fixed times— when school is in session—and at a sufficiently fixed place— 'adjacent' to the school.

408 U.S. at 110-11. The Court went on to conclude that the ordinance did not authorize arbitrary enforcement because the announced purpose was clear and the ordinance was written specifically for the context intended to be regulated. *Id*. at 112 ("We do not have here a vague, general "breach of the peace" ordinance, but a statute written specifically for the school context, where the prohibited disturbances are easily measured by their impact on the normal activities of the school."). With those parameters in place, the Court held that the ordinance gave

fair notice and defined boundaries sufficient for law enforcement and judges to understand and follow. *Id.* at 111, 114. The *Grayned* Court then contrasted the ordinance with phrases in other laws that do contain vague terms such as agitate, arouse, interrupt, and disquiet. *Id.* at 113. As in *Grayned*, the Ordinance uses easily understandable terms and is sufficiently specific so that both citizens and law enforcement know what is not allowed, at what time, where and what the purpose of the Ordinance is. Accordingly, the Ordinance is not unconstitutionally vague.

## II.    THE ORDINANCE NEITHER IMPLICATES NOR VIOLATES PLAINTIFFS' ASSOCIATIONAL RIGHTS

Count II[1] alleges the Ordinance violates Plaintiffs' right to assemble on public streets and sidewalks to associate with women entering or exiting the facility. Plaintiffs' claim is based not on a purported inability under the Ordinance to associate with each other, but rather a purported restriction to expressively associate with unknown, hypothetical individuals. Specifically, Plaintiffs allege that the Ordinance infringes on their right to expressively associate with other like-minded individuals, "such as persons entering or exiting an abortion facility in the

---

[1] To the extent the Amended Complaint can be interpreted to assert freedom of expressive association claims on behalf of individuals entering or exiting the facility, those claims must be denied, as Plaintiffs do not have standing. Plaintiffs have not asserted that they, themselves, enter or exit the facility. *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)

pursuit of the Plaintiffs' political, social, educational, religious, and cultural goals." (Compl. 120.)

Plaintiffs, however, do not assert any factual, non-speculative allegations in support of the proposition that those entering or exiting a hypothetical abortion facility have any interest whatsoever in assembling with Plaintiffs, let alone share Plaintiffs' beliefs and political pursuits. Nor do Plaintiffs explain how their associational freedoms are hampered when they are fully free to associate with those individuals in areas outside of the facility's driveway. In determining whether an Ordinance is unconstitutional, the Court must be careful not to go beyond the actual requirements of the Ordinance itself and speculate about "hypothetical" or "imaginary" cases. *See United States v. Raines*, 362 U.S. 17, 22 (1960). Here, Plaintiffs' claim rests exclusively on speculative, theoretical interactions between hypothetical individuals and is legally insufficient to establish that Plaintiffs' expressive association rights have been infringed.

The right to expressive association protects groups from being forced to accept members they do not like. *Telescope Media Group v. Lucero*, 936 F.3d 740, 760 (8th Cir. 2019)(citing, *Rumsfeld v. F.A.I.R.*, 547 U.S. 47, 62 (2006)). Here, Plaintiffs are not being forced to associate with people they do not like. Keeping Plaintiffs out of the driveway for reasons other than those specifically excepted does not require that Plaintiffs accept any particular member. Plaintiffs seek the

opportunity to speak with strangers to persuade them to change their minds about an issue. Plaintiffs' claims are speech issues disguised as a free association claim. "In modern First Amendment law, however, there is no free-standing right to free assembly." *First Lutheran Church v. City of St. Paul*, 326 F.Supp.3d 745, 67 (D. Minn. 2018)(citing John D. Inazu, *The Forgotten Freedom of Assembly*, 84 TUL. L. REV. 565, 610 (2010); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, (1983) ). This is appropriately analyzed as a Free Speech claim. The Ordinance is constitutional as discussed in Section II above.

The right to gather and engage in expressive association is not an absolute right. *SH3 Health Consulting v. Page,* 459 F.Supp 1212, 1225 (E.D. MO 2020) (*citing Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984)). "'[W]hen expressive conduct occurs on public grounds … the government can impose reasonable time, place, and manner restrictions.'" *U.S. v. Griefen*, 200 F.3d 1256, 1259–1260 (9th Cir. 2000) (*quoting United States v. Johnson,* 159 F.3d 892, 895 (4th Cir. 1998)). Such restrictions are constitutionally valid if they are content-neutral and narrowly tailored to serve a compelling governmental interest. *Heartland Acad. Com'y Church v. Waddle*, 427 F.3d 525, 535 (8th Cir. 2005) (citing, Roberts, 468 U.S. at 623). The type of a place sought to be regulated determines what time, place and manner restrictions are reasonable. *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972). For

the reasons argued above in Section II. above, the Ordinance is constitutionally valid.

Additionally, staying out of the driveway does not inhibit any person who wants to associate with Plaintiffs from leaving the driveway to associate with them.  Freedom of association, however, is not violated because a group cannot assemble at a 'particular location of property.' *Irshad Learning Center v. Cnty of DuPage*, 804 F.Supp.2d 697, 718 (N.D. Ill. 2011). "[T]he fact that the church's congregants cannot assemble at that precise location does not equate to a denial of assembly altogether." *Irshad*, 804 F.Supp.2d at 718 (quoting, *San Jose Christian College, v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004)).  This is particularly true when the location at issue is the size of a driveway. Plaintiffs are free to associate on the sidewalk on either side of the driveway as long as they stay out of the driveway.

## III.   THE ORDINANCE DOES NOT VIOLATE THE FREE EXERCISE OF RELIGION

Count III of the Amended Complaint alleges that the Ordinance violates Plaintiffs' right to exercise religion under the First Amendment, arguing that by preventing Plaintiffs from entering the driveway for purposes other than the listed exceptions, the Ordinance interferes with Plaintiffs' ability to freely exercise their

religious beliefs. This claim fails as a matter of law because the Ordinance is both neutral and generally applicable.

"The [F]ree [E]xercise [C]lause does not prohibit governments from validly regulating religious conduct." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219 (10th Cir. 2009)(citations ommited).  As a threshold matter, the Ordinance does not regulate religious thoughts, but only individuals' ability to enter the driveway for non-exempted purposes.  As a matter of law, the Ordinance does not violate the Free Exercise Clause because it is a neutral rule of general applicability, even if it incidentally burdens individuals' religious practice or belief.  *Id.* (citing *Employment Div. v. Smith,* 494 U.S. 872, 879 (1990)).  "Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Id.*

**A. The Ordinance is a neutral rule of general applicability.**

A rule is neutral "so long as its object is something other than the infringement or restriction of religious practices." *Corder*, 566 F.3d at 1233.  Factors "relevant to the assessment" of government neutrality include the historical background of the law, what lead to the enactment of the law, and legislative history.  *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018) (citation omitted).

Here, as fully set forth above, the objective of the ordinance is public safety and access to healthcare.  This is fully borne out in the language of the Ordinance and in the legislative history, which chronicles the rise of violent conduct and physical disruption in the driveway of a reproductive healthcare facility.  The Ordinance is not specifically directed at any religious practice. *See Chiles v. Salazar*, 2022 WL 17770837 *11 (D. Colo. Dec. 19, 2022)(holding law banning mental health professionals from engaging in minor conversion therapy did not violate Free Exercise because it was not directed at any religion, even though it was well-known that some religions supported conversion therapy). To the contrary, *all* physical disruption and occupation in the driveway is prohibited.  The Ordinance does not prohibit entering the driveway for Plaintiffs' counseling purposes because of its religious nature, but rather for public safety and access.  **Plaintiffs have presented no facts to support an argument that the Ordinance is not generally applicable. In fact,** in their original Complaint, Plaintiffs made several statements regarding the reach of the Ordinance which demonstrate that it applies neutrally, and not just to religious activities:

> All other persons engaged in other speech activities, such as seeking a signature on a petition or otherwise educating a person on other matters of public concern, by providing written materials, under § 405.30(1) are unable to engage in a conversation with a woman or companion or both entering or exiting the Minneapolis Planned Parenthood facility either on the sidewalk or the driveway or both.
>
> …

Likewise, the entire sidewalk facing Emerson Avenue South parallel to the Minneapolis Planned Parenthood facility … is an exclusion zone under Chapter 405, such as under § 405.20…. [P]etitioning political candidates or any other person engaged in political speech activities cannot do so because it would involve a physical disruption as defined under Chapter 405.

See Complaint at ¶¶ 132-138.

### B. The Ordinance passes rational basis review.

Laws that are neutral and generally applicable are only subject to rational basis review under the Free Exercise clause. *Grace United Methodist Church*, 451 F.3d at 649 (citation omitted); see also *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 52 (10th Cir. 2013) ("Government actions that stem from 'neutral' rules of 'general applicability' are subject to rational basis review." (citation omitted)). Here, the Ordinance is not only rationally related to legitimate government interests, it is narrowly tailored to protect the City's substantial interests in providing for public safety and access to health care.

### CONCLUSION

For the reasons stated above, Plaintiffs' Amended Complaint fails to state a cognizable legal claim against Defendant City of Minneapolis, and all of Plaintiffs' claims should be dismissed with prejudice.

Dated: June 5, 2023                    KRISTYN ANDERSON
                                       City Attorney
                                       By    *Tracey Fussy*

TRACEY FUSSY (#311807)
SHARDA ENSLIN (#389390)
AMY SCHUTT (#395647)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-2254
(612) 673-5052
tracey.fussy@minneapolismn.gov
amy.schutt@minneapolismn.gov

*Attorneys for Defendant City of Minneapolis*