# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PRO-LIFE ACTION MINISTRIES, LUCY MALONEY, THOMAS WILKIN, and DEBRA BRAUN, | ) Case No. 23-CV-853 (JWB/DJF)<br>)<br>) |
| Plaintiffs, | ) **PLAINTIFFS' RESPONSE IN**<br>) **OPPOSITION TO DEFENDANT'S**<br>) **MOTION TO DIMSISS** |
| v. | ) |
| CITY OF MINNEAPOLIS, A MINNESOTA MUNICIPALITY, | )<br>)<br>) |
| Defendant. | ) |

Pursuant to Local Rule 7.1 and the orders of the Court, Plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun (collectively, "Plaintiffs") hereby file this memorandum of law in opposition to the Defendant City of Minneapolis, Minnesota's Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure:

## INTRODUCTION

This case concerns the First Amendment rights of Plaintiffs, who seek to distribute free literature and engage in personal, consensual, and caring conversations with individuals in public. An ordinance recently enacted by the City of Minneapolis ("City"), however, now prohibits Plaintiffs engaging in this thoroughly peaceful and constitutionally protected activity at the location

where this speech would be most effective and meaningful—outside of the Minneapolis Planned Parenthood clinic.

The City's motive for the new Ordinance, as plainly alleged in Plaintiffs' Amended Complaint, is disagreement with Plaintiffs' message. But, even if this motive were not so alleged, the Amended Complaint nonetheless plausibly describes how the Ordinance fails the constitutional test for restrictions on speech near abortion clinic established by the U.S. Supreme Court, most recently in *McCullen v. Coakley*, 573 U.S. 464 (2014). Similarly, the ordinance violates Plaintiffs' right to expressive association and right to free exercise, both of which are protected by the First Amendment. Finally, the Ordinance is facially vague and overbroad. Accordingly, the City's motion to dismiss should be denied.

## STATEMENT OF FACTS

Plaintiff Pro-Life Action Ministries (PLAM) is a Minnesota non-profit corporation. (D.E. #7: Am. Compl. ¶ 3.) It is an interdenominational Christian organization dedicated to publicly defending the sanctity of human life through sidewalk counseling. (*Id.*) PLAM is known for its daily presence of staff or volunteers in front of abortion facilities to offer prayer, love, support, and alternatives to abortion-minded mothers. (*Id.*)

PLAM's primary mission is its sidewalk counseling ministry. (*Id.*) This ministry involves offering both verbal communications by initiating a

conversation with those entering the Planned Parenthood facility[1] and offering written materials, literature, outlining alternatives to abortion and help for anyone wishing to pursue those alternatives.  (*Id.* ¶¶ 15, 19.)  The literature identifies alternative choices and information, including, but not limited to the following: housing options, child care options, agency support, non-profit organizational assistance, including pre-natal care or services, parenting resources including diapers, formula, clothes, parenting classes, counseling and more, while including information about child development that shows parents how the child has developed at different stages of the pregnancy. (*Id.* ¶ 17; *see also* Am. Compl. Exhibit 2 (brochures)).   PLAM estimates that, through its efforts, it has saved over 3,600 babies from abortion.  (*Id.* ¶ 13.)

Plaintiffs Lucy Maloney, Thomas Wilkin, and Debra Braun are PLAM staff members.  (*Id.* ¶¶ 4, 5, 6.)  Each also engages in sidewalk counseling and believes this work is a way to assist God in His plan regarding families.  (*Id.*) And, when they engage in conversations with persons entering the Planned Parenthood facility, they consider it essential to maintain a caring demeanor, a calm tone of voice, and direct eye contact.  (*Id.* ¶ 19.)  They believe that this is the most effective means of communicating to dissuade a woman from having an abortion.   (*Id.*)  Thus, loud, obnoxious, or confrontational

---

[1] Minneapolis has only one Planned Parenthood abortion facility located on Logan Avenue.

mannerisms are counterproductive to their ministry and not engaged in.[2] (*Id.* ¶ 20.)

For example, Lucy Maloney, PLAM's communication manager, has personally spoken with mothers and fathers outside the Minneapolis Planned Parenthood facility to connect with them and offering information about abortion and options to abortion. (*Id.* ¶ 4.)

Thomas Wilkin is PLAM's Sidewalk Counseling Manager; he also trains volunteers in sidewalk counseling. (*Id.* ¶ 5.) During his sidewalk counseling at Planned Parenthood, Wilkin engages with pregnant women and others, including impending fathers. (*Id.*) In addition to talking with people about abortions and pro-life alternatives, Wilkin and other PLAM volunteers or staff

---

[2] In the transcript submitted by the City of the Council hearing regarding enactment of the Ordinance (which Plaintiffs object to considering), reference is made to an incident involving a PLAM volunteer who interacted with a clinic escort. (Decl. of Fussy – Ex. 1, H'rg Trans. 6:25 & 7:1–14; *see also,* https://www.youtube.com/watch?v=k4aA6ZKMyGc&list=PLcNuebgSUruAGu HbYIxbwLd8NUhb593y5&index=2. Nothing in that record provides evidence like this incident occurring in the past in Minneapolis. Moreover, PLAM volunteers are trained not to interact with the escorts regardless of any provocation on the escort's part. (*E.g.,* Am. Compl. ¶¶ 19–20.) Regardless, this rogue individual was charged under existing laws and settlement of the matter required her to stay three blocks away from any Planned Parenthood facility in Hennepin County for three years. Meanwhile, the City provides no information on Planned Parenthood escort provoked confrontations initiated against PLAM sidewalk ministry volunteers or lack of police investigation on those incidents.

would refer individuals to other sexual health resources as an alternative to Planned Parenthood.  (*Id.*)

Plaintiff Debra Braun, PLAM's Education Director, has engaged in sidewalk counseling outside abortion clinics since 1986 and has done similar ministry at the Minneapolis Planned Parenthood facility.  (*Id.* ¶ 6.)  When she engages in sidewalk counseling, Braun also counsels with PLAM volunteers. (*Id.*)  Meanwhile, Braun has trained hundreds of people in sidewalk counseling techniques.  (*Id.*)

When engaging in sidewalk counseling, each of the Plaintiffs uses key communication methods to provide persons entering or exiting the Minneapolis Planned Parenthood facility with information about abortion alternatives, which some people are grateful to receive, and which have saved babies from abortion. (*See, e.g., id.* ¶¶ 13, 24.)  Similarly, Plaintiffs' petitioning activities—obtaining signatures on a petition—on issues of public concern, require face-to-face communications.  (*Id.* ¶ 25.)

In response to Plaintiffs' peaceful activities at the Minneapolis Planned Parenthood facility—despite existing laws governing people obstructing sidewalks and streets—the City, under the guise of unrelated increased crime rates and police officer department reductions, enacted Chapter 405 of the Minneapolis City Code (hereinafter, "Ordinance"). (*Cf.* City's Memo. to Dismiss at 3-6.)  But, with the enactment of this Ordinance, to avoid civil or criminal

penalties, Plaintiffs have either curtailed or stopped their sidewalk counseling as people enter or exit the Planned Parenthood facility.  (*See, e.g.,* Am. Compl. ¶¶ 106-07.)

Plaintiffs allege in their Amended Complaint that the new Ordinance creates an exclusion zone over the one section of a sidewalk that also serves as a driveway to the Minneapolis Planned Parenthood facility. In fact, the City admits as much; it states that "Plaintiffs can stand on the side of a driveway and protest or speak or hold up literature as long as they do not enter the driveway itself in doing so." (City's Memo. to Dismiss at 17-18.)  Plaintiffs filed suit because the new Ordinance does not impose a merely incidental burden on their speech, but rather excludes speech in its entirety from the designated area of a traditional public forum.  It prevents the exchange of ideas, literature, and other communications with Planned Parenthood visitors at the one critical juncture where sidewalk counselors, to be effective, must meet Planned Parenthood visitors.

The new Ordinance, specifically § 405.20(1) and § 405.30(1), prohibits anyone from entering the driveway's exclusion zone except to "cross[] . . . completely from one side of the driveway to the other side without stopping or slowing and continuing to a destination beyond the furthest lot line of the [Minneapolis Planned Parenthood abortion] facility."  That means traveling to the other side of the street once a person has entered the driveway.  (*See* Am.

Compl. ¶¶ 64-66.) PLAM's staff and volunteers, Maloney, Wilkin, and Braun are all individuals who approach and talk to women (and others) outside the Minneapolis Planned Parenthood facility, attempting to dissuade them from having abortions. And, they do so at the one entrance most used to enter the parking lot door of the facility—the driveway entrance. (*See id.* ¶¶ 30-33.)

However, Chapter 405.30 prevents Plaintiffs from approaching and talking with Planned Parenthood visitors:

> No person shall knowingly physically disrupt any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so . . .

> No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours . . .

City Code §§ 405.20, 405.30. Chapter 405.10 defines "disrupt" as "obstruct, impede, or hinder." City Code § 405.10.

Immediately following the filing of the Plaintiffs' Amended Complaint, the City filed a motion to dismiss, accompanied exhibits, offered by the City to the Court to controvert the allegations of Plaintiffs' Amended Complaint. None of these exhibits is cited or discussed in Plaintiffs' Amended Complaint.

## LEGAL STANDARD

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the allegations contained in a

plaintiff's complaint.  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide sufficient factual matter, accepted as true, to state a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible on its face when the plaintiff pleads sufficient facts to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a Rule 12(b)(6) motion, the court accepts as true all well-pleaded factual allegations and construes those allegations in the light most favorable to the plaintiff.  *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).  "The plaintiffs need not provide specific facts in support of their allegations, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*per curiam*), but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir.), *cert. denied*, 129 S. Ct. 222 (2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007)).

## ARGUMENT

I. **THE CITY'S PROFFERED MATERIALS OUTSIDE OF THE AMENDED COMPLAINT SHOULD BE STRICKEN AND NOT CONSIDERED ON ITS MOTION TO DISMISS.**

### A. The City Improperly Asks for the Court to Rely on Materials That are Not Subject to Consideration on a Rule 12(b)(6) Motion to Dismiss.

At the outset, Plaintiffs specifically object to each of the documentary exhibits improperly submitted by the City in support of its motion and ask that they be stricken from consideration, as they are not properly before the Court under Rule 12(b)(6). The City has not asked for summary judgment under Rule 56, even as an alternative form of relief, and instead incorrectly insists that its materials are able to be considered by the Court on a motion to dismiss for failure to state a claim on which relief may be granted.[3]

The City attempts to defend its reliance on materials outside of the Amended Complaint by citing to the proposition that a Court may consider "embraced by or integral to the complaint," but the materials submitted by the City are not of this nature. The City's own cited authorities show the inappropriateness of its request:

---

[3] To the extent the Court might contemplate conversion of this motion to one for summary judgment, Plaintiffs respectfully submit the declaration of counsel, which explains why consideration of summary judgment at this juncture is premature and Plaintiffs are not able to adequately respond to a motion for summary judgment without formal discovery. (*See* Ex. A: Decl. of B. Tyler Brooks.)

- In *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115 (8th Cir. 2011), the Court of Appeals "assume[d] without deciding that [defendant] may rely on [plaintiff's] *pleading* to resist [a cross-defendant's] motion to dismiss." Id. at 1120 (emphasis added).

- In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court spoke merely of the permissibility of considering "documents incorporated into the complaint by reference." *Id.* at 322.

- In *Dittmer Properties, L.P. v. F.D.I.C.*, 708 F.3d 1011 (8th Cir. 2013), the Court permitted consideration of a "partnership agreement and POA because they were contemplated by or expressly mentioned in the complaint." Their authenticity was also not questioned by the parties. *Id.* at 1021

- *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066 (8th Cir. 2004), allowed consideration of contract documents, including a letter of contract termination, because these were "embraced" by the pleadings. *Id.* at 1069.

- *Zean v. Fairview Health Services*, 858 F.3d 520 (8th Cir. 2017), likewise again permitted contract-related documents to be considered on a motion to dismiss without converting the motion to one for summary judgment. *Id.* at 526-27.

- In *Miller v. Redwood Toxicology Lab., Inc.,* 688 F.3d 928 (8th Cir. 2012), this general principle was apparently invoked to consider additional materials created by the District Court's record after filing of the motion to dismiss. *Id.* at 931 n. 3.

- And, in *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685 (8th Cir. 2003), the Court *rejected* the propriety of contract-related documents to "discredit and contradict [the plaintiff's] allegations" where the plaintiff "alleged the existence of a contract, not a specific document, and the documents provided by [the defendant] were neither undisputed nor the sole basis for BJC's complaint." *Id.* at 688.

None of these cases involved, let alone permitted, accepting the veracity of statements made in cherry-picked documents from a governmental meeting as a basis for controverting the specific allegations of a pleading that never even referenced the proffered documents or the proceedings that created them.

To be sure, the City's exhibits *relate to* the same underlying subject matter as the Amended Complaint, but mere relation is not the test for whether matters outside of a complaint can be considered. *See, e.g., id.* at 687 ("Most courts . . . view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading[.]") (quoting *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting Wright & Miller, *Federal Practice and Procedure* § 1366)). Otherwise, every defendant would be free to

submit exculpatory materials under Rule 12(b)(6) and pretermit discovery as a matter of course.  Instead, what matters is that none of the materials is cited or relied on in Plaintiffs' original or amended pleading.  Thus, they must be excluded.

### B. Additionally, Even If the City's Extraneous Materials are Considered, They Still Fail to Support Dismissal.

For the City, every pro-life individual outside of an abortion clinic in the City is the same and capable of being treated without differentiation.  This is not hyperbole.  It is the City's justification for offering evidence outside of the pleadings.

The City Council Committee hearing transcript in particular contains hearsay, generalities, and other evidence Plaintiffs have never been able to cross-examine.  Comments and testimony also conflate Plaintiffs with mere "protestors" nationally and locally.  Furthermore, the City never certifies that the transcript and related materials made part of the record at that hearing constitute the *entire record* of materials considered by the City Council as part of passing the Ordinance—and indeed as it is just one committee transcript it is dubious that it would be.  The full range of materials considered by the City is information Plaintiffs would, however, be able to receive in discovery.  Even the videos and still photographs are unauthenticated documents with no clear explanation of the circumstances under which they were taken.

For these reasons, and those also made within this brief, even assuming the materials presented by the City could be considered on a Rule 12(b)(6) motion to dismiss, they are unavailing for the City's case.

## II. THE AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT THE CITY'S NEW ORDINANCE IS UNCONSTITUTIONAL BECAUSE IT IS NOT NARROWLY TAILORED AND VIOLATES *MCCULLEN V. COAKLEY.*

### A. As the Amended Complaint Alleges, the City's Ordinance Flunks Intermediate Scrutiny and Thus is Not a Valid Time, Place, or Manner Restriction.

The streets and sidewalks outside of the Planned Parenthood facility where Plaintiffs seek to express their First Amendment rights are "quintessential" public forums. *E.g., Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "[B]ecause of their historic role as sites for discussion and debate," streets and sidewalks "occupy 'a special position in terms of First Amendment protection'[.]" *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). And, "the government's ability to restrict expressive activities [in such forums] is 'very limited.'" *Boos v. Barry*, 485 U.S. 312, 318 (1988) (quoting *Grace*, 461 U.S. at 177).

Even if it is assumed that the City's new Ordinance is facially content-neutral,[4] it still fails to meet the requirements of intermediate scrutiny for a

---

[4] "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted). Plaintiffs reserve the right to

valid time, place, and manner regulation by barring multiple forms of speech by Plaintiffs in a traditional public forum.  Both facially and as applied by the City, the Ordinance flagrantly violates the Supreme Court's decision in *McCullen v. Coakley*, 573 U.S. 464 (2014), which prohibits buffer zone laws that effectively invalidate peaceful leafletting and sidewalk counseling near public driveways to abortion facilities.  "[I]n a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  Nevertheless, any such restriction must be shown ***by the government*** to be "narrowly tailored to serve a significant governmental interest."  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984).  Such a showing is plainly not within the plausible allegations of Plaintiffs' Amended Complaint.

> ### *1. The Ordinance Can Only be Sustained if the City Proves Narrow Tailoring, which is a Requirement the City's Motion to Dismiss (Unsurprisingly) Fails to Establish.*

To meet the requirements of narrow tailoring, as the Supreme Court explained in *McCullen*, "*the government* must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier."  573 U.S. at 467 (emphasis added).  A regulation can also only be "narrowly tailored"

---

argue at a later time, based on discovery, whether the Ordinance is indeed content neutral.

when "it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy." *Frisby*, 487 U.S. at 485 (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-810 (1984)).[5]

In *McCullen*, the Supreme Court struck down a 35-foot buffer zone around abortion facilities because of its similar effects as the Ordinance here—including because it "**compromise[d]** petitioners' ability to initiate the close, personal conversations that they view as essential to 'sidewalk counseling,'" and "**made it substantially more difficult [] to distribute literature to arriving patients**." 573 U.S. at 487-88 (emphasis added). Thus, even if the buffer zone furthered government interests in promoting "public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways," it "burden[ed] substantially more speech than necessary to achieve the [state's] asserted interests." *Id.* at 486-87, 490.

> ### 2. Plaintiffs are Sidewalk Counselors, who—Contrary to the City's Assertions Otherwise—Claim No Interest or Desire in Intentionally Obstructing Ingress or Egress at the Planned Parenthood Facility by Physical or Otherwise Illegal Means.

Plaintiffs are principally sidewalk counselors, not mere protestors. The Supreme Court has recognized that, unlike mere protestors, sidewalk counselors,

---

[5] Additionally, a valid time, place, or manner restriction must be content-neutral. *See McCullen*, 573 U.S. at 486.

> seek not merely to express their opposition to abortion,
> but to inform women of various alternatives and to
> provide help in pursuing them. [They] believe that
> they can accomplish this objective only through
> personal, caring, consensual conversations.

*McCullen*, 573 U.S. at 489. As sidewalk counselors, Plaintiffs rely on one-on-one conversations and handing out leaflets to educate women on alternatives to abortion, including pregnancy resources and adoption. These methods are "classic forms of speech that lie at the heart of the First Amendment" *Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 377 (1997).

But the Ordinance—and indeed the City's entire motion—ignores the distinctions identified by the Supreme Court in *McCullen,* instead unjustifiably presuming Plaintiffs to be "protestors" necessarily destined to intentionally impede traffic and accost abortion clinic clients. By adopting this blunderbuss approach, the Ordinance ignores legal and factual distinctions between those who might be causing legitimate problems and those who engage in constitutionally protected conversations and leafletting. The Ordinance therefore eliminates far more than the exact source of the "evil" it purportedly seeks to remedy and is not narrowly tailored.

Furthermore, Plaintiffs claim no right to physically obstruct or block access to any facility, including an abortion clinic. (*See, e.g.,* Am. Compl. ¶¶ 4, 5, 6, 67, 94.) Such a misreading of the Amended Complaint, which the City seems to indulge, improperly conflates peaceful counseling and leafleting

(which Plaintiffs do) with acts intended to physically obstruct passage (which Plaintiffs do not engage in and which are already illegal under federal law, even without the new Ordinance).   Quite simply, one would search the Amended Complaint in vain for any suggestion that Plaintiffs seek a legal right to intentionally obstruct access to a facility by physical or other illegal means as opposed to engage in consensual counseling and leafleting.[6]   If Plaintiffs truly sought the right the City claims, they would have to challenge such laws as City Code § 466.240, which prohibits blocking sidewalks, but Plaintiffs emphatically take no issue with this law.   Plaintiffs seek only to engage in *consensual conversations* and *persuasion*, which is the core of protected First Amendment activity and which is what the City seeks to eliminate.

A "[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward*, 491 U.S. at 799.   Indeed, here the City cannot "demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier."

---

[6] To be sure, Plaintiffs allege the Ordinance can be understood to prohibit their peaceful First Amendment activity through the law's sweeping definition of the term "disrupt," because their actions have the unintended consequence of temporarily disrupting someone's travel when the person herself voluntarily stops to talk with Plaintiffs.   This is an argument for why the Ordinance is unconstitutional, including unconstitutionally overbroad and vague, not an admission that Plaintiffs actually intend to physically obstruct ingress or egress.

*McCullen*, 573 U.S. at 467. Specifically, the City cannot "show[]," as it must, "that it *seriously* undertook to address the problem with less intrusive tools readily available to it," or that "it considered different methods that other jurisdictions have found effective." *Id.* at 494 (emphasis added). The Supreme Court has recognized the "First Amendment virtues of targeted injunctions as alternatives to broad, prophylactic measures" like the Ordinance. *Id.* at 492. The federal Freedom of Access to Clinic Entrances Act expressly authorizes injunctive relief for actual physical obstructions to abortion facility access. 18 U.S.C. § 248(c). Such "injunctive relief focuses on the precise individuals and the precise conduct causing a particular problem," whereas the Minneapolis Ordinance, "by contrast, categorically excludes non-exempt individuals from the buffer zone[], unnecessarily sweeping in innocent individuals and their speech." *McCullen*, 473 U.S. at 492-93.

### 3. *Government Convenience Cannot Excuse the Constitutional Imperative for Narrow Tailoring.*

The government cannot suppress speech for its own convenience, for the sake of efficiency, or because it disagrees with the messages expressed. Thus, for an ordinance to be narrowly tailored, it must not "'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Coakley*, 573 U.S. at 486 (quoting *Ward*, 491 U.S. at 799). While an ordinance "'need not be the least restrictive or least intrusive means of serving

the government's interests," the government cannot "regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Id.* (citations omitted).

The City alleges (based on improperly proffered materials) that the new Ordinance is meant to address "a steady rise in violent and physically disruptive conduct" at Minneapolis reproductive facilities. (City's Memo. to Dismiss at 2.) For support, the City cites not the Amended Complaint, of course, but generally to a City Council hearing transcript at page 3, that repeats this phrase without detail.[7] General statements are made: "Planned Parenthood clinics throughout the Twin Cities Metro have experienced a rise in sometimes violent protests." (Council H'rg Trans. 3:15-17.) Similar testimony is later offered that the Minneapolis Planned Parenthood facility is "no exception" as a "target" to "violence and harassment ranging from vandalism to threats of . . . deadly attacks." (*Id.* 10:10-14.) The references are made to *national* reports and statistics. (*Id.* 14-15.) These vague assertions, which Plaintiffs never discussed in their Amended Complaint and which Plaintiffs have never been able to cross-examine or otherwise explore in discovery, clearly fail to show the Amended Complaint alleges anything other than a plausible claim that *their* constitutional rights have been violated.

_____

[7] Though consideration of the transcript is improper on a Rule 12(b)(6) motion, Plaintiffs will here address its contents, subject to their continuing objection.

Further testimony from the City Council asserts that, at the Minneapolis Planned Parenthood abortion facility during the last two years, "it has become common for protesters to stand in the driveway . . . blocking off access for incoming patients and staff and impeding cars trying to exit our parking lot." (*Id.* at 12:9–13.)  This wholly ignores the fact that the Amended Complaint, which must be taken as true on this motion, describes in detail exactly how Plaintiffs approach those entering or exiting the facility—namely, by offering to speak voluntarily and supplying free literature to those willing to accept it. (Am. Compl. ¶¶ 26-31.)  Moreover, Plaintiffs do not throw "items into . . . vehicles" as such behavior would be contrary to their essential method of communication as maintaining a caring demeanor, a calm tone of voice, and direct eye contact, as described extensively in the Amended Complaint. Plaintiffs also refrain from being loud, obnoxious, or confrontational as it is counterproductive and contrary to their mission.  (*E.g.,* Am. Compl. ¶¶ 19-20.)

While the City has an interest in maintaining public safety on streets and sidewalks, it cannot pursue these goals by the extreme step of creating a "no free speech zone" on a critical part of a public sidewalk.   Until the enactment of new Ordinance, the City has used other alternative means that are less restrictive to protect First Amendment activities while maintaining access to the abortion facility.  The City readily admits to two previously existing laws that regulate misconduct on sidewalks and streets. Minneapolis

20

City Code sections 385.65 and 466.240 both address blocking or obstructing people and vehicles on streets and sidewalks. (City's Memo. to Dismiss at 4-5.) Both exempt First Amendment rights of protected speech and assembly.  (*Id.*) In fact, the supporters of new Ordinance, referenced an individual who was prosecuted for an alleged assault. (Council H'rg Trans. 7:1-5.)  In other words, existing laws are available to deal with misconduct relating to rouge acts of misguided anti-abortionists. However, as the Amended Complaint demonstrates, those methods are not the actions of Plaintiffs.  (*See e.g.,* Am. Compl. ¶¶ 19, 20.)  In fact, the example shows how existing laws protect the interests of the City, while allowing First Amendment activities to continue; in no way do they show that existing laws have been tried and found wanting.

In *Coakley,* the U.S. Supreme Court found that the challenged Massachusetts statute criminalizing a buffer zone 35 feet from an entrance or driveway to buildings performing abortions as unconstitutional. One of the arguments made by the state included claims that it "had tried other approaches, but they did not work." *Coakley,* 573 U.S. at 494. The Court refused to accept the state's contentions that trying less restrictive means did not work, without evidence—evidence that is likewise not present in this case. The state in *Coakley* explained that having "fixed buffer zone would 'make our job so much easier.'" *Id.*  Rejecting the state's contentions, the Court declared, "To meet the requirement of narrow tailoring, the government must

demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id.*

In a similar fashion here, the City has not shown that existing methods failed. The City cites to the unpublished Third Circuit decision in *Reilly v. City of Harrisburg,* 790 F. App'x 468, 473-74 (3d Cir. 2019), but this case does not advance their cause. There, the appellate court reminded the parties that "that where a restriction imposes a significant burden on speech, the government must show that it tried or 'seriously considered[ ] substantially less restrictive alternatives,' such as arrests or targeted injunctions." (citation omitted). References to limited police department resources and city financial difficulties would be considered *if* "the burden on speech is not significant [hence,] 'a less demanding inquiry is called for.'" *Id.* By contrast, Plaintiffs have alleged that the new law is a significant burden on their speech and thus, the City must show that it *seriously* considered *substantially* less restrictive alternatives before resorting to buffer zone.[8] (*See, e.g.,* Am. Compl. ¶¶ 90, 97-98, 107.)

---

[8] The City contends that Plaintiffs' reference to the remarks of one City Council member, showing her animus towards Plaintiffs' activities, are irrelevant. Again, the City misses the mark. The council member's comments underscore the plausibility of Plaintiffs' claims, including the reasons the City did not undertake the constitutionality required inquiries prior to passing the Ordinance. On a motion to dismiss, Plaintiffs are not required to prove their case in chief, and indeed these remarks may only be the tip of the iceberg, as it were, for official animus. Only with discovery will we know for sure.

As such, the Ordinance utterly fails narrow tailoring and should be enjoined for this reason alone.

### B. The Ordinance Also Fails Intermediate Scrutiny Because It Does Not Leave Open Alternate Channels of Expression.

Even if there is a "close fit between ends and means" of the Ordinance, (*see McCullen,* 573 U.S. at 486), the new law nonetheless impermissibly restricts speech because it does not "leave open ample alternative channels for communication of the information" Plaintiffs wish to convey. *Clark,* 468 U.S. at 293. "[W]hile the First Amendment does not guarantee a speaker the right to any particular form of expression, some forms—such as normal conversation and leafletting on a public sidewalk—have historically been more closely associated with the transmission of ideas than others." *McCullen*, 573 U.S. at 488.

In this case, the buffer zone imposes serious burdens on the Plaintiffs' speech. It denies Plaintiffs *the* important opportunity of approaching persons entering or exiting the Planned Parenthood facility on the sidewalk. This effectively diminishes their ability to initiate close, personal conversations, in a caring demeanor, and distribute of literature since the sole driveway serves as the primary entrance to the abortion facility's parking lot and building entrance. (*See, e.g.,* Am. Compl. ¶¶ 3-6, 12-13, 26-31, 59-62.) As a result, the

City has curtailed or stopped their sidewalk counseling activities where they would be and have been effective. (*See id.*, *e.g.,* ¶¶ 79, 83, 123.)

The City's motion fails to specifically counter the Amended Complaint's allegations about the lack of adequate alternatives, let alone identify what meaningfully comparable channels the City has left open for Plaintiffs to speak. Since the presence of adequate alternative methods of communication is required before a buffer zone ordinance can be sustained, this deficiency alone is fatal to the City's motion to dismiss.

It is undisputed that the new Ordinance creates an exclusion zone in which Plaintiffs are prohibited from engaging in their sidewalk counseling and other protected activities. With the exclusion zone in place, instead of the desired and effective means of communication through direct eye contact, a calm voice to maintain a caring demeanor, they would be reduced to loud, obnoxious, or confrontational mannerisms they find counterproductive. (*See* Am. Compl. ¶¶19-21.) The raising of voices would be in sharp contrast to their objectives and to initiate a conversation (*see id.*). *See Coakley*, 573 U.S. at 487. But, this is what the City expects and demands: "[S]idewalk counselors such as Plaintiffs can stand on the side of a driveway and protest or speak or hold up literature as long as they do not enter the driveway itself in doing so." (City's Memo. to Dismiss at 17-18.) Such a contention from the City reveals its

fundamental failure to comprehend and respect Plaintiffs' mission and even the practice of sidewalk counseling more generally.

Notably, in this context, the City decides it better for drivers entering into the Planned Parenthood facility to stop in the driveway, exit the car—leaving it abandoned—and then approach the plaintiffs: "Should Plaintiffs speak to a person entering the driveway while Plaintiffs are on the side of the driveway, the person can simply walk over to them if they are interested in hearing from them." (*Id.* at 18.) Tying itself into legal knots, the City's own scenario defeats the purpose of any "safety" concern related to obstructing the driveway. It certainly does not encourage efficiency in the exchange of ideas, in contrast to Plaintiffs' time-tested and safe methods of effective and efficient communication.

The exclusion zone also makes it substantially more difficult to hand out literature to visitors to the Planned Parenthood facility as they enter or exit the parking lot. This deprives Plaintiffs of another form of essential communication used in their ministry. (*See* Am. Compl. ¶¶ 16, 18, 22, 35, 81.) When it comes to this and related forms of sidewalk counseling, the Supreme Court has "observed that 'one-on-one communication' is 'the most effective, fundamental, and perhaps economical avenue of political discourse.'" *Id.* at 488 (quoting *Meyer v. Grant*, 486 U.S. 414, 424 (1988)). The Amended Complaint is replete with allegations about the pro-life objectives Plaintiffs seek to

achieve in their messaging, through literature distribution, conversations, or marches.  (*See e.g.,* Am. Compl. ¶¶ 3-6, 34-35, 40, 81.)

"[H]anding out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression" and "[n]o form of speech is entitled to greater constitutional protection."  *Id.* at 489-490 (citing *McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 347 (1995)).  Whatever form a restriction takes, the government "may not prohibit all communicative activity" in "quintessential public for[a]" such as "streets and parks" which "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (internal citations omitted).

Yet, "prohibiting all communicative activity" by Plaintiffs seeking to engage in sidewalk counseling in the vicinity of the abortion clinic is precisely what the Ordinance accomplishes.  Therefore, it is unconstitutional, and the motion to dismiss should be overruled.

## C. A Decision from the Sixth Circuit Illustrates the Unconstitutional Nature of the City's Ordinance.

The recent decision from the U.S. Court of Appeals for the Sixth Circuit in *Sisters for Life v. Louisville-Jefferson County, Ky. Metro Government*, 56 F.4th 400 (6th Cir. 2022), enjoining a ten-foot buffer zone with identical effects

as the Minneapolis Ordinance is on point.  In that case (which the City's motion ignores), the plaintiffs—sidewalk counselors like Plaintiffs here—regularly offered leaflets and sought to engage in conversations with women entering an abortion clinic, hoping to dissuade them from choosing abortion.  *Id.* at 402. While the clinic at issue in that case had experienced "protestors" in the past, the Court recognized a distinction between such activity and the plaintiffs' sidewalk counseling activity, which consists of "quiet, compassionate, non-threatening one-on-one conversation[s]," . . . to convince [] patients that there are lifesaving alternatives to abortion and that they will accompany the woman in whatever way she may need."  *Id.* (internal quotation marks omitted).  This is the same activity that Plaintiffs in the present case have regularly engaged in and that the new Ordinance renders all but impossible.

Similar to the Minneapolis Ordinance, the ordinance in *Sisters* imposed a "buffer zone" around the entrance to the facility and forbade certain individuals from entering or remaining in that buffer zone.  *Id.*  The Sixth Circuit observed that like the 35-foot buffer zone in *McCullen*, the ten-foot buffer zone there "make[s] it 'substantially more difficult for' Sisters for Life 'to distribute literature to arriving patients,' because they place potential pamphleteers **more than an arm's length away from [the abortion facility's] entrants** and make it easier for agents of [the facility] to deflect the literature they offer." *Id.* at 406 (emphasis added) (quoting *McCullen*, 573 U.S.

at 488).  It further recognized that "[b]y requiring [the Clinic's] patients to be as much as ten feet away from Sisters of Life as they enter the Clinic, the buffer zone 'compromise[s]' Sisters for Life's 'ability to initiate the close, personal conversations' that are 'essential' to its compassionate, person-to-person message." *Id.* (quoting *McCullen*, 573 U.S. at 487).  The Court of Appeals noted as well that the government had failed to show that it "'seriously undertook to address' its concerns 'with less intrusive tools.'"  *Id.* at 405 (quoting *McCullen*, 573 U.S. at 486).

The same infirmities are present with the Minneapolis Ordinance. Plaintiffs, like the *Sisters* plaintiffs, are sidewalk counselors who seek to engage in private, caring, and consensual conversations along with providing helpful literature to willing recipients.  The City has now completely banned Plaintiffs from engaging in this activity in the prescribed buffer zone, which is exactly the area in which those conversations are most likely to occur and be effective.  Nevertheless, the City has not attempted to tailor the Ordinance to address any legitimate concerns it may have, such as ensuring safe ingress and egress, nor has it drafted the Ordinance to ensure it addresses those interests without interfering with any more protected speech than necessary.

Just as in *Sisters*, the Minneapolis Ordinance unconstitutionally violates sidewalk counselors' First Amendment rights.  Therefore, the City's motion to dismiss should be denied.

## III.  THE AMENDED COMPLAINT PLAUSIBLY ALLEGES VIOLATION OF PLAINTIFFS' RIGHT TO EXPRESSIVE ASSOCIATION.

"[T]he freedom of an individual to associate for the purpose of advancing beliefs and ideas is protected by the First and Fourteenth Amendments." *Hanten v. School Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999). This includes the "right to associate with others in pursuit of a wide variety of political, social, economic, *educational*, *religious*, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622-23 (1984) (emphasis added). "Government actions that may unconstitutionally infringe upon this freedom can take a number of forms," including "interfer[ing] with the internal organization or affairs of the group." *Id.* at 623. Nevertheless, it is also understood that "[t]he right to associate for expressive purposes is not . . . absolute." *Id.* at 623. "Infringements on that right may be justified by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.*

The City's Ordinance interferes with Plaintiffs' right to associate for the purpose of advancing beliefs and ideas with others.  Moreover, it interferes with PLAM's organizational objectives to advance its ideas and beliefs through sidewalk counseling in an area that is most effective—the primary entrance of visitors to the abortion facility.  And, the identified persons entering or exiting

the facility are hardly, as the City contends, "hypothetical individuals" and their interactions are hardly "theoretical."  (City's Memo. to Dismiss at 30.)

Under the standards of review for a motion to dismiss, Plaintiffs' allegations must be seen as true.  The City has also not disputed the factual allegation that Plaintiffs' sidewalk counseling has saved babies from abortion. (*See, e.g.,* Am. Compl. ¶ 13.) Indeed, the Amended Complaint makes a specific allegation that "plaintiffs have found that some recipients [of Plaintiffs information and literature] are grateful."  (*Id.* ¶ 24.)  The City does not challenge this factual allegation either, making Plaintiffs' expressive association argument hardly speculative.

Plaintiffs' allegations reveal that the people and interactions are real, that actual babies are saved, and that people are grateful for the sidewalk counseling that conveys their messaging related to abortion or abortion alternatives.  As Plaintiffs have alleged, their activities are aimed at persuading others regarding political, social, educational, religious, and cultural goals. (Am. Compl. ¶¶ 120-21.)  Plaintiffs' specific and unchallenged allegations of fact in their Amended Complaint contradict, in the starkest terms, the City's assertion that it is speculative that clinic patrons and passersby would be interested in Plaintiffs' message.

In this case, the new Minneapolis Ordinance prevents Plaintiffs from those opportunities to engage in the expressive association they are entitled to

under the First Amendment.  There are less restrictive ordinances governing the same driveway-sidewalk area, which already meet the governmental interests the City seeks to protect.  (*See* Am. Compl. ¶¶ 97-98.)

The City cites to *Irshad Learning Ctr. v. County of DuPage*, 804 F. Supp. 2d 697, 718 (N.D. Ill. 2011) (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1033 (9th Cir. 2004)), for the proposition that an organization, in that case a church, cannot assemble at the precise location it seeks and, hence, does not equate to a denial of assembly altogether. (*See* City's Memo. to Dismiss at 32.)  There, the court concluded the plaintiffs failed to devote enough attention to that issue in its response brief and complaint. That is not the case here.

Plaintiffs have adequately alleged the effect of the Ordinance to their objectives and asserted allegations of how the Ordinance interferes with and chills their protected First Amendment Rights at this particular location.  As the *Irshad* court noted, "In this context, rights to free speech, assembly, and free exercise are considered together.  It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Irshad Learning Ctr.*, 804 F. Supp. 2d at 718 (quoting *NAACP v. Alabama*, 357 U.S. 449, 460 (1958)).

Plaintiffs' Amended Complaint alleges sufficient facts to support each of the claims asserted with respect to freedom of association. Furthermore, Plaintiffs' response memorandum has addressed each of these issues. As explained, with the enactment of Chapter 405, Plaintiffs are excluded from the one area in which those rights were previously exercised, subject to the pre-existing laws as the City has admitted, and in which they were most effective at advancing their associational purposes.  Meanwhile, the City has yet to prove that the pre-existing laws are ineffective or failed to work.

As such, Plaintiffs have stated a plausible claim for violation of their right to freedom of association under the First Amendment.

## IV.   THE AMENDED COMPLAINT PLAUSIBLY ALLEGES VIOLATION OF PLAINTIFF'S FREE EXERCISE RIGHTS.

"[U]nquestionably, the free exercise of religion is a fundamental constitutional right." *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County, Maryland*, 915 F.3d 256, 265 (4th Cir. 2019) (quoting *Johnson v. Robison*, 415 U.S. 361, 375 n.14 (1974)), *as amended* (Feb. 25, 2019); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33 (1973) (defining a right as "fundamental" when it is "explicitly or implicitly guaranteed by the Constitution.").

The City contends that mere facial neutrality forecloses further analysis, but this is incorrect.  Courts must also examine the effect of a law on religious

practice to judge its true nature. "Facial neutrality is not determinative. The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). The Clause "forbids subtle departures from neutrality," *id.* (quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971)), and "covert suppression of particular religious beliefs," *id.* (citation omitted). "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked, as well as overt. 'The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were, religious gerrymanders.'" *Id.* (quoting W*alz v. Tax Comm'n of New York City*, 397 U.S. 664, 696 (1970) (Harlan, J., concurring)).

The City does not challenge any of Plaintiffs' allegations asserted under Claim III regarding their sincerely held religious beliefs and the religious basis of their sidewalk counseling. (*See e.g.,* Am. Compl. ¶ 136.) In particular, Plaintiffs believe that "it is their duty to serve and assist God's family in fulfilling God's plan as found . . . in Jeremiah 1:5 and 29:11." (*Id.* at 137.) They believe that sidewalk counseling ministry outside of facilities that provide abortions is a Christian way to advocate God's family values and love for unborn Children, but that message cannot be conveyed under the City's

Ordinance.  In fact, sidewalk counseling is "Christian based," as alleged; and, thus, prohibiting that exercise, as the City does, violates the protection of the free exercise of religion under the First Amendment.  (*See* Am. Compl. ¶ 136.)

Apart from the text of the Ordinance, Plaintiffs have alleged the effect of new law in its real operation, which a court can find as strong evidence of its object.  "To be sure, adverse impact will not always lead to a finding of impermissible targeting." *City of Hialeah*, 508 U.S. at 535 (citations omitted). Nevertheless, when considered in context, as the Supreme Court requires, the Ordinance "disclose[s] an object remote from . . .  legitimate concerns.  The design of these laws accomplishes instead a 'religious gerrymander.'"  *Id.* The effect of the new Ordinance is to exclude all activities in the identified exclusion zone—including the demonstration of religious exercises during sidewalk counseling.  Here, the City has refused even to acknowledge the effect of Chapter 405 on religious practice, despite the specific allegations of Plaintiffs' Amended Complaint.

The motion to dismiss Plaintiffs' free exercise claim should therefore be denied.

## V.   THE AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT THE CITY'S NEW ORDINANCE IS UNCONSTITUTIONALLY OVERBROAD AND VAGUE.

### A. The Ordinance is Overbroad Because it Proscribes Constitutionally Protected First Amendment Activity.

The City cites paragraph 102 of the Amended Complaint to assert the plaintiffs failed to provide "factual allegations" to support the assertion and characterizes it as "conclusory" and hence, "insufficient as a matter of law." (City's Memo. to Dismiss at 21.)   The City, however, fails to acknowledge paragraph 70 above it, which adopts and incorporates all previous paragraphs as if fully restated in support of the allegations asserted under Count I. In other words, as this Court previously observed, it is not necessary to reinstate all factual allegations previously asserted in support of the underlying constitutional claim.

When analyzing whether a statute is overbroad, in the context of conduct as the City asserts, "particularly where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).   And, as the U.S. Court of Appeals for the Eighth Circuit has declared, "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Stevens*, 559 U.S.460, 474 (2010) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).   If the regulation reaches a substantial amount of constitutionally protected conduct, then a party may bring an overbreadth

challenge. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982).

While the City asserts that the Ordinance's purpose is to curtail certain conduct in the clinic driveway, similar existing laws address unlawful conduct on sidewalks and streets—for example §§ 385.65 and 466.240 of the City's Code. These provisions, cited by the City, have exceptions for First Amendment activities, but the new Ordinance does not. This failure to include an exception for First Amendment activity points squarely to the City's motive to suppress free speech, free association, and free exercise of religion. Indeed, the City cites the presence of First Amendment carve outs in these laws as *flaws*, clearly demonstrating the City's desire for the new Ordinance to proscribe what the First Amendment protects. (*See* City's Mem. to Dismiss at 19.)

By eliminating *all* activities of Plaintiffs on the sidewalk where a driveway crosses it and with such activities would disrupt the ingress or egress to the Planned Parenthood facility, incorporates all other constitutionally protected activities in that traditional public forum. This is intentional. The City Council is presumed to know all the other laws that it has enacted regulating conduct on sidewalks and streets, including their express protections for First Amendment activities (*see* City's Memo. to Dismiss at 4-5.) *See Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 244

(Minn. 2005) (citing *Minneapolis E. Ry. Co. v. City of Minneapolis*, 247 Minn. 413, 418, 77 N.W.2d 425, 428 (1956) (noting that a court presumes a legislative body acts with full knowledge of existing law).

The City asserts that Plaintiffs can still exercise their protected rights right up to the driveway. (City's Memo. to Dismiss at 22.) But, in this case, imposition of the buffer zone, prevents the type of sidewalk counseling that is most effective and that actually constitutes in the sidewalk counseling Plaintiffs seek to engage in. Not even the City disputes the allegation that sidewalk counseling has saved babies from abortion (*see, e.g.,* Am. Compl. ¶ 13), and yet the City's has now suppressed this conduct.

Indeed, Plaintiffs are *totally barred* from crossing the Abortion Clinic's driveway or otherwise entering into that exclusion zone:

> No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours, except:
>
> (1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility.

City Code § 405.30.

The Amended Complaint further shows the lot line and the surrounding streets the Plaintiffs must cumbersomely navigate in the course of their ministry. (Am. Compl. ¶¶ 63-67.) It also interferes with any other petitioning

activities.  (*Id.* ¶ 68.)  During the last PLAM organized march, people even had to enter the street simply to avoid the Clinic driveway and avoid going "beyond the furthest lot line" of the Planned Parenthood property.  (*Id.* at 82.)

No matter how vigorously the City asserts the Ordinance relates to conduct, the evidence and allegations of the Amended Complaint, show that the City has purposefully interfered with and suppressed *speech*: sidewalk counseling, petitioning, leafleting, and marches.  This makes the Ordinance unconstitutionally overbroad.

### B. The Ordinance is Unconstitutionally Vague Because, through Ambiguous Wording, it Appears to Criminalize First Amendment Activity.

The Ordinance is also unconstitutionally vague.  "A penal statute is 'unconstitutionally vague' if it 'fails to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'"  *Metro. Omaha Property Owners Assoc., Inc. v. City of Omaha*, 991 F.3d 880, 886 (8th Cir. 2021) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009) (internal quotations omitted) (citations omitted)).  "A two-part test determines whether a statute is vague: 'The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.'"  *Id.* (citation omitted).  A law is unconstitutionally vague and overbroad where "speakers are left to guess

and wonder whether a regulator, applying supple and flexible criteria, will make a post hoc determination that their speech is regulable . . . This approach simply guarantees that ordinary political speech will be chilled, the very speech that people use to express themselves on all sides of those issues about which they care most deeply." *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 287 (4th Cir. 2008).

Here, the City has disclaimed the usual constitutional constrains to its ordinances, by declaring that the new Ordinance prohibits even First Amendment protected activity. But, a municipality cannot truly declare areas of a traditional public forum as constitution-free zones. What the new Ordinance actually prohibits under the Constitution is a question only a court can resolve.

Moreover, the new Ordinance deploys terms without defining them. It creates confusion as to whether engaging in a consensual conversation with a clinic patron constitutes "physical" obstruction, even when untaken (as Plaintiffs do) because the patron voluntarily engages with one of the Plaintiffs. Similarly, the definition of "disrupt" is in the new Ordinance also vague, "*Disrupt* shall mean obstruct, impede, or hinder." City Code § 405.10 (emphasis in original). Does this include a "disruption" that occurs when a patient voluntarily stops her entrance to speak with Plaintiffs? This is constitutionally protected conduct, but the City has disclaimed that it must

adhere to the Constitution in the areas where the new Ordinance applies. These are the vagaries that lead to uncertainty as well as haphazard and biased enforcement, rather than the rule of law.  As such, Plaintiffs have plausibly alleged that the Ordinance is unconstitutionally vague and in need of judicial review.[9]

It is also of note that, while the City relies extensive on the twenty-year-old case of *Hill v. Colorado*, 530 U.S. 703 (2000), to defend the Ordinance, *Hill* has been eroded through the years, most recently being cited by the Supreme Court for "distort[ing] First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct 2228, 2276 & n. 65 (2022).  It is thus no basis upon which the City can rest for dismissal of a complaint under Rule 12(b)(6), particularly when the issue is what the City may constitutionally prohibit around an abortion clinic.

## CONCLUSION

WHEREFORE, plaintiffs respectfully request that the City's motion to dismiss be denied in all respects.

---

[9] Plaintiffs are, of course, expressly entitled by the Federal Rules of Civil Procedure to assert alternative and even contradictory theories of recovery. *See* Fed. R. Civ. P. 8(d)(2)-(3).

Respectfully submitted, this <u>10th</u> day of July, 2023.

<u>/s/Erick G Kaardal</u>
Erick G Kaardal
MOHRMAN, KAARDAL & ERICKSON, P.A.
150 South Fifth Street
Suite 3100
Minneapolis, MN 55402
(612) 465-0927
Fax: 612-341-1076
Email: kaardal@mklaw.com

<u>/s/B. Tyler Brooks</u>
Peter Breen[†]
B. Tyler Brooks[†]
THOMAS MORE SOCIETY
309 W. Washington Street
Suite 1250
Chicago, IL 60606
Telephone: (312) 782-1680
Fax: (336) 900-6535
pbreen@thomasmoresociety.org
tbrooks@thomasmoresociety.org

[†] admitted *pro hac vice*.

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on July 10, 2023, I served a copy of the foregoing document upon the following counsel of record via CM/ECF:

Amy B. Schutt
Sharda R. Enslin
Tracey N. Fussy
City of Minneapolis – City Attorneys Office
105 Fifth Avenue S.
Ste. 200
Minneapolis, MN 55401

*Counsel for Defendant*

Dated: <u>July 10, 2023</u>                <u>/s/B. Tyler Brooks</u>
                                     B. Tyler Brooks
                                     THOMAS MORE SOCIETY
                                     309 W. Washington St.
                                     Suite 1250
                                     Chicago, IL 60606
                                     Telephone: (336) 707-8855
                                     Fax: (336) 900-6535