UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun,<br><br>Plaintiffs,<br><br>v.<br><br>City of Minneapolis, a Minnesota municipality,<br><br>Defendant. | Case No. 23-CV-853 (JWB/DJF)<br><br>**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs' Memorandum in Opposition to Defendant's Motion is a moving target consisting of randomly placed straw-man arguments, misstatements of the law, the Ordinance and the City's memorandum in support of its motion to dismiss, and a disavowal of allegations directly from their Amended Complaint. Plaintiffs' arguments are not legally significant or otherwise persuasive, and they do not counter the Ordinance's constitutional validity under *McCullen v. Coakley*, 573 U.S. 464 (2014) and *Sisters for Life v. Louisville-Jefferson County*, 56 F.4th 400 (6th Cir. 2022).

Plaintiffs' argument that Defendant may not submit outside material to support its position fails, because on a motion to dismiss, the Court is allowed to consider public records and any material embraced by the pleadings. Moreover, even if the Court disregarded any public records or material embraced by the Amended Complaint, Plaintiffs' First Amendment speech and assembly claims still fall short because they have

1

alleged nothing more than conclusory assertions that their rights have been impeded. Additionally, Plaintiffs' First Amendment association claim fails to sufficiently allege a significant burden on their associational rights, nor do they allege the absence of an overriding government interest. Finally, Plaintiffs' First Amendment free exercise claim fails because Chapter 405 is neutral and generally applicable.

## ARGUMENT

### I. THE CITY'S MATERIALS SHOULD BE CONSIDERED ON ITS MOTION TO DISMISS.

Plaintiffs object to exhibits submitted with Defendant's Motion to Dismiss, contending that these documents are not "embraced by or integral to the complaint." Doc. 25 at 9. *Enervations, Inc. v. Minn. Mining & Mfg. Co.,* 380 F.3d 1066, 1069 (8th Cir. 2004). This argument fails because Defendant's exhibits are public records.

On a motion to dismiss, courts "may consider some materials that are part of the public record." *Little Gem Life Sciences, LLC v. Orphan Medical, Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (quoting *Porous Media Corp. v. Pal Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Specifically, court records are classified as public records and may be considered on a motion to dismiss. *Bellino v. Grinde*, No. 18-VC-1013 (NEB/LIB), 2019 WL 368398, at *1 n.1. (D. Minn. Jan. 30, 2019); *Porous Media Corp.*, 186 F.3d at 1079) (upholding a district court's reliance on a transcript of court proceedings). In *Cox Broadcasting Corp v. Cohn*, the Supreme Court concluded that information "in the public domain on official

courts records" serve a public interest and that "public records" are records that serve a public interest. 420 U.S. 469, 495 (1975).

In its memorandum, Defendant introduced Exhibit 2, a copy of the ruling in *Spann v. City of Minneapolis*. Doc. 13 at ¶ 3. Because this opinion is a court record, it may be considered by the Court alongside the pleadings. It is not mere "exculpatory material." It is *relevant* material in the public record that Defendant asks the Court to consider as context for this suit.

Defendant also attached three documents referencing the public legislative record. Exhibit 1 is a transcript of the November 9, 2022, City of Minneapolis Public Health and Safety Committee hearing. Doc. 13 at ¶1. Part of this transcript refers to Chapter 405. Specifically, Defendant mentions this exhibit in its memorandum with respect to the rise in individuals standing in driveways to reproductive health facilities, potentially disrupting traffic and increasing the risk of an accident. Doc. 12 at 2-3; Doc. 13 at ¶1. Defendant also attached Exhibits 4(a) & 4(b), which are collections of photographs, videos, and documents submitted for consideration at the November 9, 2022, public hearing. Doc. 13 at ¶¶ 5-6. These show pictorial evidence of the actions by reproductive rights protestors referenced in the committee hearing. Doc. 12 at 3. Exhibit 3 is a PowerPoint presentation employed during the hearing. Doc. 13 at ¶3.

This Court has previously held that "transcripts of public hearings are "'matters of public record.'" *Sanimax USA, LLC v. City of South St. Paul*, 496 F. Supp. 3d 1285, 1292 (D. Minn. 2020). Here, Defendant is using these exhibits to provide background for the passage of Chapter 405 and activity at reproductive health facilities. *See* Doc. 12 at 3.

3

Defendant does not use the proffered exhibits to challenge any of the factual allegations made by Plaintiffs. Plaintiffs themselves admit that protests, marches, and individuals stopping cars *do* disrupt "the person or persons from entering (or exiting) the facility." Doc. 7 at ¶¶ 50-51, 80-81. The documents merely demonstrate the activity that motivated Chapter 405.

Courts may also consider any materials that are "embraced by the complaint." *Enervations, Inc.*, 380 F.3d at 1069. In *Minnesota Majority v. Manksy*, the court considered a policy that was referenced in the parties' briefing. 708 F.3d 1051 (8th Cir. 2013). It found that this was sufficient to conclude that the policy was "embraced" by the pleadings. *Id*. Plaintiffs' Amended complaint refers to photographs contained in the legislative record of the November 29, 2022, public hearing. Doc. 7. at ¶ 26. In fact, Plaintiffs explicitly state that the photos are taken from that hearing. *Id*. at ¶ 27. Plaintiffs continue to refer to and explain the contents of the photos to support their allegations. *Id*. at ¶¶ 28-33. Later in the Amended Complaint, Plaintiffs reference statements by council member Lisa Goodman and the "legislative history of Chapter 405," including "comments made on the record by the Minneapolis City Councilmember Lisa Goodman." *Id*. at ¶ 88. Although Plaintiffs do not cite the transcript of the hearing specifically, they incorporate it by reference to Chapter 405's legislative history. The Amended Complaint necessarily embraces the transcript of the November 29, 2022, public hearing and Exhibits 4(a) and 4(b) because Plaintiffs specifically reference them.

Plaintiffs make various arguments against Defendant's cited authorities, claiming that the authorities "show the inappropriateness of [Defendant's] request." Doc. 25 at 9.

4

However, Plaintiffs conflate the conclusion that these authorities do not reference *exactly* the same materials as presented here with the notion that they should not be considered with the pleadings altogether. In its memorandum, Defendant referenced *Outdoor Cent., Inc., v. Greatlodge.com, Inc.* not to conclude that it is factually identical to the case at bar, but instead to demonstrate that courts in the Eighth Circuit do not confine themselves to the complaint. 643 F.3d 1115, 1120 (8th Cir. 2011) (permitting the defendant to refer to the plaintiff's pleadings when defending against cross-defendant's motion to dismiss). And while Plaintiffs correctly acknowledge that the Supreme Court allowed for the consideration of documents "incorporated into the complaint by reference," they incorrectly suppose that the documents Defendant has submitted are not of that nature. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Exhibits 1, 2, 4(a) and 4(b) are all referenced in the Amended Complaint.

In *Dittmer Properties, L.P. v. F.D.I.C.* and *Enervations*, the courts did admit contract documents, as relevant. 708 F.3d 1011, 1021 (8th Cir. 2013); 380 F.3d at 1069. In *Dittmer*, the court considered documents that it found were "contemplated by or expressly mentioned in the complaint." 708 F.3d at 1021. And in *Enervations*, the court again found that documents referenced in the complaint were necessarily embraced by it on a motion to dismiss. 380 F.3d at 1069 (finding a document amending an agreement referenced in the complaint was part of the record). Here, not only are Exhibits 4(a) and 4(b) directly

5

mentioned, but Exhibit 1 is contemplated by Plaintiffs' references to Chapter 405's legislative history.

Plaintiffs would sidetrack the Court by arguing that Defendant's materials relate to but are not included in the pleadings and that the use of "exculpatory" documents undermines discovery; this is an incorrect statement of Defendant's justification for considering these materials. Doc. 25 at 11. Plaintiffs conclude that "none of the materials is cited or relied on in Plaintiffs' original or amended pleading," but this is *false*. *Id*. Plaintiffs could find, use, and rely on and *did* use many of the materials set forth by Defendant without discovery. Plaintiffs clearly relied on the legislative record in the November 29, 2022, committee hearing when it referenced them in the Complaint. Moreover, their references to legislative history and statements by committee members incorporated aspects of the committee transcript.

## II.   THE ORDINANCE IS NARROWLY TAILORED.

Plaintiffs appear to argue that the Ordinance is not narrowly tailored because it: (1) creates a buffer zone in violation of *McCullen* and *Sisters*; (2) burdens more speech than necessary to achieve its goals; and (3) imposes a significant burden on Plaintiffs' speech so the City must prove that it exhausted all less-restrictive means first. Plaintiffs'

arguments fail because they misrepresent the law and the Ordinance and rely upon conclusory allegations.

### A. *McCullen* and *Sisters* Support the Ordinance.

Plaintiffs argue the Ordinance is unconstitutional under *McCullen v. Coakley* and *Sisters for Life v. Louisville-Jefferson County Metro Government,* cases in which laws with additional "buffer zones" of 35 and 10 feet, respectively, adjacent to the entrances, such as driveways, of healthcare facilities, were struck down because they compromised close, personal conversations and distributing literature. Doc. 25 at 15; 26-27. Plaintiffs' arguments fail, because they are premised on a mischaracterization of the Ordinance, misstatements of the law and contradictions of the Amended Complaint.

First, Plaintiffs mischaracterize Chapter 405 to include a "buffer zone." Chapter 405 does not include any area beyond the driveway, except to prevent persons from walking into the driveway for purposes other than using it as a transportation route from Point A to Point B. This is significant and distinctive from the restriction in *McCullen*, which prohibited not only the driveway but also 35 feet beyond the driveway. *McCullen v. Coakley*, 573 U.S. 464, 469 (2014) (quoting Mass. Gen. Laws, ch. 266, § 120E1/2(a), (b) (West 2012)). In *McCullen,* the Court considered that the petitioners could not conduct sidewalk counseling directly *next to* the driveway, nor could they offer literature because the regulation pushed people "well back" from the driveway. *Id*. at 488. Nowhere was it suggested that people should be able to enter the driveway to conduct such counseling. Indeed, the *McCullen* plaintiffs only claimed a right to stand by the driveway. *Id*. at 490. Here, Plaintiffs can speak directly next to the driveway to those willing to listen, and pass

7

literature to those willing to take it, which the *McCullen* Court indicated would not burden more speech than necessary. *Id*. Thus not only did *McCullen* not address the type of restrictions at issue here, it suggested such a law would be constitutional.

Similarly, *Sisters* contained a buffer zone of 10 feet beyond the entrances. *Sisters for Life v. Louisville-Jefferson County*, 56 F.4th 400, 402-03 (6th Cir 2022). It was the 10-foot buffer zone that the Third Circuit found was not narrowly tailored because the buffer zone applied to all medical facilities and because the statute already prohibited "to knowingly obstruct, detain, hinder, impede, or block another person's entry to or exit from a healthcare facility." *Sisters,* 56 F.4th at 405. Here, the driveway is the entrance to the facility because there are fences along the driveway inside of the sidewalk, rendering the driveway the only entrance behind the building. Doc. 7 at 30. There is no additional "buffer" area included in the ordinance. The Third Circuit concluded that type of law would be narrowly tailored. *Id*. In contrast, pushing people back ten feet from the driveway placed the speakers more than arms-length away in *Sisters*. *Id*. At 406. That is not the case here. Plaintiffs are only as far as where the sidewalk meets the driveway. Plaintiffs may still offer literature to approaching vehicles and persons from the sidewalk on either side.

Second, Plaintiffs' arguments fail because they misrepresent the holdings in *McCullen*. Plaintiffs state repeatedly that *McCullen* held that "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." 573 U.S. at 467." Pl Memo at 14. This quotation does not come from the opinion and has no part of

the opinion, but rather is from the syllabus. "The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader." *McCullen v. Coakley*, 573 U.S. 464, 134 S.C.t 2518, 2522 (2014) citing *United States v. Detroit Timber & Lumber Co.,* 200 U.S. 321, 337, 26 S.Ct. 282. Instead, the sheer unprecedented size of the buffer zone, 35 feet, raised concerns that there were other options that would not restrict speech as much as the law did. *Id*. at 490. Contrary to Plaintiffs' arguments, never did the Court hold that the government must demonstrate that all less-restrictive alternative measures would fail.

Plaintiffs also allege that the City "cannot 'show[],' as it must, 'that it seriously undertook to address the problem with less intrusive tools readily available to it,' or that 'it considered different methods that other jurisdictions have found effective.' Doc. 25 at 18 (quotations included). *Mcullen* did not hold that governments must do that either. Rather, when the State of Massachusetts argued that it tried other approaches and they did not work, the Court concluded that there was nothing supporting that the existing laws did not work. *Id*. At 494. No part of the Court's holding in *McCullen* imposed a requirement that a governmental body try all less intrusive tools first.

Here, the city is not claiming it has tried all other approaches that do not work in the face of evidence that they would work. Instead, the City is demonstrating that it does not have more narrowly tailored options because of impossibility. While Massachusetts had an existing statute covering the public safety concerns there, the City does not have any existing ordinance that would cover the concerns here because the City's existing ordinances exempt First Amendment activity, which is what is physically disrupting access

9

to the Facility. Moreover, the diminished state of the City's police force renders the City unable to employ alternative solutions involving routine law enforcement surveillance. In *Turco v. City of Englewood,* the Third Circuit held that the city acted not out of mere convenience but *necessity* when it established a buffer zone law, due to its lack of financial resources and law enforcement personnel. 621 F. Supp. 3d 537, 551-52 (2022). Here, if the City ignored its own enforcement limitations, while it might create a policy that is less "burdensome" than the current ordinance, that policy would not be as effective. Unlike *McCullen*, the City does not claim the Ordinance makes its "job so much easier" rather it claims it makes satisfying the public safety interest possible. *McCullen*, 573 U.S. at 495.

### C. The Ordinance Does Not Significantly Burden More Speech Than Necessary to Further the City's Goals.

Plaintiffs now argue that the Ordinance is not narrowly tailored because it eliminates more than the exact source of evil because they are not protesters "necessarily destined to intentionally impede traffic and accost abortion clinic clients." Doc. 25 at 16, 18-20. Plaintiffs argue that because they are not protesters, a substantial portion of the burden on speech does not advance the City's goals. Doc. 25 at 16-17. They also claim they do not seek a right to physically disrupt access to the Facility. *Id.* at 17.

First, the allegations in the Amended Complaint suggest Plaintiffs *do* in fact want a right to intentionally physically disrupt access to the Facility when they protest or sidewalk counsel in the driveway; otherwise, there is no reason to challenge the Ordinance. Doc. 7 at ¶ 22, 34-40, 48-52; 65-68; 80; 87; 89; 105. For example, Plaintiffs alleged, "[t]heir

10

actions are deliberate, ultimately disrupting people from their progress entering into the abortion facility," and they also alleged their "protests will disrupt persons walking on the sidewalk as they enter or exit an abortion facility." *Id*. At ¶22, 35. But now, changing course, Plaintiffs claim that the City's "entire motion…unjustifiably asssume[es] Plaintiffs to be 'protestors' necessarily destined to intentionally impede traffic and accost abortion clinic clients," Doc. 25 at 16, and that they do not seek a legal right to obstruct the driveway. Doc. 25 at 15-17. Defendant addressed those specific allegations because they came directly from the Amended Complaint. It is undisputed that Plaintiffs' intention is to physically disrupt access to the Facility, and any claim to the contrary is disingenuous. Doc. 25 at 16.

Moreover, in claiming that the Ordinance sweeps in more speech than needed, Plaintiffs incorrectly presume the "evil" to be eliminated here is angry protests. Doc. 25 at 15-16, 19-20. It is not. The purpose of the Ordinance is to keep people out of the driveway for any reason unless they are using it as a travel route from Point A to Point B, so that patients can have access to the Facility. The "evil" to be eliminated is physical disruption. Protesting, violent disruptive conduct, and sidewalk counseling in the driveway all physically disrupts access and is precisely the "evil" to be eliminated. Doc. 12 at 2-3. Persons interested in engaging in angry protests may still do so, just not in the driveway.

Finally, Chapter 405 does not plausibly create a "significant burden on their speech" *Id.* at 22. Although Plaintiffs broadly and generically allege it is a significant burden and that it burdens substantially more speech than necessary, conclusory allegations need not be assumed true. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S.

11

at 554-55). Plaintiffs alleges the Ordinance significantly burdens their offering to speak to patients willing to speak to them and supplying literature to those willing to accept it. Doc. 25 at 17. The Ordinance does not pose a significant burden because Plaintiffs can simply move those same activities to either end of the sidewalk surrounding the driveway. This act does not make their activities "loud, obnoxious or confrontational" and is exactly what *McCullen* opined would be appropriate. Doc. 25 at 24; *McCullen*, 573 U.S. at 490.

On a motion to dismiss, Plaintiffs must provide a "showing, rather than a blanket assertion, of entitlement to relief." *Id.* at 22; *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Here, Plaintiffs allege that the abridgment of their rights is significant while providing no factual basis as to *how*. Indeed, Plaintiffs are able to stand in the exact same place that the plaintiffs in *McCullen* were able to stand prior to the 35-foot buffer zone, and there the plaintiffs were able to have close, consensual conversations and distribute literature. *McCullen*, 573 U.S. at 487.

Moreover, Plaintiffs' attempt to distinguish *Reilly v. City of Harrisburg* fails for two reasons. First, Plaintiffs misrepresent the holding. Plaintiffs state that *Reilly* does not "advance [Defendant's] cause" as the Court stated that when there is a significant burden on speech the government must show it tried or seriously considered substantially less restrictive alternatives. Doc. 25 at 22. Plaintiffs leave out that *Reilly* involved a 20-foot buffer zone and nevertheless the Third Circuit held that the ordinance did not place a significant burden on speech. *Reilly v. City of Harrisburg*, 790 Fed. Appx. 468, 467-68 (3rd Cir. 2019). *Reilly* also noted that when the burden on speech is not significant, "a less demanding inquiry" applies. *Id.* at 473. Plaintiffs then lift the language providing the

12

limited circumstances in which the government must seriously consider substantially less restrictive alternatives and claims the City failed to do that here. The problem with that argument is that Plaintiffs have provided no plausible, nonconclusory factual allegations supporting that the Ordinance imposes a significant burden on their speech. Plaintiffs instead state,

> Plaintiffs have alleged that the new law is a significant burden on their speech and thus the City must show that it seriously considered substantially less restrictive alternatives before resorting to (sic) buffer zone.

Doc.25 at 22. Plaintiffs' conclusion that the Ordinance is a significant burden is a conclusory allegations that should not be assumed true to survive a motion to dismiss. *Iqbal*, 556 U.S. at 681.

### D.   Plaintiffs Have Ample Alternatives For Protected Activity.

Unless Plaintiffs incredibly claim they can only speak to patients by stopping them or their car in the driveway, they can perform all First Amendment activities directly at the side of the driveway. The length of a driveway does not necessitate anyone to yell to engage in consensual conversation or prevent them from handing literature to those willing to accept it. Doc. 25 at 20. Plaintiffs posit a strawman argument that the City would suggest people stop their vehicle in the driveway and abandon it to approach Plaintiffs and then argues that this action would defeat the City's safety concern. Doc. 25 at 25. No such absurdity was asserted by the City. Plaintiffs create another strawman that the Ordinance

13

prohibits "all communicative activity," and this renders the Ordinance unconstitutional. Id. at 26. A simple reading voids this strawman as well.

### III. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE VIOLATION OF PLAINTFFS' RIGHT TO EXPRESSIVE ASSOCIATION.

Plaintiffs claim that the extremely narrow exclusionary area of the driveway strips them of all associational rights. Plaintiffs in one breath decry that they are "excluded from the one area in which those rights were previously exercised," Doc. 25 at 32, yet admit they have successfully gathered and associated with one another in St. Paul. *See* Doc. 7 at ¶¶ 36, 39, 83.

### IV. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE VIOLATION OF PLAINTIFFS FREE EXERCISE RIGHTS.

Plaintiffs fail to demonstrate that the Amended Complaint supports a plausible inference of religious suppression in violation of the First Amendment. Plaintiffs recognize that "adverse impact will not always lead to a finding of impermissible targeting." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993). Plaintiffs do not counter Defendant's argument that Chapter 405 passes rational basis review. Their free exercise claim should therefore be dismissed.

### V. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE UNCONSTITUTIONAL VAGUENSS OR OVERBREADTH.

Plaintiffs' arguments do nothing to diminish the City's arguments against vagueness. *See* Doc. 12 at 21-29. Plaintiffs' overbreadth argument is that there can never be a time, place and manner restriction to First Amendment activity. Doc. at 36. This is

false. *See Phelps-Roper v. Ricketts*, 867 F.3d 883, 891 (8th Cir. 2017) (holding that even traditional public forums may have reasonable time, place and manner restrictions).

Finally, the City did not rely upon *Hill v. Colorado* heavily, as Plaintiffs claim. *Id*. at 40. Plaintiffs' memorandum is again wrong. Defendant mentions *Hill* twice in string citations for the same proposition that buffer zones are content-neutral, which is also a proposition held in *McCullen*. Doc. 12 at 11, 17. Content-neutrality is not at issue here, as Plaintiffs have not addressed it and it has no bearing on Plaintiffs' overbreadth arguments.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests this Court grant its motion in its entirety.

Dated: 7/24/2023

KRISTYN ANDERSON
City Attorney
By      s/Tracey Fussy
TRACEY FUSSY (#311807)
SHARDA ENSLIN (#387914)
AMY SCHUTT (#395647)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street, Room 210
Minneapolis, MN 55415
(612) 673-2254
(612) 673-2180
(612) 673-5052
tracey.fussy@minneapolismn.gov
sharda.enslin@minneapolismn.gov
amy.schutt@minneapolismn.gov

*Attorneys for Defendant*