UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Pro-Life Action Ministries, Lucy Maloney,  Thomas Wilkin, and Debra Braun,

        Plaintiffs,

v.

City of Minneapolis,

        Defendant.

File No. 23-cv-853 (ECT/DJF)

**OPINION AND ORDER**

---

Peter Breen and Brennan Tyler Brooks, Thomas More Society, Chicago, IL, and Erick G. Kaardal and Elizabeth A. Nielsen, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun.

Tracey N. Fussy, Amy B. Schutt, and Sharda R. Enslin, Minneapolis City Attorney's Office, Minneapolis, MN, for Defendant City of Minneapolis.

---

Plaintiff Pro-Life Action Ministries is a Christian nonprofit organization that engages in "sidewalk counseling" outside healthcare facilities that provide abortions. Along with three of its staff members, it brought this suit to challenge a Minneapolis ordinance that prohibits physically disrupting a person's ingress, egress, or access to such facilities. Plaintiffs believe the ordinance prohibits their First Amendment freedoms of speech, association, and religion, and seek declaratory and injunctive relief, as well as damages. The City moves to dismiss the operative Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For reasons explained below, the motion will be denied with respect to the free-speech, free-exercise-of-religion, and overbreadth claims, and granted as to the freedom-of-association and vagueness claims.

I[1]

Plaintiff Pro-Life Action Ministries (PLAM) is a Minnesota nonprofit organization "dedicated to publicly defending the sanctity of human life."  Am. Compl. [ECF No. 7] ¶ 3.  PLAM is a Christian organization; its staff and volunteers, including the three individual Plaintiffs, "believe it is their assignment to serve and assist God's family in fulfilling His plan."  *Id.* ¶¶ 3–6.  It is best known for its sidewalk counseling outside facilities that perform abortions, where staff and volunteers offer "prayer, love, support, and alternatives to abortion-bound mothers."  *Id.* ¶ 3.

Plaintiffs Lucy Maloney, Thomas Wilkin, and Debra Braun are PLAM staff members.  *Id.* ¶¶ 4–6.  Maloney is PLAM's Communications Manager.  *Id.* ¶ 4.  She engages in sidewalk counseling and has "personally ministered" to mothers and fathers outside the Minneapolis Planned Parenthood facility.  *Id.*  Wilkin is PLAM's Sidewalk Counseling Manager.  *Id.* ¶ 5.  He engages in sidewalk counseling and trains PLAM volunteers.  *Id.*  Braun is PLAM's Education Director and has occupied this role since 1986.  *Id.* ¶ 6.  Braun engages in sidewalk counseling and has trained hundreds of people in sidewalk counseling techniques.  *Id.*

Plaintiffs engage in sidewalk counseling outside Planned Parenthood in Minneapolis.  *Id.* ¶ 11.  (Minneapolis only has one Planned Parenthood location, on Lagoon

---

[1]   In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor.  *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  In accordance with these rules, the facts are taken from the Amended Complaint.

Avenue between Fremont and Emerson Avenues. *Id.* ¶ 11; Pls.' Mem. in Opp'n [ECF No. 25] at 3 n.1.) Plaintiffs engage in their sidewalk counseling activities by approaching cars entering the parking lot or people on foot approaching the clinic's door. Am. Compl. ¶ 21. According to Plaintiffs, their ministry requires direct interaction with patients entering or exiting the facility's door or driveway. *Id.* Plaintiffs admit their practice is to "disrupt[] people from their progress entering into the abortion facility." *Id.* ¶ 22. They often enter the portion of the sidewalk in front of Planned Parenthood's driveway in order to "flag down" cars entering the parking lot. *Id.* ¶¶ 22, 26. This is a photograph of one such interaction:



*Id.* ¶ 30.

Counselors initiate interactions with clinic patients by asking if they are open to receiving literature. *Id.* ¶ 16. If a patient is receptive, counselors provide literature regarding alternatives to abortion, as well as housing options, childcare options, pre-natal care, financial assistance, and more. *Id.* ¶ 17. They also tell patients seeking care other than abortions (such as pap smears and STD testing) that by going to Planned Parenthood, the patients are "supporting an abortion provider." *Id.* ¶ 18. Sidewalk counselors are

trained to use "a caring demeanor, a calm tone of voice, and direct eye contact" when speaking to patients, and are not "loud, obnoxious, nor confrontational."  *Id.* ¶¶ 19–20. Plaintiffs claim sidewalk counseling is effective and have found that some recipients of sidewalk counseling are grateful for it.  *Id.* ¶¶ 13, 24.

In addition to their sidewalk-counseling activities, Plaintiffs engage in peaceful protests along with "petitioning activities related to abortion laws, issues of public concern, or support for (or against) potential candidates seeking elected office, or ballot questions." *Id.* ¶¶ 25, 34.

In November 2022, the City of Minneapolis enacted an ordinance ("the Ordinance") entitled "Disrupting access to reproductive healthcare facilities prohibited."  *Id.* ¶¶ 42–43; Minneapolis, Minn., Code of Ordinances ("MCO") § 405.20 (2022).  Section 405.20 reads in full:

> No person shall knowingly physically disrupt any person's access to, ingress to, or egress from a reproductive healthcare facility, or attempt to do so, except:
>
> (1) When crossing the driveway completely from one side of the driveway to the other without stopping or slowing and continuing to a destination beyond the furthest lot line of the reproductive healthcare facility;
>
> (2) When using the driveway to move from the reproductive healthcare facility to the street or vice versa;
>
> (3) Government employees, agents, and assigns, such as law enforcement, emergency medical personnel, firefighters, regulatory services, and public works, when acting within the scope of their duties; or
>
> (4) Employees, agents, and assigns of the reproductive healthcare facility when acting within the scope of their duties.

4

MCO § 405.20 (2022).[2]  The next section, entitled "occupying driveways prohibited" reads: "No person shall knowingly enter onto or create an obstruction within a driveway during the reproductive healthcare facility's business hours," with the same four exceptions.  MCO § 405.30 (2022).  The Ordinance includes a "definitions" section, which reads in full:

> As used in this chapter:
>
> *Disrupt* shall mean obstruct, impede, or hinder.
>
> *Driveway* shall mean that portion of a right-of-way, including a sidewalk or bikeway, that provides vehicular access from a street to a reproductive healthcare facility.
>
> *Reproductive healthcare facility* shall mean a facility, other than a hospital, where abortions are offered or performed in accordance with state law, and shall include, but not be limited to, the structures, grounds, and parking facilities occupying the same lot as the facility.

MCO § 405.10 (2022).

Violations of the Ordinance are "issued through citations, subjecting the alleged violator to an administrative enforcement and hearing process."  Am. Compl. ¶ 73.  Civil fines and petty misdemeanor charges may also be imposed.  *Id.*  Plaintiffs are aware of the penalties and have curtailed their activities to avoid being penalized.  *Id.* ¶¶ 74, 78–79.

Plaintiffs claim the Ordinance was enacted to curtail their expressive and associational activities.  *Id.* ¶ 50.  They believe the Ordinance creates an exclusion zone,

---

[2]     It doesn't matter in light of the Parties' arguments, but it is unclear whether § 405.20 includes any geographic limitation on its reach.  On its face, the section does not appear limited; any person who knowingly disrupts a person's route to a reproductive healthcare facility—anywhere—apparently violates the section.  Only the exceptions to the rule offer the "driveway" as a limiter.

which prohibits them from engaging with patients entering the Planned Parenthood parking lot. *Id.* ¶¶ 65–67. Plaintiffs claim the City was aware of their sidewalk counseling and other practices when it enacted the Ordinance. *Id.* ¶¶ 53–55.

Plaintiffs sued the City under 42 U.S.C. § 1983 seeking to enjoin enforcement of the Ordinance because it violates the freedoms of speech, association, and religion guaranteed by the First and Fourteenth Amendments. *Id.* at 31–32. They seek declaratory relief that the Ordinance is unconstitutional on its face or, alternatively, as applied to them. *Id.* Plaintiffs also seek to enjoin enforcement of the Ordinance and an award of damages. *Id.*

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Ordinarily, courts do not consider matters outside the pleadings in resolving a Rule 12(b)(6) motion to dismiss.  *See* Fed. R. Civ. P. 12(d).  But "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned" may be considered without converting the motion into one for summary judgment.  *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).  If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Although transcripts of public hearings may be considered "matters of public record," the court "may merely take notice of the existence of the transcript and hearing;" it "may not evaluate testimonial statements recorded in the transcript that contradict the pleadings."  *Sanimax USA, LLC v. City of S. St. Paul*, 496 F. Supp. 3d 1285 (D. Minn. 2020); *see also Charter Advanced Servs. (MN), LLC v. Heydinger*, No. 15-3935 (SRN/KMM), 2016 WL 3661136, at *18 (D. Minn. July 5, 2016) ("[A] motion to dismiss is not the proper procedural juncture for consideration of a defendant's evidence, including any of a defendant's testimony at an antecedent administrative proceeding. . . .  While a court may take judicial notice of another court's opinion, such notice is of 'the existence of the opinion, which is not subject to reasonable dispute over its authenticity,' but not of the facts summarized in the opinion." (quoting *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014))).

Here, the City supported its motion by filing a declaration and four exhibits. These exhibits include a committee hearing transcript, exhibits from that hearing, and a Minnesota Supreme Court decision. Fussy Decl. [ECF No. 13]. The City relies on these materials for the truth of factual assertions appearing within them. Def.'s Mem. in Supp. [ECF No. 12] at 2–4. For example, the City cites a City of Minneapolis Health and Public Safety Committee hearing transcript to support its contention that protestors stand in the Planned Parenthood driveway, blocking access to the facility, and one protestor chased a patient out of the parking lot. *Id.* at 2–3. Plaintiffs dispute the truth of these factual assertions. Pls.' Mem. in Opp'n at 12 ("The City Council Committee hearing transcript in particular contains hearsay, generalities, and other evidence Plaintiffs have never been able to cross-examine."). Owing to the character of these materials, the purposes for which they have been offered, and the fact that Plaintiffs dispute the truth of the factual assertions on which the City relies, it would not be appropriate to consider any of these materials in adjudicating Defendant's motion.

III

A

In Count I of the Amended Complaint, Plaintiffs allege the Ordinance infringes their First Amendment right to freedom of speech. The government's ability to restrict speech in a traditional public forum is "very limited." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Sidewalks are quintessential public fora. *Id.* at 476. "Such areas occupy a 'special position in terms of First Amendment protection' because of their historic role as sites for discussion and debate." *Id.* (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)).

Sidewalks "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Id.* (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)). "Content-neutral time, place, and manner restrictions are permitted in traditional public fora if the restrictions 'are narrowly tailored to serve a significant governmental interest.'" *Ness v. City of Bloomington*, 11 F.4th 914, 923 (8th Cir. 2021) (quoting *McCullen*, 573 U.S. at 477).

The Ordinance's content-neutrality is not seriously disputed. A law is "content neutral so long as it is justified without reference to the content of the regulated speech." *Phelps-Roper v. Ricketts*, 867 F.3d 883, 892 (8th Cir. 2017) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also McCullen*, 573 U.S. at 480 (A law "would be content based if it required enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred.") (cleaned up). A law is content neutral if it "serves purposes unrelated to the content of expression," even if "it has an incidental effect on some speakers or messages but not others." *McCullen*, 573 U.S. at 480 (quoting *Ward*, 491 U.S. at 791). The Supreme Court has "previously deemed" concerns for "public safety, patient access to healthcare, and the unobstructed use of public sidewalks and roadways" to be content neutral. *Id.* (citing *Boos v. Barry*, 485 U.S. 312, 321 (1988)). The Ordinance is content neutral. It serves purposes unrelated to the content of expression. These include public safety, patient access to healthcare, and unobstructed use of sidewalks. The Ordinance does not require law enforcement to examine the content of the message conveyed to determine whether a violation has occurred; every person who

knowingly physically disrupts a person's access to a reproductive healthcare—for any reason, including by simply being in the driveway—has violated the Ordinance. Plaintiffs assume for the sake of their argument that the law is content neutral. *See* Pls.' Mem. in Opp'n at 13 n.4. They reserve the right to argue that the Ordinance is content based after discovery. *Id.* The operative Amended Complaint raises no allegations that might plausibly show—under controlling Supreme Court precedents—that the Ordinance is not content neutral.

The presence of significant governmental interests is not the subject of dispute, either. Local governments have "undeniably significant interests in maintaining public safety on . . . streets and sidewalks, as well as in preserving access to adjacent healthcare facilities." *McCullen*, 573 U.S. at 496–97. Here, the City's stated purposes for enacting the Ordinance "include public safety, patient access to healthcare, and the unobstructed use of public sidewalks and streets." Def.'s Mem. in Supp. at 10. Again, Plaintiffs do not seem to dispute that the City has a significant interest. *See* Pls.' Mem. in Opp'n at 15, 20 ("While the City has an interest in maintaining public safety on streets and sidewalks . . . .").

The fighting issue is narrow tailoring. A regulation is not narrowly tailored if it "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486 (citation omitted). A time, place, and manner regulation "need not be the least restrictive or least intrusive means of serving the government's interests." *Id.* (cleaned up). "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's

10

interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800. Thus, "[t]he government's choice among the means to accomplish its end is entitled to deference." *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 915–16 (8th Cir. 2017) (quoting *Ass'n of Cmty. Orgs. for Reform Now v. St. Louis Cnty.*, 930 F.2d 591, 595 (8th Cir. 1991)). Still, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495;[3] *see also Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 405 (6th Cir. 2022) (finding ordinance likely violated First Amendment because "the County has not shown that it 'seriously undertook to address' its concerns 'with less intrusive tools.'").

Determining whether a challenged regulation is narrowly tailored is ordinarily a "rigorous and fact-intensive inquiry." *Bruni v. City of Pittsburgh*, 824 F.3d 353 (3rd Cir. 2016) (referencing *McCullen*, 573 U.S. 464).[4] *McCullen* shows this is so. There, sidewalk counselors challenged a Massachusetts statute prohibiting people from entering or remaining "within a radius of 35 feet of any portion of an entrance, exit or driveway of a

---

[3]    The City argues that this quote appears only in the *McCullen* syllabus and is therefore not controlling. Def.'s Reply Mem. [ECF No. 27] at 8–9. It is true that Plaintiffs mistakenly attributed this quote to the syllabus in their opposition brief, Pls.' Mem. in Opp'n at 14, 17–18, but the quote appears in *McCullen*'s text, 573 U.S. at 495.

[4]    The Parties do not address specifically what a First Amendment plaintiff must allege to plausibly show a violation. Given its reliance on extra-pleading materials, I infer the City believes Plaintiffs have done enough in their Amended Complaint. Regardless, the pleading bar seems low, *see Bruni*, 824 F.3d at 353 (finding plaintiffs' allegations to the effect that the challenged regulation prevented them from reaching their intended audience were sufficient to survive a motion to dismiss), and Plaintiffs have cleared it.

reproductive health care facility." *McCullen*, 573 U.S. at 471. A separate provision subjected anyone who "knowingly obstructs, detains, hinders, impedes or blocks another person's entry to or exit from a reproductive health care facility" to criminal punishment. *Id.* at 470. As here, the sidewalk counselors in Massachusetts stood outside Planned Parenthood locations in Boston, Worcester, and Springfield, initiating conversations with would-be patients and handing out literature. *Id.* at 472–73. But the statute effectively excluded sidewalk counselors from engaging with patients by creating buffer zones around the facilities. *Id.* at 473–75. *McCullen* was decided at the district court level after a bench trial on a stipulated record. *Id.* at 475. In the record was legislative history, as well as testimony from Massachusetts's Attorney General, clinic employees and volunteers, police officers, the petitioners, and more. *Id.* at 470–71, 480. The Court found that Massachusetts could enact less restrictive statutes to serve its interests and had not "seriously address[ed] the problem through alternatives," and therefore the statute failed the narrow tailoring requirement. *Id.* at 490–92, 496–97. In the Supreme Court's view, "buffer zones burden substantially more speech than necessary to achieve [Massachusetts's] asserted interests." *Id.* at 490.

Other cases make the same point. In *Sisters for Life*, the Sixth Circuit reversed a district court's decision not to preliminarily enjoin enforcement of a 10-foot buffer zone around abortion-providing clinics. 56 F.4th at 409. The Sixth Circuit remanded with instructions to enjoin the ordinance because it failed narrow tailoring. *Id.* In *Sisters*, the parties conducted discovery before the district court ruled. *See, e.g.*, *id.* at 407 (referencing a county representative's 30(b)(6) deposition and "record evidence"); *see also Turco v.*

*City of Englewood*, 935 F.3d 155, 161 (3rd Cir. 2019) (deciding narrow-tailoring question at summary-judgment stage). *Bruni* is instructive too. There, the Third Circuit reversed the dismissal at the pleadings stage of a freedom-of-speech claim challenging a similar ordinance. *Bruni*, 824 F.3d at 372–73. In the court's view, the plaintiffs' allegations that the ordinance made their sidewalk counseling more difficult were sufficient to require the government to prove "either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason." *Id.* at 370. The *Bruni* court noted that the city could not simply forego the range of alternatives available to it "without a meaningful record demonstrating that those options would fail to alleviate the problems meant to be addressed." *Id.* at 371. *Bruni* read *McCullen* to require a more developed record before deciding the speech claim; it cited *McCullen* for the "rigorous and fact-intensive nature of intermediate scrutiny's narrow-tailoring analysis." *Id.* at 372. The case, therefore, could not be decided at the pleadings stage.

Without a developed record, it is not possible to answer the "narrowly tailored" question in this case at this motion-to-dismiss stage. Plaintiffs allege that the Ordinance is not narrowly tailored because the City has not shown either that existing laws are inadequate or that it seriously considered less restrictive alternatives. Am. Compl. ¶¶ 97–98; Pls.' Mem. in Opp'n at 21–23. The City argues the Ordinance is narrowly tailored because existing ordinances were not capable of ameliorating the problems facing facilities that provide abortions and ample avenues of communication remain open. Def.'s Mem. in Supp. at 19–20. To support its position, the City claims, for example, that its police force is "indisputably diminished significantly." *Id.* at 21. But the City's support for this factual

13

assertion—and other assertions it makes—come from materials that cannot appropriately be considered at this stage for the truth of their factual content. *See id.* at 3–4; ECF No. 13-2. It simply is not possible to answer the narrowly tailored question on just the Amended Complaint. *Cf. McCullen*, 573 U.S. at 494–95.

B

In Count II, Plaintiffs claim the Ordinance abridges their right of expressive association because they cannot engage with would-be Planned Parenthood patients. The City argues Count II should be dismissed because the Ordinance neither implicates nor violates Plaintiffs' expressive association rights.

The First Amendment prohibits the government from "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court articulated a right to association in *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 460–61 (1958): "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." The Court has "long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others." *Ams. for Prosperity Found. v. Bonta*, 594 U.S. ---, 141 S. Ct. 2373, 2382 (2021) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)). "Government infringement of this freedom 'can take a number of forms.'" *Id.* (quoting *Roberts*, 468 U.S. at 622). For example, the Supreme Court has held "that the freedom of association may be violated where a group is required to take in

14

members it does not want, where individuals are punished for their political affiliation, or where members of an organization are denied benefits based on the organization's message." *Id.* (cleaned up). The right to associate also protects against "compelled disclosure of affiliation with groups engaged in advocacy." *Id.* (quoting *NAACP*, 357 U.S. at 462). "As with other constitutional rights, the right to expressive association is not absolute and can be abridged in the face of 'compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 535 (8th Cir. 2005) (quoting *Roberts*, 468 U.S. at 623).

It is not necessary to reach whether less restrictive means are available to the City here because Plaintiffs do not plausibly state a claim of violation of their right to associate. Plaintiffs' claim does not rest on one of the "forms" of infringement the Supreme Court described in *Bonta* and *Roberts*: Plaintiffs do not allege they are being required to take in members they do not want; they are not being punished for their political affiliation; they are not being are denied benefits based on their message; they are not being compelled to disclose their membership to the government. *See Bonta*, 141 S. Ct. at 2382. Plaintiffs simply allege that the Ordinance interferes with their right to associate with would-be patients of the Minneapolis Planned Parenthood facility because they are effectively excluded from approaching them the driveway. Pls.' Mem. in Opp'n at 29–30. In their Amended Complaint, Plaintiffs identify no ascertainable persons or groups with whom they wish to associate and cannot. *See generally* Am. Compl. ¶¶ 118–30. The persons with whom Plaintiffs seek to associate are hypothetical. But Plaintiffs have cited no case

or other authority supporting the idea that the right to associate grounded in the First and Fourteenth Amendments protects association with unknown or hypothetical individuals. *See generally* Pls.' Mem. in Opp'n at 29–32.  Plaintiffs' allegations are both vague and conclusory.  Plaintiffs "believe that they have a right to expressively associate with others" and that it is being curtailed.  Am. Compl. ¶¶ 120, 123.  The City is correct that Plaintiffs' associational rights are not implicated and are therefore not violated by the Ordinance.

C

In Count III, Plaintiffs claim the Ordinance curtails their right to freely exercise their religion in violation of the First and Fourteenth Amendments because their sidewalk counseling is a practice based in Christianity.  Am. Compl. ¶¶ 3–6.  The City does not dispute the religious nature of sidewalk counseling nor does it "question[] the sincerity of the Plaintiffs' professed desire" to engage in sidewalk counseling for religious reasons. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).  The City argues that the Ordinance does not violate Plaintiffs' free-exercise rights because it is a neutral law of general applicability and passes rational basis review.

It is a fundamental First Amendment principle that the "government may not enact laws that suppress religious belief or practice." *Id.* at 523.  Supreme Court case law establishes "the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531 (citing *Emp. Div., Dept. of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990)).  "Neutrality and general applicability are interrelated, and . . . failure to satisfy one requirement is a likely indication

16

that the other has not been satisfied." *Id.* A law "failing to satisfy" the neutrality and general applicability requirements "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* at 531–32.

Begin with neutrality. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Id.* at 532 (citing *Braunfeld v. Brown*, 366 U.S. 599, 607 (1961) (plurality opinion) and *Fowler v. Rhode Island*, 345 U.S. 67, 69–70 (1953)). A law is not neutral "if the object of a law is to infringe upon or restrict practices because of their religious motivation." *Id.* at 533 (citing *Smith*, 494 U.S. at 878–879). And a non-neutral law is "invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* "To determine the object of a law, we must begin with its text, for the minimum requirement of neutrality is that a law not discriminate on its face." *Id.* "A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context." *Id.*

The Ordinance is facially neutral. It refers to no religious practice. It does not use words that have "strong religious connotations." *See id.* at 533–34 (finding use of the words "sacrifice" and "ritual," words with strong religious connotations, is consistent with a claim of facial discrimination, but not conclusively).

But "facial neutrality is not determinative." *Id.* at 534. "The Free Exercise Clause, like the Establishment Clause, extends beyond facial discrimination" to "forbid[] subtle departures from neutrality" and "covert suppression of particular religious beliefs." *Id.*

(quoting *Gillette v. United States*, 401 U.S. 437, 452 (1971) and *Bowen v. Roy*, 476 U.S. 693, 703 (1986)) (cleaned up).   Government action "that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality."   *Id.*   The government's object may be determined "from both direct and circumstantial evidence."   *Id.* at 540 (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).   "Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body." *Id.* (citing *Arlington Heights*, 428 U.S. at 267–68).

The *Hialeah* case presented a challenge to the City of Hialeah, Florida's ordinances prohibiting animal sacrifice.   *Id.* at 527–28.   The Church of Lukumi Babalu Aye, whose congregants practice Santeria, leased land in Hialeah and planned to open a church, school, and museum.   *Id.* at 525–26.   The Church's "goal was to bring the practice of the Santeria faith, including its ritual of animal sacrifice, into the open."   *Id.* at 526.   Members of the Hialeah community found the practice of animal sacrifice distressing, and Hialeah passed resolutions and ordinances banning ritual or ceremonial animal sacrifice in response.   *Id.* The Church challenged the ordinances by filing a lawsuit pursuant to 42 U.S.C. § 1983, asserting a violation of its free exercise.   *Id.* at 528.   The Supreme Court found the ordinances in question were not neutral or generally applicable because their effect was almost exclusively to regulate the conduct of Santeria church members who wished to perform animal sacrifices, *id.* at 535 ("[A]lmost the only conduct subject to Ordinances

87–40, 87–52, and 87–71 is the religious exercise of Santeria church members."), and the ordinances improperly targeted Santeria, *id.* at 538.

This is where the City runs into its now familiar problem of discovery. *Hialeah* was decided after a nine-day bench trial. *Id.* at 528. In its decision, the Supreme Court relied on "substantial testimony" regarding Hialeah's motives for enacting its ordinances and frequently mentioned the underlying trial record. S*ee, e.g.*, *id.* at 544–45. Without such a record—including historical background, legislative history, and contemporaneous statements of decisionmakers—it is not possible to determine whether the Ordinance is neutral or generally applicable at this stage.

### D

Plaintiffs claim the Ordinance is vague because some terms are undefined, and overbroad because it "abuts upon sensitive areas of basic First Amendment freedoms." Am. Compl. ¶¶ 102–04. The City argues, among other things, that Plaintiffs failed to plead overbreadth and that the Ordinance is not vague because Plaintiffs understand what it proscribes. Def.'s Mem. in Supp. at 21–29.

"[I]mprecise laws can be attacked on their face under two different doctrines. First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973)). "Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for

the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

A statute "is overbroad under the First Amendment and, therefore, facially unconstitutional 'if it prohibits a substantial amount of protected speech.'" *United States v. Buie*, 946 F.3d 443, 445 (8th Cir. 2019) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). The overbreadth doctrine is "strong medicine" and is employed "with hesitation," and then "only as a last resort." *New York v. Ferber*, 458 U.S. 747, 769 (1982) (quoting *Broadrick*, 413 U.S. at 613). The Supreme Court has "insisted that the overbreadth involved be 'substantial' before the statute involved will be invalidated on its face." *Id.* A law "should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *Id.* at 771.

Here again, the *Bruni* court's reasoning is instructive. There, the Third Circuit thought it "unwise . . . to assess the proper scope of the City's Ordinance without there first being a resolution of the merits of the Plaintiffs' free speech claim" in part because "the breadth of the challenged law plays a role in the narrow-tailoring analysis of the Plaintiffs' free speech claim." *Bruni*, 824 F.3d at 374. It found it could not assess the overbreadth challenge "absent a well-supported conclusion regarding the proper scope of the Ordinance," which in turn requires a "developed factual record." *Id.* Just as in *Bruni*, it would be premature to dismiss Plaintiffs' overbreadth challenge at the pleadings stage. Without "a well-supported conclusion regarding the proper scope" of the Ordinance, the overbreadth claim may not be adequately assessed.

In keeping with due-process principles, a law is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A two-part test determines whether a statute is vague: 'The statute must first provide adequate notice of the proscribed conduct, and second, not lend itself to arbitrary enforcement.'" *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 886 (8th Cir. 2021) (quoting *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009)). "'[F]lexibility and reasonable breadth' are acceptable as long as it is 'clear what the [rule] as a whole prohibits.'" *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345 (8th Cir. 2020) (quoting *Grayned*, 408 U.S. at 110)).

Plaintiffs argue that because "physical" is undefined and the definition of "disrupt" is vague, the entire Ordinance is "unconstitutionally vague and in need of judicial review." Pls.' Mem. in Opp'n at 38–40. Plaintiffs did not clarify whether their vagueness challenge is facial or as-applied, even after the City identified the problem. *See* Def.'s Mem. in Supp. at 25. Under the law, Plaintiffs advance an as-applied challenge. "We consider whether a statute is vague as applied to *the particular facts at issue*, for a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 761 (8th Cir. 2019) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010)). Plaintiffs admit they engage in conduct that is clearly proscribed by the law and therefore "cannot complain of the vagueness of the law as applied to the conduct of others." *Id.*

Though Plaintiffs argue one would "search the Amended Complaint in vain" for a suggestion that they intend to disrupt access to facilities, Pls.' Mem. in Opp'n at 17, the

21

Amended Complaint says exactly that—and many times.  *See* Am. Compl. ¶ 22 ("Their actions are deliberate, ultimately *disrupting* people from their progress entering into the abortion facility."); *id.* ¶ 50 ("The plaintiffs' expressive and associational activities . . . by their very nature stop individuals and, thus, *disrupt* a person from entering into the Minneapolis Planned Parenthood abortion facility."); *id.* ¶ 90 ("[W]hen Maloney, Wilkin, Braun, and PLAM staff members and volunteers stop a person to communicate with them, *they do physically disrupt*, hinder, or obstruct the person from entering or exiting the Planned Parenthood facility, within the meaning of the ordinance.") (emphasis added to each); *see also id.* ¶¶ 35, 51, 81, 94, 105.  In view of the Amended Complaint's allegations, Plaintiffs' suggestion that the words "physical" and "disrupt" are so vague as to not give them adequate notice of what is and is not prohibited is implausible.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendant City of Minneapolis's Motion to Dismiss [ECF No. 10] is **GRANTED IN PART** and **DENIED IN PART**.

2.    The Motion is **GRANTED WITHOUT PREJUDICE** with respect to Count I to the extent Count I asserts a void-for-vagueness challenge and Count II.

3.    The Motion is **DENIED** in all other respects.

Date: October 30, 2023                          s/ Eric C. Tostrud
                                                        Eric C. Tostrud
                                                        United States District Court