UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun,<br><br>    Plaintiffs,<br><br>v.<br><br>City of Minneapolis, a Minnesota Municipality,<br><br>    Defendant. | Case No. 23-CV-853 (ECT/DJF)<br><br>**STIPULATION GOVERNING PRODUCTION AND USE OF ELECTRONICALLY STORED INFORMATION** |

  The Parties hereby stipulate that electronically stored information ("ESI") will be searched for, produced, and used in the following form and manner in this litigation:

  The Parties agree to take reasonable steps to preserve ESI in a form that will permit the collection and production of ESI and metadata, and to conduct all aspects of ESI discovery in a manner that is reasonable and proportional to the needs of the case. The Parties agree to discuss selection of custodians and search-term formulation relating to any requests for production of ESI, if necessary. Nothing in this protocol shall limit a party's right to seek or object to discovery as set out in applicable rules or to object to the authenticity or admissibility of any hardcopy document or ESI produced in accordance with this protocol. The production formats for any other materials not addressed herein will be addressed by the parties meeting and conferring regarding the specific item or category of items.

  This Protocol does not address, limit, or determine the relevance, discoverability, or admission into evidence of any ESI or document. Nor do the Parties waive any objections as to

the production, discoverability, or confidentiality of any ESI or documents subject to this Protocol.

The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

**I.     DEFINITIONS**

**A.** "Electronically stored information," or "ESI," as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

**B.** "Native," "Native format," or "Native data format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities.

**C.** "Metadata" means and refers to information about information or data about data, and includes, without limitation: (i) information embedded in or associated with a Native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

**D.** "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

**II.     Searching for Responsive ESI, Generally:** A party responding to discovery requests (the "Responding Party") shall, in addition to searching for non-digital copies of responsive information or documents, conduct a diligent search, proportional to the needs of the case, of all sources within its possession, custody, or control that it has reason to believe may contain relevant ESI responsive to any discovery request.

**III.    General Format of Production:** The default production format for unstructured discoverable ESI will be black-and-white Group IV single-page TIFF (300 DPI) with document-level extracted text files or OCR text files (for redacted records, scanned hard copy documents, non-searchable images) and a standard delimited .DAT file containing the file path for document-level text files, the file path or any produced native files, and the agreed upon meta-data fields (see Exhibit A). An image cross reference file in Opticon format will also be provided.

ESI that (i) is maintained in spreadsheets (*e.g.*, Lotus; Microsoft Excel) or (ii) exists as raw audiovisual files need only be produced in native format with a placeholder TIFF image stating "Document Produced Natively." ESI maintained in presentation formats (*e.g.*, Microsoft PowerPoint) will be produced in native format. Photos will be produced in native format. Native files should be produced within incrementally named "Native" directories, separate from image and text directories.

Spreadsheets which require redaction to protect privileged or other objectionable information may be produced as either a native redacted file (using a native redaction tool such as Blackout) or as an image file. All other files which require redaction to protect privileged or other objectionable information shall be produced in image file format. Each document's electronic image shall convey the same information and image as the original document.

**IV.** **Data Processing − Time Zones:** The Parties agree that all ESI will be processed using Central Standard Time (CST).

**V.** **Document Unitization:** Each page of a hard-copy document shall be scanned into an image in accordance with Paragraph III. Documents will be logically unitized so that any attachments or affixed notes will be captured as separate documents. The family or attachment range (Bates number of the first page of the parent document and the Bates number of the last page of the last attachment) shall be reflected in the load file referenced above.

When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single documents are not split into multiple records (*i.e.*, the Parties shall attempt to logically unitize scanned hard copy documents).

All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.

The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort not appearing on any other copy or any copy containing different attachments from any other copy, provided that such notation is in any way relevant to the subject matter of this lawsuit.

**VI.** **Bates Numbering:** Each page of a produced electronic document shall be sequentially marked with a legible "Bates" number stamped or electronically "burned" onto the Image. "Confidential" designations, if needed or required, are to be placed on the document in a location that does not cover, obliterate, or obscure any other information on the document. Native files will be produced in accordance with Paragraph XIII.

VII. **Document Production:** Productions should be transferred via encrypted zip files on Sharepoint if shared online rather than produced by means of a data storage device. Data may also be delivered via encrypted USB thumb drive. Documents produced on thumb drive shall include a label containing the case name, the name of the party making the production, the production volume, and the date of the production. Cover letters accompanying the production shall include a reasonable description of the production contents.

VIII. **Metadata:** For native files and images generated from native electronic documents (*e.g.*, email, word processing documents, and spreadsheets), the Parties shall provide the metadata set forth in Exhibit A, where available, in the accompanying DAT file.

IX. **Extracted/OCR Text:** Each party shall produce corresponding extracted text files for all non-redacted documents. OCR text should be provided for image-based files with no extractable text, scanned hard copy documents and redacted documents. Extracted/OCR text files shall be provided in Text file format with individual files corresponding to each document. The file name of each extracted/OCR text file shall be the beginning Bates Number of the corresponding document, followed by the extension ".txt." Text files will be produced in a "TEXT" folder and not be included in "IMAGE" or "NATIVES" folders. The file path to the Text file will be included in the accompanying DAT file.

X. **Color:** Notwithstanding the default production format described in Paragraph III, the Parties will make reasonable efforts to produce color documents in color.

XI. **Duplicates:** In cases where multiple custodians possess identical copies of a document, only one copy of the document need be produced.

XII. **Email Threading:** The Parties may use industry standard analytic tools to employ "email thread suppression." As used in this Stipulation, email thread suppression means producing the

most inclusive email in a conversation thread, as well as all attachments within the thread, and excluding emails identified as duplicate emails within the produced conversation thread. Only email messages that are included within more complete, produced thread parts will be considered appropriate for exclusion from production. Agreed-upon metadata will not be produced for email thread parts suppressed under this Paragraph.

XIII. **Native Files:** Spreadsheet files, database files, and other files as agreed to by the Parties should be produced in native format with a corresponding placeholder image. Native files should be given a single Bates number and the same number should be applied to the place holder image along with any confidentiality designations. Files should be named after their Bates number and include the original file extension of the native file. Any confidential designation should be included as part of the file name. Native files will be produced in a "NATIVES" folder as specified above. The file path for the native file will be included in the accompanying DAT file.

XIV. **Oversized Documents:** Documents that cannot for technical or other reasons be legibly produced in the manner described in Paragraph III above (*e.g.*, documents having a size larger than 11 x 17 inches) shall be produced by scanning a representative identifying portion of the document as a place holder (*e.g.*, a map or drawing legend) and numbering it as described in Paragraph VI above. A paper copy (in color, if applicable) of the entire document shall then be made and numbered with the Bates number corresponding to the place holder and stamped with any applicable "Confidential" or "Redacted" notations. This paper copy shall be produced along with the electronic production.

XV. **Hard Copy Documents:** Hard copy documents should be scanned using the format identified in Paragraph III. Documents should be logically broken with attachment ranges provided where applicable. OCR text and load files as referenced in Paragraphs III and IX will be provided.

**XVI.     Privilege Logs.** The Parties will produce privilege logs in Excel format. Unless otherwise agreed, a Responding Party will produce a privilege log within 14 calendar days after the production of documents for which privilege is asserted to apply or within 14 calendar days of execution of this Stipulation, whichever is later.

**XVII.     Scope.** This Stipulation shall apply to all Parties that are required to make any production of ESI in this action, pursuant to Federal Rules of Civil Procedure 26 and 34 and/or any other applicable rules. This Stipulation shall continue in full force and effect until further order of the Court or until this litigation is terminated by a final judgment.

**XVIII.     Exceptions/Dispute Resolution.** Should a party determine in response to a specific discovery request that compliance with the technical specifications set forth herein will be unreasonably difficult, cumbersome, or expensive with respect to a response to that request, the Responding Party may so notify the requesting party, and those parties shall attempt to reach agreement as to any potentially appropriate variance from the specification. In the event that the parties cannot resolve any issues that may arise with respect to a specific request, a party may request that the Court or a special master, should one be appointed, approve an exception or modification of the terms of this Stipulation as may be reasonable or appropriate.

Likewise, if it is determined after a production is made that a document or documents produced in the formats described below are not reasonably accessible in the form provided, the party that requested the document may so notify the Responding Party, and the parties shall attempt to reach agreement as to any potentially appropriate variance from this Stipulation's provisions. If the parties cannot resolve any issues that may arise with respect to a specific request, a party may request that the Court or a special master, should one be appointed, approve an exception or modification of the terms of this Stipulation as may be reasonable or appropriate.

Documents that present imaging or formatting problems shall be promptly identified, and the parties shall meet and confer to attempt to resolve such problems. To the extent exceptions to the foregoing are required, the parties will meet and confer to discuss alternative production requirements, concerns or formats.

Nothing in this Stipulation shall be construed to vary or expand the scope of discoverable information nor to limit the obligations of a producing party as provided in the Federal Rules of Civil Procedure.  The Responding Party does not waive any objections, including, without limitation, objections as to relevance and admissibility, by making any production under this protocol.

MOHRMAN, KARDAAL & ERICKSON, P.A.

s/ *Erick G. Kaardal*
Erick G. Kaardal (#0229647)
Elizabeth A. Nielson (#0403696)
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
(612) 465-0927
(612) 465-0905
kaardal@mklaw.com
nielson@mklaw.com

THOMAS MOORE SOCIETY

s/ *B. Tytler Brooks*
Peter Breen (IL Bar No. 6271981)
Brennan Tyler Brooks (NC Bar No. 37604)
309 W. Washington Street, Suite 1250
Chicago, IL  60606
(312) 782-1680
(336) 707-8855
pbreen@thomasmoresociety.org
tbrooks@thomasmoresociety.org

Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

Dated: December 28, 2023

**KRISTYN ANDERSON**
**Minneapolis City Attorney**

By:   s/ *Tracey N. Fussy*
Tracey N. Fussy (#0311807)
Sharda Enslin (#0389370)
Munazza Humayun (#0390788)
Assistant City Attorneys
Minneapolis City Attorney's Office
City Hall, Room 210
350 South Fifth Street
Minneapolis, MN 55415

(612) 673-2254

(612) 673-2180
(612) 673-3152
tracey.fussy@minneapolismn.gov
sharda.enslin@minneapolismn.gov
munazza.humayun@minneapolismn.gov

***Attorneys for Defendant***

**EXHIBIT A**

Pursuant to Paragraph VIII of this Stipulation, for native files and images generated from native electronic documents, the Responding Party shall provide metadata corresponding to the following fields, where available, in an accompanying Load File:

| Coding Field: | Description: |
|---|---|
| BegBates, EndBates<br>BegDoc, EndDoc | The beginning and ending Bates Numbers for the document at issue. |
| BegAttach, EndAttach<br>BegAtt/EndAtt | The beginning and ending Bates Numbers of the collection to which the parent document and any attachments thereto are associated (i.e., for an email that is Bates stamped ABC0001 - ABC0002, with two attachments Bates stamped ABC0003 - ABC0004 and ABC0005 - ABC0008, the BegAttach and EndAttach for all three documents would be ABCOOOI - ABC0008). |
| Doc Create<br>Creation Date/Time | The Microsoft® Office generated Metadata reflecting the date and time the document was created. |
| DocModified<br>Last Saved Date/Time | The last modified date and time of the document, formatted as follows: MM/DD/YYYY h:mm:ss tt, with leading zeros as appropriate (e.g., 03/01/2006 3:42:12 PM). |
| Email Date Sent<br>Mail Sent Date/Time | The date and time the email was sent formatted as follows: MM/DD/YYYY 12-hour, with leading zeros as appropriate (e.g., 03/01/2006 3:00 PM). |
| DocType<br>Document Type | The type of document (e.g., email, Microsoft Word 2000, Microsoft Excel, etc.). |
| Document Title<br>Subject or Filename | The filename; the title of the document, if any; or the Subject line of an email. |
| File Path<br>Filepath | The originating path of the file or email. |
| AuthorName<br>Author<br>Mail From | The author(s) of a document or the sender of an email. |
| To<br>Mail To | The recipient(s) of a document, if available, or the person to whom an email was directed. |

11

| | |
|---|---|
| Cc<br>Mail CC | The person(s) who received copies of a document, if available; or the person(s) who was CC'd on an email. |
| Bcc<br>Mail BCC | The person(s) who received blind copies of a document, if available; or the person(s) who was BCC'd on an email, if available. |
| All Custodians<br>Custodian | The name of the individual(s) whose electronic or hardcopy custodial file contained the document at issue. |
| File Name<br>Filename | Full file name and extension of file. |
| File Extension<br>File_Ext | File Extension of the file. |
| Importance<br>Mail Importance | For Outlook emails, "High," "Low," or "Normal." |
| Pages<br>Image_Cnt | The number of pages in a document. |
| Redacted | Yes or no indication of whether the document at issue is redacted. |
| Confidential | Confidential designation applied to document |
| MD5 Hash<br>MD5_Hash | Hash value of email, attachment or application file |
| Native Path | Path to native file on production volume |
| Text Path | Path to text file on production volume |