# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PRO-LIFE ACTION MINISTRIES, LUCY MALONEY, THOMAS WILKIN, and DEBRA BRAUN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MINNEAPOLIS, a Minnesota municipality,<br><br>Defendant. | Case No. 23-CV-00853 (ECT/DJF)<br><br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** |

Pursuant to Rule 26(b)(5)(B) and Rule 37(a) of the Federal Rules of Civil Procedure, Plaintiffs hereby ask the Court for relief from the City's tardy attempt to claw back documents it produced in discovery and then allowed to sit as part of the record in this matter for months on end. In support of their motion, Plaintiffs state the following:

## INTRODUCTION

For years, Plaintiffs Lucy Malone, Thomas Wilkin, Debra Braun, and Pro-Life Action Ministries (Plaintiffs) have taken shifts speaking to passersby in front of a Minneapolis abortion clinic. With smiles and waves, Plaintiffs invite women and men to have calm, consensual conversations on the public right of way on matters of indisputable public importance. Plaintiffs also offer

pamphlets listing dozens of free local resources that help struggling families raise and love their children.

Their freedom to share their viewpoints changed in 2022, when the City of Minneapolis passed an ordinance, known as Chapter 405, prohibiting Plaintiffs from standing on a section of the public sidewalk intersecting the clinic driveway.

In the course of this litigation, Plaintiffs have attempted to discover why the City passed this new ordinance which targeted their protected pro-life speech so soon after the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 12 (2022). Indeed, after the City lost its Motion to Dismiss, it became the City's burden to justify its own ordinance. But when Plaintiffs approached the true story of how the ordinance came to be enacted, the City asserted new privilege claims to hide it. By doing so, the City reveals that it failed all along to protect documents and preserve claims of privilege. Moreover, the City's conduct demonstrates it intends to selectively waive privilege on certain documents it thinks help meet its burden, while preventing Plaintiffs from probing those documents' full context.

These improper selective privilege claims and disclosures subvert the truth-seeking process. The Court should grant Plaintiffs' motion and compel the City to return documents it waited months to purportedly claw back; order

the City to produce all documents wherein a City attorney conversed with, or was included in a conversation with, a third party about the subject ordinance (or any of its predecessor iterations); and direct the City to produce all documents on the subject matters on which the City attempted to selectively waive privilege.

## BACKGROUND

In June 2024, Plaintiffs sent multiple letters to the City identifying many documents that appeared to include communications between the City attorneys and employees of non-party Planned Parenthood. When the City refused to produce these communications, Plaintiffs requested the Court's assistance through its Informal Dispute Resolution ("IDR") process. The IDR hearing, which was held on July 11, 2024, established that the City waived privilege when one of its attorneys consented to disclosures to third parties, either by personally sharing privileged material, or being included on communications where non-attorney staff shared privileged material.

After the IDR, the City continued to permit Plaintiffs to possess many documents in which City staff disclosed City attorney advice to third parties, allegedly without City attorney knowledge at the time of the disclosure. And the City did so until its abrupt change of position on August 16, 2024—***more than a month*** after IDR—when it first claimed privilege as to items it had

never before asserted were privileged. In fact, the City waited to assert privilege for many months after it produced the documents, during which time it allowed Plaintiffs to possess those documents before suddenly reversing course. For example, the City provided its first production in February 2024, but failed to assert any privilege as to certain of those documents until August 16.

The City produced all of these documents after it lost its Motion to Dismiss and thus needed to supply evidence to support its claim that Chapter 405 is constitutional. For roughly six months, these clawed back documents stood as part of that body of record evidence in this matter. But just two weeks prior to Plaintiffs' first deposition—and after the City had completed all of its depositions of Plaintiffs—the City first made new privilege claims, presumably when it realized that the disclosed documents did not help its case. The City then asserted a claw back as part of a strategic shift in its defense, even to the point of clawing back documents in the middle of the deposition of former Council Member Lisa Goodman, the chief Sponsor of the subject ordinance. The fact that the City delayed answering Plaintiffs' contention interrogatories until August 23—*after* its newly minted privilege claims—further indicates that the City's change in defense strategy drove its privilege assertion strategy. The disclosures, however, were deliberate when made, and any privilege was

knowingly waived. The belated attempt to claw back was based on a calculated shift in the City's defense strategy and was therefore improper.

Plaintiffs understand that the City now claims that it produced at least some of these documents inadvertently, due to an alleged error by its discovery vendor. While it is hard to understand how a discovery vendor could make such a mistake, since the discovery vendor's entire business depends on its ability to comprehensively and accurately identify potentially responsive documents for attorney and client review. , This Court should reject the attempt by the City's attorney to belatedly blame the purported erroneous production on its discovery vendor. It is the responsibility of the City and its counsel to supervise and review any outside vendor's work—even more so here, where Plaintiffs provided multiple notices that would have indicated to the City it had produced communications that might be subject to claims of privilege. In fact, even if it were permissible for the City's attorneys to shift their responsibility for document review and production to a discovery vendor, that would still not address the fact that the City was on full notice of any purported issues as of May 10, when Plaintiffs flagged for the City that it had duplicated Bates numbers in its second and third productions, along with reproducing documents in redacted form that had already been produced in unredacted form. The City was forced to provide a replacement production as a result. This

claimed continued oversight in producing as part of the second production documents as to which the City purportedly intended to assert privilege was particularly egregious because the second production included fewer than 100 documents.

Accordingly, in the revised privilege log dated August 16, 2024, the City improperly reproduced 16 documents with additional or new redactions and replaced eight more documents with placeholders.

The City also attempted to claw back nine documents produced by non-party Planned Parenthood. But, the City's own updated production on August 16, 2024, reproduced the City's copies of the Planned Parenthood documents with redactions, rather than placeholders. For instance, the City claims it can claw back PPNCS0000448. This document aligns with MPLS000403, which the City produced for a second time on August 26. Clearly, the City's effort to claw back the Planned Parenthood document is inconsistent with its decision to produce the same email chain. The City's broad claw back demand is improper, because the City is seeking to withhold obviously unprivileged documents and information.

## ARGUMENT

    **I. The City waived its claims of privilege by failing to protect against the disclosure of purportedly privileged documents.**

"The party asserting the attorney-client privilege bears the burden of providing a factual basis for its assertions." *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 528 (D. Minn. 2002). The City cannot meet this burden in view of its previous handling of these documents.

Courts in this circuit use a five-factor test to determine whether a claimed inadvertent disclosure constitutes a waiver. These factors are: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in light of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to remedy the problem, and (5) whether justice is served by relieving the party of its error. *Starway v. Indep. Sch. Dist. No. 625*, 187 F.R.D. 595, 597 (D. Minn. 1999) (citing *Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir. 1996)). Analysis of each factor shows that the City waived its newfound privilege claims it asserted for the first time, on August 16, 2024, long after the documents had been produced.

Regarding the first factor, reasonable steps to prevent disclosure may include "conducting a key-word search and pulling those communications that contained [the attorney] as a sender or recipient for further privilege review." *U.S. S.E.C. v. Welliver*, Case No. 11-CV-3076 RHK/SER, 2012 WL 8015672, at *6 (D. Minn. Oct. 26, 2012). This precaution was reasonable in *Welliver,* even

though the party had just six days to produce its documents. *Id.* Here, of the documents the City now seeks to claw back, 11 involve Assistant City Attorney Amy Schutt either as a document author or a party to an email. The City could have readily identified these through a simple search for Ms. Schutt's name. Moreover, the City had over three months to perform this search, between receipt of Plaintiffs' initial request and the City's response.

As for the number and extent of the disclosures, "[w]here a small number of privileged documents are disclosed in a large batch . . . privilege may still be waived where the screening procedures were unreasonable." *Id.* at *7. It was unreasonable for the City to overlook documents authored by Ms. Schutt, the lead lawyer drafting Chapter 405. Further, some of the documents the City now claims are privileged have been *reproduced in full.* For example, MPLS000753 is a document authored by Amy Schutt and titled "lgl_rsrch.docx". The City's revised privilege log lists this as a clawed back document. Nonetheless, the City reproduced this document in full simultaneous with the revised privilege log. Although "courts may decline to find a waiver where only a handful of privileged documents slipped through otherwise robust screening procedures" (*id.*), reproducing a document simultaneous with a claw back attempt proves either that the City did not employ a "robust screening procedure" or that it previously decided to produce

the document but now seeks to reverse its position. Moreover, these new allegedly inadvertent disclosures only add to the growing list of allegedly inadvertent disclosures that were addressed during the parties' prior IDR hearing.

Next, the City's late breaking claw back claim fails the promptness factor. As stated above, Plaintiffs provided notice of privilege waivers as early as June 14, 2024. These waivers were confirmed in part during the IDR hearing on July 11. Yet the City made **no effort** to claw anything back until August 16—over a month after the IDR hearing. Multiple courts have held that a party waives privilege by taking two months to claw back items, as the City did here. *See, e.g., Clarke v. J.P. Morgan Chase & Co.,* 2009 WL 970940, at \*\*5–7 (S.D.N.Y. Apr. 20, 2009); *Preferred Care Partners Holding Corp. v. Humana, Inc.,* 258 F.R.D. 684, 700 (S.D. Fla. 2009); *Clarke v. J.P. Morgan Chase & Co.,* Case No. 08CIV02400(CM)(DF), 2009 WL 970940, at \*6 (S.D.N.Y. Apr. 10, 2009)*; see also In re Actos Antitrust Litig.,* 703 F. Supp. 3d 468, 472 (S.D.N.Y. 2023) (failure to claw back eight days after actual notice was evidence of waiver).

Moreover, after learning of a possible error in production, the City had an obligation to recheck past productions. *United States v. Sensient Colors, Inc.,* Case No. CV 07-1275, 2009 WL 2905474, at \*5-6 (D.N.J. Sept. 9, 2009)

(holding that waiver occurred because party failed to promptly reassess its production after learning of inadvertent disclosures). Further still, Fed. R. Evid. 502 "require[s] the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently." Fed. R. Evid. 502 Advisory Committee's Note, revised 11/28/2007, subsection (b). The City failed in this obligation as well. As the foregoing authorities establish, the City waived privilege on these documents.

Finally, justice would not be served by relieving the City of its recently claimed error, because "[p]arties must recognize there are potentially harmful consequences if they do not take even minimal precautions to prevent against the disclosure of privileged documents." *Welliver*, 2012 WL 8015672, at *8. A key example of this is the City's purported claw back of documents provided by Planned Parenthood as privileged, and reproduction of the same communication as part of the City's own subsequent production.

The City's claw back demand is improper. The Court should order the City to return the clawed back documents.

> **II. The City waived privilege on entire subject matters because it chose to produce some attorney-client communications while withholding similar communications on the same topic.**

This Court recently considered subject matter waiver of privilege in *NimbeLink Corp. v. Digi Int'l Inc.*, Case No. 22-cv-2345 (NEB/DJF), 2024 WL 1599941 (D. Minn. Apr. 12, 2024). There, this Court observed:

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005). "The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." *Id.* (citing *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). Rule 502(a) of the Federal Rules of Evidence provides:
>
>> When the disclosure is made in a Federal proceeding or to a Federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a Federal or State proceeding only if:
>> (1) the waiver is intentional;
>> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>> (3) they ought in fairness to be considered together.

In the present case, the City's reaction to the Court's IDR ruling provides insights into how the City identified privileged material and asserted that privilege prior to IDR.

For instance, the City's second privilege log rescinded privilege claims on 32 documents, 23 of which had previously been produced only as placeholders.

11

MPLS000593 is one of these documents. Plaintiffs now know that document records Zach Shultz (policy aide to Council Member Goodman, who sponsored the Ordinance at issue) asking Tim Stanley of Planned Parenthood a question on behalf of Assistant City Attorney Amy Schutt. The City, through its attorneys, therefore, knew that attorney communications were being transmitted to third parties. This was true at least as of its second production in about April 2024, which included MPLS000593.

The City also produced many communications between City attorneys and third parties with no redactions—in contrast to the privilege claim on MPLS000593. The justification for claiming privilege on MPLS000593 equally applies to these communications, and yet the City chose to produce them. Moreover, these communications were easy for City attorneys to identify because the email headers quickly reveal that the communication was between a City attorney and third party. These documents include, but are not limited to:

| Bates No. | Details |
|---|---|
| MPLS000042 | Meeting with abortion rights group on 10/12 |
| MPLS000047 | Abortion rights group introduction |
| MPLS000048 | Planned Parenthood offers videos after City attorney suggests contacting abortion rights group |
| MPLS000049 | Councilmember stating that photos were sufficient already |
| MPLS000068 | Councilmember objecting to more experts |
| MPLS000074 | Planned Parenthood and City Attorney discuss irrelevance of evidence, failure to try alternatives |
| MPLS000085 | Conversation between Planned Parenthood and City Attorney on January 27, 2023 about enforcement |

| | |
|---|---|
| MPLS000096 | Planned Parenthood reuploads documents for City attorney |
| MPLS000099 | City attorney tells Planned Parenthood an assault was not relevant |
| MPLS000154 | Councilmember and Planned Parenthood discuss a free speech preamble |
| MPLS000187 | City attorney and Planned Parenthood talk about the motion to dismiss filed in this lawsuit. |
| MPLS000473 | Meeting on November 1, 2022 |
| MPLS000577 | City attorney asks Planned Parenthood for proof that blocking is an ongoing issue |

The City produced these documents intentionally and did not claw them back.

Further, the City's decision to waive privilege on these items allows it to use them throughout the rest of this case. However, the City's privilege log indicates the City seeks to withhold documents on similar topics. The City cannot selectively disclose those documents it wants to use while keeping those documents it wants to continue to shield from the truth-seeking process through the assertion of its privilege claims. For example, the City has produced *some* draft versions of the challenged ordinance, but maintains its privilege claim over roughly twenty documents with filenames indicating that they, too, are drafts of the ordinance.

Therefore, the City has waived privilege not just on the documents it has disclosed, but also as to all other documents or testimony on the same topics as those documents. These topics specifically include the following:

- The evidence and sufficiency of the evidence showing a need for the ordinance, and consideration by the City of alternative measures (including consideration of ordinances in other jurisdictions);

- The ordinance's perceived effects on both conduct and speech (particularly, the conduct and speech of the Plaintiffs);
- Drafting decisions made by the City regarding the language of the ordinance;
- Communications among City personnel regarding the enforceability and/or legality of the Ordinance; and
- As to the motion to dismiss, litigation strategy, to the extent discussed with Planned Parenthood or other non-City personnel.

The City cannot pick and choose which documents on a topic it will use as a sword to attack Plaintiffs' claims "while withholding similar communications that are less helpful to its defense." *NimbeLink Corp.*, 2024 WL 1599941, at *4. The City must produce any document in its possession on the aforementioned topics and must permit inquiries regarding them at depositions.

### III. Plaintiffs are entitled to fees and costs.

If the Court grants Plaintiffs' motion, Plaintiffs are entitled to their "reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. Pro. 37(a)(5). Fees are also warranted "if the disclosure or requested discovery is provided after the motion was filed." *Id.* The Court "must . . . require" such payment, unless (1) the movant filed the motion before attempting in good faith to obtain discovery without court action, (2) the opposing party's nondisclosure, response, or objection was substantially

justified, or (3) other circumstances exist that make an award of expenses unjust.

None of these exceptions apply here. First, Plaintiffs made multiple good faith efforts to obtain discovery prior to this motion by detailing for the City specific documents showing waiver and meeting with its attorneys, even without a written response from the City. Second, there is no meritorious justification for failing to review discovery before sending it to opposing counsel, or for gamesmanship designed to use privilege as both a sword and a shield. Finally, there are no other circumstances that would make an award of expenses unjust.

## CONCLUSION

For the reasons set forth herein, the Court should grant Plaintiffs' Motion to Compel.

Respectfully submitted, this 12th day of November, 2024.

/s/Nathan Loyd
Peter Breen†
Joan Mannix†
B. Tyler Brooks†
Nathan Loyd†
THOMAS MORE SOCIETY
309 W. Washington Street
Suite 1250
Chicago, IL 60606
Telephone: (312) 782-1680
Fax: (336) 900-6535
pbreen@thomasmoresociety.org

jmannix@thomasmoresociety.org
tbrooks@thomasmoresociety.org
nloyd@thomasmoresociety.org

† admitted *pro hac vice*

Erick G Kaardal
Elizabeth A. Nielson
MOHRMAN, KAARDAL & ERICKSON, P.A.
150 South Fifth Street
Suite 3100
Minneapolis, MN 55402
Telephone: (612) 465-0927
Fax: 612-341-1076
kaardal@mklaw.com
nielson@mklaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, I served a copy of the foregoing document upon the following counsel of record via email:

Adam Szymanski
Tracey N. Fussy
Munazza Humayun
Sara J. Lathrop
City of Minneapolis – City Attorney's Office
105 Fifth Avenue S., Ste. 200
Minneapolis, MN 55401

*Attorneys for Defendant*

Dated: November 12, 2024          /s/Nathan Loyd
                                  B. Tyler Brooks
                                  THOMAS MORE SOCIETY
                                  309 W. Washington St.
                                  Suite 1250
                                  Chicago, IL 60606
                                  Telephone: (336) 707-8855
                                  Fax: (336) 900-6535