UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries,<br>Lucy Maloney, Thomas Wilkin,<br>and Debra Braun,<br><br>   Plaintiffs,<br><br>vs.<br><br>City of Minneapolis,<br>a Minnesota municipality,<br><br>   Defendant. | Ct. File No.: 23-CV-853 (ECT/DJF)<br><br>**DEFENDANT'S MEMORANDUM<br>OPPOSING PLAINTIFFS'<br>MOTION TO COMPEL** |

Defendant City of Minneapolis respectfully submits this memorandum of law in opposition to Plaintiffs' motion to compel (Doc. 82). The Court should deny all of the relief requested.

Plaintiffs first argue that the City waived its claim of privilege by failing to protect against the disclosure of purportedly privileged documents. The City did inadvertently disclose documents containing privileged information or protected attorney work product. However, this issue is wholly governed by the Protective Order in this case, which states that if a party discovers that it has inadvertently disclosed or produced a protected document, and it promptly notifies the receiving party of the inadvertent disclosure and the basis of the claim of protection, no

1

privilege is waived. Because the City promptly notified Plaintiffs of the inadvertent disclosure and described the basis of the protection, there was no waiver.

Second, Plaintiffs argue that they are entitled to virtually every document containing the City's privileged communications and attorney work product on disputed issues in this case, asserting that the City intentionally waived privilege, resulting in a subject-matter waiver. However, the supposed "intentional waiver" described by Plaintiffs contains no privileged or protected information. Therefore there was no intentional waiver of privilege, and therefore there was no subject-matter waiver.

Third, Plaintiffs argue they are entitled to fees and costs associated with this motion. Because the motion should be denied, no fees or costs should be awarded. Even if the Court were to grant the motion, Plaintiffs have provided no information about the nature of the fees and costs sought or why they are reasonable. The request for fees and costs should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

A.   <u>Parties' agreement and Court Order regarding inadvertent disclosure.</u>

Early in this case, the parties agreed how they would handle inadvertent disclosure or production of a document protected by a privilege or the work-product doctrine. In a Stipulation for a Protective Order, Plaintiffs and Defendant agreed that the following process would govern when a party inadvertently

disclosed such a "protected document," defined as "a document protected by a privilege or the work-product doctrine":

> 9. Inadvertent Disclosure or Production to a Party of a Protected Document.
>
>   a. Notice.
>
>   > 1. A party or non-party who discovers that it has inadvertently disclosed or produced a protected document must promptly notify the receiving party and describe the basis of the claim of privilege or protection. If the party or non-party provides such notice and description, the privilege or protection is not waived.
>   >
>   > 2. A party who discovers that it may have received an inadvertently disclosed or produced protected document must promptly notify the disclosing or producing party or non-party.
>
>   b. Handling of Protected Document. A party who is notified or discovers that it may have received a protected document must comply with Fed. R. Civ. P. 26(b)(5)(B).

See Doc. 44 (Stipulation for Protective Order) at p. 9. Pursuant to the parties' stipulation, the Court entered a Protective Order with the same terms regarding inadvertent disclosures of a protected document. See Doc. 46 at p. 7.

B.     Informal Dispute Resolution

On July 11, 2024, the parties participated in informal dispute resolution with the Court, relating to a variety of discovery disputes. On the issue of whether a non-attorney City employee's disclosure of privileged information to Planned Parenthood amounted to a waiver of privilege, the Court stated that it would give the parties principles to apply. The Court instructed the parties that the employee's

3

disclosure of privileged information to Planned Parenthood was not a waiver unless a document showed that the entire City Council knew about the disclosures, or one of the City's attorneys knew that it was being disclosed and did not act, "then we have a different question that would likely affect waiver."[1] Lathrop Decl., ¶ 3. The Court instructed the attorneys on both sides to review the privilege log in detail to make sure that those issues did not occur. *Id.*

C.  City's re-review, notice of inadvertent disclosure, and reproduction.

After the Court issued its instructions at the IDR hearing, the City's attorneys undertook to carefully re-review every document that appeared on the City's privilege log, pursuant to the Court's instructions. Lathrop Decl., ¶ 4. The privilege log was extensive, spanning 11 pages and 200 rows. See Doc. 85-1.

The City uses a platform called Everlaw to manage its e-discovery needs. Sposeto Decl., ¶ 2. Everlaw is a cloud-based service through which the City's attorneys can categorize, review, code, and redact documents for use in litigation. *Id*. The City took reasonable steps to prevent disclosure of privileged information,

---

[1] Plaintiffs assert that during the IDR hearing, the Court ruled that "the City waived privilege when one of its attorneys consented to disclosures to third parties, either by personally sharing privileged material, or being included on communications where non-attorney staff shared privileged material." Doc. 84 at 3. This assertion does not reflect what Defendant's attorneys heard during the Court's IDR rulings. The Court did not at any point rule that the City had waived any privilege. And in particular, the Court made no statements regarding Defendant's attorneys "personally sharing privileged material." See Lathrop Decl. at n. 1.

4

because its attorneys reviewed every document, and coded protected documents as privileged in a e-discovery review program, and produced a privilege log to detail the nature of the documents, the protection claimed, and the bates number, among other information. See Humayun Decl., ¶ 3; Doc. 85-1 (privilege log). When the City's attorneys used Everlaw to code many documents as "Privileged-Fully Withhold," it should have resulted in a placeholder being produced, instead of the document marked privileged itself. Sposeto Decl., ¶ 3.

During the re-review of documents following the IDR hearing, the City discovered that several documents that had been coded by the City's attorneys as containing privileged communications or confidential attorney work product had been coded as "Privileged-Fully Withhold," and appeared on the City's privilege log as being privileged and fully withheld, had nevertheless been produced without redaction to Plaintiffs' attorneys. Lathrop Decl., ¶ 5. The City's attorneys consulted with the City Attorney's Office non-attorney staff that handles production of documents from Everlaw to try to determine how the privileged documents that had been coded by attorneys as "fully withhold" had been nevertheless produced. Lathrop Decl., ¶ 5.

Ultimately, it was determined that a non-attorney City Attorney's Office employee who is responsible for using Everlaw to run e-discovery document productions in litigation matters, ran the e-discovery document production

through Everlaw with a protocol that resulted in the production of some of the documents that the attorneys had coded "Privileged-Fully Withhold" such that the documents meant to be withheld and replaced with a placeholder, were instead produced in full to the Plaintiffs in this case instead of a placeholder indicating the document was being withheld for privilege. Sposeto Decl., ¶ 5.

The re-review was also time-consuming and laborious because many documents contained a mixture of privileged and non-privileged information. The City also searched for additional documents with similar language or related email chains during this process. In addition, in accordance with the Court's principles, and in light of Plaintiffs' complaints that the City had over-designated documents as being privileged, the City reconsidered its earlier designations of privilege and, in some cases, reduced the amount of information that was redacted or withheld as privileged. Lathrop Decl., ¶ 6.

After the documents had been re-reviewed to determine which protected documents should be clawed back as having been inadvertently produced by the City, or produced by Planned Parenthood, and after addressing the technical problems, on August 16, 2024, the City promptly served on Plaintiffs' counsel a letter and a spreadsheet notifying them of the inadvertent disclosure and clawing back documents produced by the City or third-party Planned Parenthood, that

contained protected information. Lathrop Decl., ¶ 7; Ex. 1 (letter); Doc. 85-2 (spreadsheet).

The letter and spreadsheet Defendant sent Plaintiffs identified the documents that had been inadvertently disclosed by bates number, described the basis for the claimed protection, described the type of document, the date of the document, the recipients, the file name, and a description of whether the document was being clawed back and reproduced with new or additional redactions, or clawed back and replaced with a placeholder. Lathrop Decl., ¶ 8; see also Doc. 85-2 (claw-back spreadsheet).

Later, pursuant to the attorneys' direction regarding the clawing back of privileged documents, the non-attorney staff member modified three production volumes (01, 02 and 04) to provide replacement documents to the parties in this case, including placeholders for documents that had been inadvertently produced as described above. However, unfortunately the City Attorney's Office litigation technology manager later determined that it appears that the staff member failed to correct the production protocol and at least three of the documents that the attorneys directed to be clawed back in the July subsequent production, and replaced with a placeholder, was nevertheless produced again in full. Sposeto Decl., ¶ 6. Compare Doc. 85-1 at p. 5 (privilege log notifying Plaintiffs that MPLS000753 was withheld as work product); Doc. 85-2 at p. 2

(privilege revision spreadsheet notifying Plaintiffs that MPLS000753 was clawed back as work product and replaced with placeholder); and Doc. 85-3 at p. 49-51 (copy of MPLS000753 reproduced on August 16, inadvertently produced in full and not replaced with a placeholder). However, it is clear that the disclosure was inadvertent, as the document was listed as protected and withheld on both the privilege log (Doc. 85-1 at p. 5), and the spreadsheet detailing claw-backs (Doc. 85-2 at p. 2.)  Importantly, Plaintiffs were always on notice that the documents at issue here were privileged. Out of an abundance of caution, on November 14, 2024, the City again reminded Plaintiffs of their obligations under the Protective Order with regard to inadvertently disclosed documents. Lathrop Decl., ¶ 12.

During the re-review of documents, and in light of Plaintiff's complaints that the City had over-designated documents as privileged, the City also reviewed all documents to determine if it could re-produce documents with fewer redactions. Lathrop Decl., ¶ 9. The spreadsheet also notified Plaintiffs that certain documents were being reproduced with fewer redactions or in full. Lathrop Decl., ¶ 9.

Together with the letter and spreadsheet, the City sent Plaintiffs a link to a set of produced documents that replaced earlier versions of the documents described in the spreadsheet. Lathrop Decl., ¶ 10.

During the same time that Defendant's attorneys were carefully re-reviewing the documents in this case, Defendant's attorneys were responsible for

8

handling many other difficult and time-consuming tasks in other matters, including drafting a summary judgment motion, arguing a summary judgment motion in a different case, drafting a reply brief in another case, opposing a summary judgment motion in another case, drafting a motion in another case, among many other tasks. Lathrop Decl., ¶ 3.

## ARGUMENT

I. **Because the City promptly notified Plaintiffs that it had inadvertently disclosed protected documents, the protective order dictates that there was no waiver.**

    A.    <u>The Rule 502(d) Protective Order controls, and dictates that there was no waiver here.</u>

Federal Rule of Evidence 502 is entitled "Attorney-Client Privilege and Work Product Limitation on Waiver." Rule 502 "is designed to enable a court to enter an order ... that will allow the parties to conduct and respond to discovery expeditiously, without the need for exhaustive pre-production privilege reviews, while still preserving each party's right to assert the privilege to preclude use in litigation of information disclosed in such discovery." Statement of Congressional Intent Regarding Rule 502 of the Federal Rules of Evidence, 154 Cong. Rec. H. 7817 (2008), reprinted in Fed. R. Evid. 502 Advisory Committee Notes subdivision (d).

Rule 502 has several provisions that relate to intentional and inadvertent disclosure of protected information, but most pertinent here, Rule 502(d) is entitled "Controlling Effect of Court Order." It provides:

9

>   (d) Controlling Effect of a Court Order. A federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding.

Rule 502(d) means that if there is a protective order issued in the case that addresses privilege disclosure, that order controls. If there is no 502(d) order dealing with the disclosure of privileged information entered in the case, Rule 502(b) establishes a multi-factor, case-by-case approach to determine whether inadvertent disclosure results in a waiver. Rule 502(d), by contrast, provides a way to avoid the time-consuming and costly "side-show" relating to the 502(b) factors, because the protective order controls. § 2:29. Inadvertent disclosure, 1 Testimonial Privileges § 2:29 (3d ed.). See also § 1:94. Inadvertent disclosure, 1 Testimonial Privileges § 1:94 (3d ed.) ("If there is no FRE 502(d) order or FRE 502(e) agreement governing the effect of inadvertent disclosures, FRE 502(b) establishes the … fact-intensive, case-by-case approach as the federal standard for determining when inadvertent production in a federal proceeding or to a federal office or agency will result in waiver). Rule 502(d) was meant to allow courts to fashion orders that preclude waiver of the privilege and forgo the analysis under Rule 502(b) as to waiver when dealing with inadvertent disclosures that can occur with reviews of large amounts of electronic discovery in order to expedite discovery. *Sleep No. Corp. v. Young*, No. 20-CV-1507 (NEB/ECW), 2021 WL 5644322, at *18 (D. Minn. Dec. 1, 2021), citing Rule 502, adv. committee notes, subd. d (Nov. 28, 2007) ("For example,

the court order may provide for return of documents without **waiver irrespective of the care** taken by the disclosing party; the rule contemplates enforcement of 'claw-back' and 'quick peek' arrangements as a way to avoid the excessive costs of pre-production review for privilege and work product.") (emphasis in cited case).

There is a Rule 502(d) order in this case. It provides: "[a] party or non-party who discovers that it has inadvertently disclosed or produced a protected document must promptly notify the receiving party and describe the basis of the claim of privilege or protection. If the party or non-party provides such notice and description, **the privilege or protection is not waived**." Doc. 46 at p. 7 (emphasis added).

Upon discovery (made during the re-review process after IDR), the City promptly notified Plaintiffs that it had inadvertently produced protected documents, and provided the basis of that claim, via a letter and a detailed spreadsheet. Simply put, the Protective Order in this case controls and means that the privilege or protection was not waived by this inadvertent disclosure.

Plaintiffs' motion does not address the effect of Rule 502(d). Instead, Plaintiffs argue that the City's claw-back was not effective because it occurred many months after the documents had been produced. Plaintiffs argue that they notified the City that it had waived privilege on June 14, 2024, and in the IDR hearing. But the June 14, 2024, letter and the IDR hearing were about whether the

11

communications shared with Planned Parenthood amounted to a waiver -- not whether the City had inadvertently disclosed other privileged information. The City was not on notice until it discovered the inadvertent disclosure during the post-IDR re-review of documents. The City's notification of the inadvertent disclosure was made promptly after the discovery of the inadvertent disclosure, which is the triggering event. But even if the IDR hearing was the re-start of the period, the one-month period still qualifies as prompt. *See Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590(DAB)(JCF), 1997 WL 736726, at *6 (S.D.N.Y. Nov. 26, 1997) (even where party inadvertently produced privileged documents to adverse party, there was no inordinate delay in taking approximately one month to seek return since a comprehensive review of an extensive document production was required).

    Plaintiffs seem to be arguing the factors from Rule 502(b), but those do not apply if there is a 502(d) order in place. Instead, the only applicable standard is from the Protective Order, which requires prompt notice after *discovery*, not a claw back within a certain number of days after production. As noted above, the City's attorneys did code the documents as privileged, and the issue was related to a faulty production protocol in the City's e-discovery platform. The City's attorneys discovered the inadvertent disclosure much later. Upon discovery, they promptly notified Plaintiffs, and thus, under the Protective Order, there was no waiver.

Plaintiffs argue that "after learning of a possible error in production, the City had an obligation to recheck past productions." Doc. 84 at 9. This is precisely what the City did. The City undertook a careful re-review of its produced documents pursuant to the Court's IDR instruction, and when during that process it discovered there had been an issue in its production process, it carefully re-reviewed its productions to determine how the issue occurred and to do a thorough claw-back of the inadvertently disclosed documents.

B.  Even if Rule 502(b) applied, there was no waiver.

Finally, even if Rule 502(b) did apply, the City's inadvertent disclosure did not operate as a waiver. Under that rule, there is no waiver if (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B). See Rule 502(b). Generally, inadvertent production will not waive the privilege unless the conduct of the producing party or its counsel was so careless as to suggest that it was not concerned with the protection of the asserted privilege. *Aramony v. United Way of Am.*, 969 F. Supp. 226, 235 (S.D.N.Y. 1997).

Here, it is not disputed that the disclosure was inadvertent. The City took reasonable steps to prevent disclosure, because it coded the documents as privileged in a e-discovery review program and produced a privilege log to

Plaintiffs where it was extremely clear that the documents were privileged. See Humayun Decl. The disclosure was not due to failures of attorneys, but instead related to a non-attorney's mistake in an e-discovery production protocol. Upon discovery of the inadvertent disclosure, the City worked to determine how the error occurred, re-reviewed its document productions to make an effective and thorough claw-back, and promptly clearly communicated the nature of the claw-back in a detailed letter, spreadsheet, and re-production. It was extremely clear from the privilege log and the claw-back spreadsheet that the subject documents were protected. To the extent that the other factors raised by Plaintiffs are relevant in a 502(b) analysis, justice would not be served by permitting Plaintiffs to use the City's privileged communications and work product. They obtained the documents only due to inadvertent technological mistake of a non-attorney staff member, the documents were always identified as protected in the City's privilege log and claw-back spreadsheet, and it simply would not be fair for Plaintiffs to use them in this litigation.

For these reasons, under Rule 502(b), there was no waiver of privilege or the work product doctrine protection.

## II.    The City did not intentionally waive privilege resulting in subject-matter waiver.

Plaintiffs also argue that the City waived privilege on entire subject matters because it chose to produce some attorney-client communications while

withholding similar communications on the same topic. Doc. 84 at p. 10. Plaintiffs argue that the supposed intentional disclosure entitles them to enormous amounts of protected information on the following subject matters:

- Consideration of alternative measures, including consideration of ordinances in other jurisdictions, and the potential effects thereof;
- The ordinance's effect on both conduct and speech;
- Drafting decisions regarding the language of the ordinance;
- Communications regarding the enforceability and/or legality of the ordinance; and
- Material discussed with non-party Planned Parenthood in preparation for the Defendant's response to Plaintiffs' motion to dismiss.

See Doc. 88 (proposed order) at pp. 1-2. This would touch virtually every aspect of the ultimate issues in this case regarding the constitutionality of the Ordinance. *See* Doc. 35 at *e.g.* p. 10 (Order in this case denying motion for judgment on the pleadings, analyzing First Amendment claim and discussing whether ordinance is narrowly tailored, burdens substantially more speech than is necessary to further the government's legitimate interests, and what alternative measures were considered).

The attorney-client privilege is sacred and vital to the administration of justice; courts must exercise great caution in finding a subject-matter waiver of that privilege. *U.S. S.E.C. v. Welliver*, No. 11-CV-3076 RHK/SER, 2012 WL 8015672, at *5 (D. Minn. Oct. 26, 2012). And attorney "opinion work product enjoys a very nearly absolute immunity and can be discovered only in very rare and extraordinary

15

circumstances." *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988).

In addition, "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." See Advisory Comm. Notes, Fed.R.Evid. 502(a).

Plaintiff seems to be arguing that because the City produced documents containing communications between City attorneys and third parties without redactions, it intentionally waived privilege. In support, Plaintiffs submitted under sealed Doc. 85-7 and several documents filed as Doc. 85-8. Both contain some documents with some redactions and some portions of unredacted information. See also Plaintiffs' chart in their memo (Doc. 84) at pp. 12-13.

Put simply, there does not appear to be any unredacted information in the documents attached as 85-7 and 85-8 that could be fairly characterized as intentionally disclosed information protected by the attorney-client privilege or the attorney work product doctrine. As Plaintiffs note, these are communications between City employees and Planned Parenthood. There are protected portions in those documents, but those portions are redacted. The document attached as 85-8 contains an email to Planned Parenthood in which a non-attorney City employee discusses earlier communications he had with Assistant City Attorney Amy Schutt, but Ms. Schutt is copied on that email. Consistent with the Court's IDR ruling, the

16


City did not consider that document privileged. The document attached as 85-7 contains an email communication between Ms. Schutt and a City employee, which the employee then forwarded to Planned Parenthood without including Ms. Schutt in that forwarded email. The City appropriately asserted privilege on the initial communication.

Because there is nothing in these documents that amounts to an intentional disclosure of protected information, it is puzzling that Plaintiffs argue that the disclosure of these documents is an intentional waiver of the attorney-client privilege or the work product doctrine protection.

Under Fed. R. Evid. 502(a) when a party intentionally waives the attorney-client privilege or work-product protection as to one document, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if the disclosed and undisclosed communications or information concern the same subject matter, and they ought in fairness be considered together. As noted above, the "ought in fairness be considered together" applies only to intentional waiver where a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.

Here, there was no intentional waiver of the attorney-client privilege or work-product protection. None of the documents attached as Doc. 85-7 and 85-8

amount to an intentional disclosure of the attorney-client privilege or work-product protection. And therefore there was no subject matter disclosure.

Additionally, even if one of the documents attached as Doc. 85-7 or 85-8 amounted to an intentional disclosure of the attorney-client privilege, Plaintiffs cannot establish that any other communications ought in fairness be considered together. See Rule 502(a)(3).

Certainly, even if the Court determined that some subject-matter waiver was fair, it would not extend to all of the communications and documents that Plaintiffs request. Even in the unusual application of Rule 502(a) regarding intentional waiver, the concept of "subject matter" is interpreted very narrowly. *See, e.g., Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 992 (D. Minn. 2011), aff'd, 872 F. Supp. 2d 851 (D. Minn. 2012), quoting *United States v. Skeddle*, 989 F.Supp. 905, 909 n. 2 (N.D.Ohio 1997) ("Realizing that fairness is at the heart of the waiver issue, courts have generally held that the 'same subject matter' is to be viewed narrowly.").

In sum, Plaintiffs have not satisfied any part of Rule 502(a). There has not been an intentional waiver of protected information. There are not withheld documents on the same subject matter as the supposedly intentionally waived privilege. And there are no documents that in fairness should be considered together because the City disclosed information in a tactical and misleading way.

18

### III.  Plaintiffs are not entitled to fees and costs.

Finally, Plaintiffs claim they are entitled to fees and costs associated with bringing this motion.

First, they are not so entitled because the motion should be denied in its entirety, as set forth above.

Second, to the extent that the Court concludes that the motion should be granted, fees and costs should not be ordered if "the opposing party's nondisclosure, response, or objection was substantially justified; or" if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). For all the reasons set forth above and in the declarations filed by the City, the City's document production, privilege log, and claw back have all been substantially justified and the circumstances here make an award of expenses unjust. The City diligently reviewed and re-reviewed documents for privilege and carefully applied the Court's ruling from the IDR hearing.

Third, even if the motion had merit, Plaintiffs did not submit any evidence about the nature of their costs and fees, or why they are reasonable under Fed. R. Civ. P. 37, and therefore there is no basis for the Court to award them.

19

CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' motion to compel in all respects.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | KRISTYN ANDERSON<br>City Attorney |
| Date: November 19, 2024 | By *s/ Sara J. Lathrop*<br>SARA J. LATHROP (# 0310232)<br>TRACEY N. FUSSY (# 0311807)<br>MUNAZZA HUMAYUN (# 0390788)<br>ADAM E. SZYMANSKI (#0397704)<br>Assistant City Attorneys<br>Minneapolis City Attorney's Office<br>City Hall, Room 210<br>350 South Fifth Street<br>Minneapolis, MN 55415<br>sara.lathrop@minneapolismn.gov<br>tracey.fussy@minneapolismn.gov<br>munazza.humayun@minneapolismn.gov<br>adam.szymanski@minneapolismn.gov<br><br>*Attorneys for Defendant*<br>*City of Minneapolis* |