# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PRO-LIFE ACTION MINISTRIES, LUCY MALONEY, THOMAS WILKIN, and DEBRA BRAUN, | Case No. 23-CV-00853 (ECT/DJF) |
| Plaintiffs, | |
| v. | **DECLARATION OF ERICK KAARDAL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |
| CITY OF MINNEAPOLIS, a Minnesota municipality, | |
| Defendant. | |

I, Erick G. Kaardal, make the following declaration pursuant to 28 U.S.C. § 1746:

1. This Declaration sets forth the facts supporting Plaintiffs' Motion for Attorney Fees and Expenses. I have knowledge of the facts supporting this application for fees and expenses.

2. I am shareholder of Mohrman, Kaardal & Erickson, P.A. (MKE), a law firm located in downtown Minneapolis, Minnesota, with eight full-time attorneys.

3. MKE's practice focuses on representing small, medium, and large business interests as well as individuals with legal needs. In addition, MKE

handles complex constitutional civil rights litigation as well as complex appellate work. Attached as Exhibit A to this declaration is a listing of significant trial and appellate cases attorneys in our firm have handled.

4.I have been engaged in the private practice of law in the Minneapolis market since 1992. I attended Harvard College on a U.S. Army Reserve Officer Training Corps scholarship. I graduated from Harvard College in 1988 with *magna cum laude* honors in economics. At the same time, I was commissioned as a Second Lieutenant in the U.S. Army Reserves. I enrolled at the University of Chicago Law School while fulfilling my commitments in the U.S. Army Reserve. I graduated from the University of Chicago Law School in 1992.

5.I began my legal career at Faegre & Benson LLP in Minneapolis in 1992 as an associate attorney. I went on to work at Trimble & Associates in the Minneapolis area as an associate attorney. Trimble & Associates was at that time involved in representing political parties and public interest groups.

6.In 2000, I joined William F. Mohrman as a shareholder in forming Mohrman & Kaardal, P.A. My practice with Mohrman & Kaardal, P.A, focuses on litigation at both the trial and appellate level. While the primary focus of my practice has been on business litigation, a significant part of my practice has included representing individuals and organizations in constitutional and

2

civil rights litigation in various state and federal courts, including constitutional and statutory cases.

7. As a sample of my experience, I was the lead counsel to the Republican Party of Minnesota in *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) while at Trimble & Associates. I wrote the first Complaint in the case and crafted many of the successful legal theories. (During the pendency of the appeals, on January 1, 2000, I joined Mr. Mohrman and created our existing law firm. Mr. Mohrman at the time was representing Greg Wersal in the same case.) The U.S. Supreme Court opinion in that case was the first U.S. Supreme Court opinion applying the First Amendment's Free Speech Clause to judicial candidates.

8. I also was hired to represent the Minnesota Legislators in a case involving the titles of two proposed constitutional amendments, one to define marriage and another to require more stringent voter identification. The cases were combined, and I successfully argued the matters to the Minnesota Supreme Court. *Limmer, et al v. Ritchie, et al*, 819 N.W.2d 622 (2012).

9. Mr. Mohrman and I also represented 281 Care Committee successfully in *281 Care Comm. v. Arneson*, 766 F.3d 774, 777 (8th Cir. 2014). In that case, the Eighth Circuit for the first time struck down a ban on false political speech as being violative of the First Amendment's Free Speech Clause. The

government's petition for writ of certiorari before the U.S. Supreme Court was denied.

10. In this case, Plaintiffs, a small nonprofit and its volunteers and staff, did not have the financial resources to pay MKE for representation. The Thomas More Society (TMS) generously offered to represent them entirely *pro bono*, and TMS retained MKE on a paid, hourly basis, to serve as local counsel and assist in starting the case.

11. MKE would not have been able to join Plaintiffs' case without a guarantee of hourly payment. And I know of no other firm in Minnesota that would have taken on these Plaintiffs *pro bono*, whether because of (1) ideological differences with Plaintiffs, (2) lack of competence to engage in complex federal constitutional litigation, or (3) lack of sufficient financial backing (and commensurate breadth and depth of legal talent) to meet the burden of litigating a case like this against a well-funded and determined opponent like the City of Minneapolis.

12. Either way, there is no firm in Minnesota—or anywhere in the Midwest—that comes close to TMS in terms of experience and expertise in handling these pro-life speech cases, a unique and difficult specialty within First Amendment law. Whether or not one subscribes to the critique of the late Justice Antonin Scalia that our legal system has suffered from an "abortion

distortion," the Supreme Court itself recently observed that the High Court's abortion jurisprudence has bled over and "distorted First Amendment doctrines." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 287, 142 S. Ct. 2228, 2276 (2022). TMS is well versed in the contours of this "distortion" and how to effectively combat it in federal court litigation, against hostile government officials and entities with near-unlimited resources to spend.

13. TMS is thus distinctive, one of a handful of top public interest law firms in the nation litigating on the issue of abortion and abortion speech from a pro-life perspective. And there are few public interest firms in the country whose work rises to the level of quality of TMS. Moreover, there is no other public interest law firm in the country with more experience in representing sidewalk counselors against hostile municipal governments. To this end, while I cannot honestly say that MKE could *not* have handled this case—if the client were able to pay—our firm certainly would not have brought the same level of relevant specialized experience in sidewalk counseling speech cases as TMS did. And given that expertise, I believe that TMS litigated this matter more quickly and efficiently than MKE, or any other Minnesota firm, could have.

14. I have reviewed the cumulative hours spreadsheet assembled by the Thomas More Society (TMS) team attached to Peter Breen's Declaration

filed with Plaintiffs' Motion for Attorneys' Fees and Costs in this case. The spreadsheet presents time entries for MKE and TMS attorneys.

15. Our standard practice at MKE is that attorneys must enter their time records contemporaneously upon the conclusion of daily legal services provided.

16. The spreadsheet includes multiple time entries for Ms. Elizabeth Nielsen and Mr. John Grzybek. These time entries are identical to those reflected in my firm's time and billing software package, TimeSlips, for this matter.

17. Ms. Elizabeth Nielsen is a third-year associate attorney at my firm. I personally know her work as an attorney. MKE hired Ms. Nielsen to work at the firm in 2022 after she graduated *magna cum laude* from the University of Illinois College of Law. Mr. Mohrman and I have personally supervised her work for our firm. We agree that Ms. Nielsen's litigation work has been excellent—especially in spotting issues, framing arguments and writing briefs. Prior to law school, Ms. Nielsen attended and graduated from Southern Illinois University, *summa cum laude,* in 2014.

18. MKE also utilized the services of John Grzybek, a paralegal in our offices. Mr. Grzybek graduated from Central Connecticut State College in 1977 with a degree in political science and history. Mr. Grzybek then attended

6

Adelphi University in New York and obtained a degree in the legal assistant program in 1979. Mr. Grzybek started as paralegal with Faegre & Benson in 1979 where he worked as a paralegal from 1979 to 1986. Mr. Grzybek then obtained a law degree from Vermont Law School in South Royalton, Vermont in 1989. Mr. Grzybek moved back to Minnesota and practiced law in Minnesota from 1989 through 1993. From 1993 to 2005, Mr. Grzybek had his own business advising small businesses and non-profits. In 2005, Mr. Grzybek joined Mohrman, Kaardal & Erickson, P.A. as a paralegal and has worked as a paralegal for Mohrman, Kaardal & Erickson, P.A. continuously since 2005.

19. Based on my experience in the Minneapolis legal market in general over the years, and specifically my experience in complex federal litigation, the MKE rates presented in the Motion for Attorneys' Fees and Costs are easily in line with prevailing market rates in this region. As well, based on my experience, the TMS rates—while more than justifiable as out-of-district (Chicago) rates for complex federal litigation—are justifiable as in-district rates, commensurate with Minneapolis rates for specialists involved in complex federal litigation in their areas of expertise. For instance, these rates are certainly in line with those that would be charged by my prior law firm, Faegre & Benson LLP.

20. Starting with the rates proposed for MKE employees, I know that the rates asserted are reasonable because they accord with rates judges in the District of Minnesota and Eighth Circuit have previously awarded.

21. Consider *Minnesota Voters All. v. City of Saint Paul and City of Minneapolis*, 2021 WL 1100901 (D. Minn. Mar. 23, 2021). In that case, Mr. Mohrman and I represented a nonprofit organization whose membership comprised landlords in St. Paul and Minneapolis. Both cities passed ordinances compelling landlords to speak in violation of First Amendment free speech rights. We prevailed on summary judgment following an abbreviated period of informal discovery, and secured over $144,000 in attorneys' fees and costs.

22. In that case, plaintiffs requested a rate of $600 per hour for Mr. Mohrman, $550 per hour for myself, and $230 per hour for Mr. Grzybek. Despite defendants' demand to reduce these rates by 25%, the Court found these rates to be reasonable and did not discount them.

23. In *City of St. Paul,* a central piece of evidence for the reasonable rates were fees Mr. Mohrman, Mr. Grzybek, and I secured in *Minnesota Voters Alliance v. Mansky*, No. 15-1682 (8th Cir. Jan. 8, 2019). There, our rates were awarded as $575, $225, and $525, respectively. *City of St. Paul*, 2021 WL 1100901 at *3.

24. In *Styczinski v. Grace Arnold,* U.S. Court of Appeals No. 21-2936 (Oct. 4, 2022), the Eighth Circuit approved a fee petition where the hourly rates were as follows: Kaardal - $625; Grzybek - $260. Appellants' Motion for Attorney's Fees at 10, (Sep. 14, 2022) (Exhibit B), Order at 1 (Oct 4, 2022) (Exhibit C).

25. My own rate in the present case is based on a comparison between the *City of St. Paul* rates, the *Mansky* rates and the *Styczinski* rates.

26. Unsurprisingly, my reasonable rate has increased since the *Styczinski* was decided two years ago, both due to my additional experience and inflation. Adding $50 to compensate for two more years of experience means that my rate is $675 per hour, in 2022 dollars. Adjusting this number for inflation between September 2022 when that case was decided and today using the Bureau of Labor Statistics CPI Inflation Calculator (https://www.bls.gov/data/inflation_calculator.htm), my reasonable rate has increased to over $700 per hour.

27. Even without an increased rate for his increased experience, Mr. Grzybek's reasonable rate of $260 per hour in 2022 has risen to $275 due to inflation, which is what Plaintiffs request in the present case.

28. Although Ms. Nielsen has not yet been on a case awarding an attorney's fee, I understand that Plaintiffs assess her rate at $450 per hour,

9

based on the Wolters Kluwer 2023 Real Rate Report for a Minneapolis-based litigator. This is the correct rate for her, because that is what she charges MKE's fee paying clients. And "the market rate of legal time is the opportunity cost of that time, the income foregone by representing this plaintiff." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).

29. Additionally, after reviewing the 2023 Report, I am confident that it accurately records rates for Minneapolis-based litigators. I have this confidence based on my personal knowledge of local rates, and because the report accurately captures rates my clients pay for MKE attorneys.

30. Moreover, the services performed in the above captioned matter were reasonably and necessarily performed by MKE in representing Plaintiffs.

31. All time expended by MKE staff was recorded by its attorneys contemporaneously with the work being performed by the attorney performing the work.

32. As part of my responsibility to review the time entries submitted with this fee application, that I reviewed and approved each and every time entry added to the cumulative hours spreadsheet for MKE employees.

33. Turning to the TMS attorneys, I believe that the rates Plaintiffs propose are reasonable based on my years of experience working alongside TMS. I know them to be specialists in the niche and complex area of First

Amendment rights, especially speech in the vicinity of abortion clinics. Headquartered in Chicago, TMS has a national reputation for being experts in this area of law, and they are in litigation on these issues from coast-to-coast.

34. Further, to my knowledge, no other law firm in the country, let alone in Minnesota, has the same level of experience with the Freedom of Access to Clinic Entrances (FACE) Act (42 U.S.C. § 248) as TMS. That Act and its reach and implications have been at issue in this litigation.

35. I note that the partner-level rates Plaintiffs propose for Mr. Breen, Ms. Mannix, Mr. Brooks, and Mr. McHale ($775-$875) falls squarely within the 2023 Real Rate Report's range for Minneapolis-based, partner-level commercial litigation partners, which shows a third-quartile rate of $875 per hour (p.88), equivalent to $900 per hour in December 2024 dollars.[1] The associate rate for Mr. Loyd ($550), a fifth-year associate, is in the 2023 Report's range for a Minneapolis-based, commercial litigation associate, which shows a third-quartile rate of $576 per hour, equivalent to $592 per hour in December 2024. Given these attorneys' years of experience and rare expertise, a fee-paying client would reasonably expect to pay these attorneys these rates or more, and

---

[1] All calculations from https://www.bls.gov/data/inflation_calculator.htm.

11

certainly to pay much higher than the median for their excellent work in a complex area of law.

36. While their experience speaks for itself, these TMS attorneys' credentials are also impressive and broad, which my clients would appreciate. For instance, in addition to the demonstrated skill in court that earned him the position of Head of Litigation for TMS, Mr. Breen earned an electrical engineering degree from Vanderbilt in just three years, and he served in the Illinois General Assembly, rising to become the House Republican Floor Leader, the Representative charged with leading debate on all bills brought to the Floor by the Majority in that storied House. Ms. Mannix is a senior leader at TMS, holding undergraduate and law degrees from the University of Notre Dame, and a noted appellate lawyer, with over 100 appeals to her credit in state and federal courts across the country. In addition to Mr. Brooks' extensive trial and appellate experience, he graduated *summa cum laude* from Wake Forest University, winning the M.D. Phillips Prize in Classical Languages, and after graduating Vanderbilt Law School, he clerked for the Honorable Bernice B. Donald of the United States District Court for the Western District of Tennessee (who later became a U.S. Circuit Judge on the Sixth Circuit). Mr. McHale studied under one of the nation's top First Amendment scholars (Prof. Richard F. Duncan of the Univ. of Nebraska College of Law) and clerked for the Honorable L. Steven

Grasz of the United States Court of Appeals for the Eighth Circuit. Mr. Loyd, an honors graduate of the Georgetown Law School, currently holds the rank of Major in the United States Air Force Reserves, and he earned advanced degrees in the fields of nuclear engineering and theology and bioethics.

37. The rates for the TMS attorneys are also consistent with rates awarded in other recent cases in the District of Minnesota. For instance, I am familiar with *Nguyen v. Foley,* 2022 WL 1026477 (D. Minn. Apr. 6, 2022), where this Court awarded hourly rates of $855 for a partner, equivalent to $933 per hour in December 2024 dollars, and rates ranging from $435 per hour to $560 per hour for associates, equivalent to $475 to $611 per hour in December 2024, in a claim for fees under 42 U.S.C. § 1988. *Nguyen v. Foley,* 2022 WL 1026477, at *4 (D. Minn. Apr. 6, 2022).

38. Another relevant fee award in this district was *Madison v. Willis*, 2011 WL 851479 (D. Minn. Mar. 9, 2011). In that case, the Court determined that $600 per hour was reasonable for a partner in 2011 in fee petition under 42 U.S.C. § 1988. *Id.* at *1. Adjusted for inflation, that rate is equivalent to $847.09 today.

39. I am also aware of *King v. Turner*, 2007 WL 1219308 (D. Minn. Apr. 24, 2007), where the Court found a partner's $500 per hour rate to be reasonable. In 2024 dollars, this would be $763.49.

40. Finally, I am aware of another recent 42 U.S.C. § 1988 award in an opinion from this Court which has now been released after initially being sealed. In *Stevenson v. Bauer*, No. 0:20-cv-02007, Dkt. 103 (D. Minn. Nov. 17, 2022) (attached as Exhibit D), the Court found that reasonable partner rates ranged from $685 to $855, equivalent to $725 to $905 today. *Id.* at 8-11. The Court rejected the City of Minneapolis's proposed alternative range of $620 to $775, due to the attorneys' expertise in civil rights litigation. *Id.* at 9. The Court relied on declarations that these rates were "reasonable hourly rates for civil rights attorneys and support staff in the local legal community." *Id.* at 10. The Court also noted that the rates were justified even without considering "the risk the firm took on in pursuing this case without the assurance of payment unless it was successful in recovery [sic] money for the plaintiff." *Id.* at 10-11.

41. I note that TMS does not (and cannot) take cases on a contingency basis, but instead on a *pro bono* basis. TMS bore the entire financial risk of pursuing this case, with no guarantee of recovery.

42. Although I did not supervise the work of the TMS attorneys, I also reviewed their time entries. I believe that TMS exercised conservative and considerable billing judgment in its entries, which reflect work that was reasonable and necessary to the complete victory Plaintiffs now enjoy. I understand that TMS has not included numerous time entries from other attorneys in the

14

firm who assisted the core team on one-off bases, and I also understand that TMS has entirely cut its paralegal and secretarial time from the claimed time. These steps even more clearly show that the remaining time entries reflect work that was reasonable and necessary to the complete victory in this case, and that a fee-paying client would not request further reductions.

43. I also reviewed the costs associated with this case, which included travel expenses, a discovery vendor, written transcripts, and video recordings of depositions. In the Minneapolis market, it is standard practice to invoice fee paying clients for each of these expenses separately because they are discrete, traceable expenses in the overall litigation cost, and they may vary significantly from case to case. As a result, these expenses would not be incorporated into an attorneys' hourly rate, and clients would expect to be billed separately.

44. In my experience, my clients would find the total number of hours, the attorneys' respective rates, the litigation costs, and the total cost of this case to be reasonable, particularly given the complexity of this case, the Defendant's aggressive defense, and the Plaintiffs' complete victory.

I declare under penalty of perjury that the foregoing is true and correct.

**Dated:** January 23, 2025        /s/ Erick G. Kaardal
                                   Erick G. Kaardal