# EXHIBIT G

```
                 UNITED STATES DISTRICT COURT
                     DISTRICT OF MINNESOTA

-----------------------------------------------------------
PRO-LIFE ACTION MINISTRIES,        Case No. 23-CV-00853
LUCY MALONEY, THOMAS WILKIN,                    (ECT/DJF)
and DEBRA BRAUN,

                 Plaintiffs,

vs.

CITY OF MINNEAPOLIS, a
Minnesota municipality,

                 Defendant.
-----------------------------------------------------------
```

The VIDEOTAPED DEPOSITION of KELLI N. WILLIAMS, taken pursuant to Notice of Taking Deposition, at 150 South Fifth Street, Suite 3100, Minneapolis, Minnesota, before Gail M. Hinrichs, Registered Professional Reporter and Notary Public, taken on the 6th day of September, 2024, commencing at approximately 10:09 a.m.

```
 1                    A P P E A R A N C E S

 2   APPEARING FOR THE PLAINTIFFS:

 3            B. TYLER BROOKS, ESQUIRE
              NATHAN LOYD, ESQUIRE
 4            THOMAS MORE SOCIETY
              309 West Washington Street
 5            Suite 1250
              Chicago, Illinois 60606
 6
              email: tbrooks@thomasmoresociety.org
 7                   nloyd@thomasmoresociety.org

 8   APPEARING FOR THE DEFENDANT:

 9            TRACEY FUSSY, ESQUIRE
              MUNAZZA HUMAYUN, ESQUIRE
10            CITY OF MINNEAPOLIS ATTORNEY'S OFFICE
              105 Fifth Avenue South
11            Suite 200
              Minneapolis, Minnesota 55401
12
              email: Tracey.Fussy@minneapolismn.gov
13                   Munazza.Humayun@minneapolismn.gov

14   APPEARING FOR PLANNED PARENTHOOD AND KELLI WILLIAMS:

15            PETER HENNIGAN, ESQUIRE
              MASLON LLP
16            225 South Sixth Street
              Suite 2900
17            Minneapolis, Minnesota 55402

18            email: Peter.Hennigan@maslon.com

19
     ALSO PRESENT:  Adam Wallin, Video Operator;
20              Tiernee Murphy, Planned Parenthood (via Zoom)

21

22         *The Original is in the possession of Attorney
     B. Tyler Brooks.*
23

24                         * * *

25
```

```
 1                          INDEX
 2   WITNESS                                         PAGE
     KELLI N. WILLIAMS
 3
     Examination by Mr. Brooks ......................    5
 4
 5      EXHIBITS                                     MARKED
 6   1 - City of Mpls Ordinance ....................    9
 7   2 - Proposed Ordinance ........................   84
 8   3 - Draft Ordinance ...........................   93
 9   4 - Email Chain; 8/1/22 .......................   94
10   5 - FACE Act ..................................  102
11   6 - Mpls Code 385.65 ..........................  104
12   7 - Mpls Code 466.240 .........................  105
13   8 - Email w/Attachment; 8/26/22 ...............  107
14   9 - Proposed Ordinance w/Comment ..............  109
15   10 - Email Chain; 8/30/22 .....................  111
16   11 - Email Chain; 9/19/22 .....................  116
17   12 - Email Chain; 10/1/22 .....................  128
18   13 - Email Chain; 10/7/22 .....................  133
19   14 - Email Chain; 10/17/22 ....................  134
20   15 - Email Chain; 10/24/22 ....................  138
21   16 - Email Chain; 10/23/24 ....................  142
22   17 - Email Chain; 10/26/24 ....................  142
23   18 - PowerPoint Presentation ..................  176
24   19 - Request for Committee Action .............  177
25
```

```
 1                    VIDEO OPERATOR:  We are on the
 2      record.  This is the video recorded deposition of
 3      Kelli N. Williams, taken on September 6, 2024.  The
 4      time now is 10:09 a.m.
 5               This deposition is being taken in the
 6      matter of Pro-Life Action Ministries, Lucy Maloney,
 7      Thomas Wilkin and Debra Braun versus City of
 8      Minneapolis, in the United States District Court,
 9      District of Minnesota, case number 23-CV-00853,
10      ECT/DJF.
11               This deposition taking place in
12      Minneapolis, Minnesota.  My name is Adam Wallin.
13      I'm the videographer representing Kirby Kennedy and
14      Associates.
15               Will counsel please identify themselves
16      for the record.
17                    MR. BROOKS:  Yes.  This is Tyler
18      Brooks of the Thomas More Society here for the
19      plaintiffs.
20                    MR. LOYD:  Nathan Loyd from the
21      Thomas More Society here for plaintiffs.
22                    MS. FUSSY:  Tracey Fussy, City of
23      Minneapolis.
24                    MS. HUMAYUN:  Munazza Humayua, City
25      of Minneapolis.
```

```
 1                    MR. HENNIGAN:  Peter Hennigan,
 2    representing the Maslon Law Firm, and I represent
 3    the witness today, Kelli Williams, and with us via
 4    Zoom is Tiernee Murphy, who is in-house counsel at
 5    Planned Parenthood.
 6                    VIDEO OPERATOR:  Will the court
 7    reporter please swear in the witness.
 8                    KELLI N. WILLIAMS,
 9       after having been duly sworn, was examined and
10                 testified on his oath as follows:
11
12                         EXAMINATION
13    BY MR. BROOKS:
14         Q    Good morning, Mr. Williams.
15         A    Hi.
16         Q    As you heard, my name is Tyler Brooks.
17    I'm a lawyer -- one of the lawyers that represents
18    the plaintiffs in this case and you're here for a
19    deposition.
20         A    Yep.
21         Q    And let me just ask you, have you ever
22    given a deposition before?
23         A    No.
24         Q    Okay.  So I'm going to give you just a
25    few little rules and procedural points for our
```

1  names before.
2          Have you ever heard of the FACE Act?
3      A   Yes, sir.
4      Q   What is the FACE Act to you?
5      A   It says anyone trying to block or stop
6  anyone from going to work at a reproductive health
7  center or trying to get health care at a
8  reproductive health care center would be a violation
9  of the FACE Act.
10     Q   Okay.  Is that something that -- again,
11 not asking for a legal opinion -- but something that
12 you consider Pro-Life Action Ministries to have
13 violated at any point at Uptown?
14     A   No.  Obstruct maybe, but no.
15     Q   And, again, not using a legal term, just
16 using your understanding, what do you mean by
17 obstruct?
18     A   Like got in the way or stopped them
19 before entering, but not a FACE Act.
20     Q   How about a Minnesota state ordinance,
21 have you -- are you familiar with any sort of
22 Minnesota state ordinance that is akin to the FACE
23 Act?  Again, I'm not asking for a legal opinion, but
24 just what have you heard.
25     A   There is a state ordinance that is

1  similar to the FACE Act, but it is for all clinics.
2  Like if you were stopping someone from getting a
3  vaccine, there's a state law for that.
4       Q    Okay.  And just if you know, does that
5  ordinance have the number Minnesota Statute
6  609.7495?  Does that sound familiar to you or --
7       A    I don't know the number.
8       Q    Okay.
9       A    But I know you can't prevent anyone from
10 going to their doctor or dentist or anything like
11 that.
12      Q    Okay.  Now I want to ask about a group of
13 individuals that are sometimes called clinic
14 escorts.
15           Are there clinic escorts at the Uptown
16 Planned Parenthood clinic when it's open?
17      A    What do you mean?  Like every day?
18      Q    At any point -- at any point when the
19 Uptown Planned Parenthood is open, are there
20 sometimes clinic escorts?
21      A    Yes, sir.
22      Q    Okay.  And do you know how often they are
23 present?
24      A    Yes, I do.
25      Q    How often are they present?

```
 1    from where we are, and I apologize.
 2              We're going to page 6.  At the top of
 3    page 6 it says Security Volunteer Do's and Don'ts,
 4    and the question I want to ask you about is the first
 5    do.  And, again, I'm going to endeavor to read it
 6    correctly, but tell me if I don't.
 7              Report trespassing, civil rights
 8    infringements, and suspicious behavior to security
 9    immediately.  Now my first question is:  Is the
10    reference to security you and your subordinates?
11        A    Yes, sir.
12        Q    Okay.  And to you, again not asking for a
13    legal opinion, but to you what is meant by civil
14    rights infringements?
15        A    Make sure they're following the rules,
16    not trespassing, not being physical with our
17    patients out there on the sidewalk, you know.
18        Q    Okay.  Speaking only to your --
19        A    We just want to make sure they're not
20    causing any harm or violence to our patients.
21        Q    Speaking only to what you have done in
22    training or supervising escorts, are those the
23    examples that you give to them for what a civil
24    right infringement would be?
25        A    Uh-huh.  You know, it could be FACE Act.
```

```
1    We have got actual FACE Act at our jobs, not in
2    Minneapolis, but during the riots, we actually had
3    somebody took their big Suburban and blocked our
4    driveway.  That would be a civil rights infringement
5    to -- blocking our driveway, blocking patients from
6    entering.
7         Q    Okay.  But that was not at Uptown?
8         A    No, no.
9         Q    Okay.  And are you saying that was the
10   result of Pro-Life Action Ministries?
11        A    I don't think it was.
12        Q    Okay.  And you used a phrase and I just
13   want to understand how you are using the phrase.
14             You said harm or violence, and is there a
15   type of harm that you're concerned about that is not
16   necessarily violent?
17        A    It's very emotional out there.  So we
18   don't want no one fighting or stuff like that.
19        Q    That kind of turns into violence.
20        A    Yeah.
21        Q    So I'm just curious, is there something
22   else that you mean by harm other than violence?
23        A    The protesters, man, we don't want nobody
24   tires getting slashed, nobody windows getting
25   broken.  You know, we got to keep an eye on stuff
```

```
 1          Q    Okay.  And so this means that if you
 2     know, if you learn that police are called by
 3     protesters or others and they come, you will also
 4     write a report?
 5          A    Uh-huh.
 6          Q    Okay.
 7          A    If they were to get in a scuffle or
 8     anything out there, and let's say it's nothing to
 9     even do with us, it's some other person out there,
10     we would still write an incident report.
11          Q    Because it was something that happened
12     around your property?
13          A    Yes, sir.
14          Q    Okay.
15          A    We wrote one this morning for some
16     stabbing that happened last night.
17          Q    At Uptown?
18          A    Yeah.
19          Q    Oh, wow.  Do you know who was involved?
20          A    No, no.
21          Q    I mean --
22          A    The cops always call us and ask for our
23     cameras.  So we just prepared.
24          Q    Oh.  And so just as an example, then, you
25     would prepare a report to document that you provided
```

```
 1    the police with that footage so that they could
 2    hopefully solve that crime?
 3         A    Yeah.
 4         Q    Okay.
 5         A    On this incident we didn't.  He had the
 6    footage from the traffic camera from our driveway.
 7         Q    From --
 8         A    His traffic camera could see our driveway
 9    and he can watch it from our traffic camera.  I
10    remember this incident.
11         Q    Are you referring to a traffic camera
12    that's from MPD?
13         A    Yeah.
14         Q    Okay.  Where is that located in relation
15    to --
16         A    I'm thinking Lagoon and Emerson, right
17    off the streetlight right there.
18              In reviewing this, I remember this whole
19    incident.  She was not near the car at all.
20         Q    Who was not near the car, your person or
21    the protester?
22         A    The protester.
23         Q    Oh, okay, I see.
24              And did you determine that by looking at
25    your video or the police video or both?
```

1    A    We looked at our video and then he saw
2    it, his video, and he determined that, yeah.
3    Q    And the "his" there is the police?
4    A    Yeah.
5         (Whereupon Exhibit 5-D was marked for
6         identification.)
7    BY MR. BROOKS:
8    Q    Do you recognize this report?
9    A    Yeah, I recognize this report.  Yes, sir.
10   Q    Okay.  And this appears to be dated --
11   the report is dated 5/27/2023, incident type
12   suspicious activity.
13        What do you recall about this incident?
14   A    I don't know why it's called suspicious
15   activity.  It was really a complaint.  This officer
16   don't work for us no more, unfortunately.  This was
17   really a complaint that we were getting about the
18   sign and signatures on her car.  On this
19   individual's car.
20   Q    Did you say signatures on her car?
21   A    Signs -- she had some really horrific
22   signs that people in the neighborhood didn't like.
23   Q    Oh.  You're talking about a protester had
24   the sign?
25   A    Yeah.

1                identification.)
2    BY MR. BROOKS:
3         Q    And the bates number on this begins with
4    PPNCS 000097, and the page I want to look at --
5    well, first off let me, do you recognize this
6    document?
7         A    No, sir.
8         Q    You don't, okay.
9              This is not something that you think
10   you've ever seen before?
11        A    This is the first time I've seen this,
12   sir.
13        Q    Okay.  If we could look to the last page,
14   understanding that you've never seen this before --
15        A    Yes, sir.
16        Q    -- I do want to ask this question.
17   There's a reference here in the middle, if you look
18   at the outer dot and then the little unfilled dot
19   and then the black box, and it says Minnesota
20   Statute 609.7495.
21        A    Okay.
22        Q    Okay.  And, again, I know you haven't
23   read this and you didn't write this --
24        A    Uh-huh.
25        Q    -- but is Minnesota Statute 609.7495

```
 1    something that you have talked about in your work,
 2    security work?
 3         A    Is this the ordinance?
 4         Q    This would be the Minnesota analog to the
 5    FACE Act.  I can represent that to you.
 6         A    We talk about the FACE Act, yeah, but,
 7    again, I ain't never seen this before.
 8         Q    Okay.  I don't want to press you on a
 9    document you haven't seen before.  I just didn't
10    know if it triggered anything.
11              (Whereupon Exhibit 8 was marked for
12               identification.)
13    BY MR. BROOKS:
14         Q    Have you seen this document before?
15         A    I think so, yeah.
16         Q    Do you recall the context in which you
17    saw this document?
18         A    It might be in this email trail, that's
19    it.
20         Q    Okay.  And if you look at the top of
21    page -- it ends with bates 123, it's the second page
22    of the stack that I gave you.  It looks like it says
23    Kelli Williams.  Does that look like that's your
24    email address?
25         A    Yes, sir.
```