# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PRO-LIFE ACTION MINISTRIES, LUCY MALONEY, THOMAS WILKIN, and DEBRA BRAUN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MINNEAPOLIS, a Minnesota municipality,<br><br>Defendant. | Case No. 23-CV-00853<br>(ECT/DJF)<br><br>**DECLARATION OF SALLY WAGENMAKER IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES** |

I, Sally Wagemaker, make the following declaration pursuant to 28 U.S.C. § 1746:

1. I am an attorney licensed to practice law in the State of Illinois and have been so licensed since 1995. A copy of my resume from my law firm's website is attached hereto as Exhibit 1.

2. I am submitting this Declaration in support of the Motion for Attorneys' Fees and Costs filed by Plaintiffs Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun. I understand that they are filing this motion pursuant to 42 U.S.C. §1988 as a result of their success in the above-captioned action.

3. As a founding partner of Wagenmaker & Oberly, I have been required to be familiar with the rates charged by attorneys in the Chicago market for purposes of setting billing rates for myself and others at my firm. Obviously, such knowledge is critical for me and attorneys working for me to properly set our hourly rates at our law firm, consistent with market trends and related business factors.

4. Since obtaining my law license, I have litigated cases in several venues including the Circuit Court of Cook County and have been involved with federal court cases too. My experience includes trial and administrative cases, along with involvement in appellate work. I focus my practice on corporate, tax, employment, and real estate matters including disputes, mostly involving nonprofit entities. I also served as the President of the Christian Legal Society, a national association of Christian lawyers, from 2019 through 2021.

5. I am therefore familiar with the typical rates and billing practices of attorneys handling complex issues in the Chicago market including litigation.

6. In preparing this declaration supporting Plaintiffs' motion, I relied on my knowledge of the attorneys representing the Plaintiffs; my knowledge of my own firm's current billing rates for attorneys who have similar background, experience, knowledge, and reputation as Plaintiffs' attorneys; my knowledge

of the rates charged by other Chicago law firms, including those that litigate against my firm, whose attorneys have similar background, experience, knowledge, and reputation; and the Wolters Kluwer 2023 Real Rate Report.

7. Further, I have discussed the case with attorney Peter Breen and reviewed the docket sheets from the District Court. I have also reviewed the Complaint and the billing records Plaintiffs have assembled. Last, I reviewed the backgrounds of the attorneys who appeared in this case.

8. I am extremely familiar with TMS's work and reputation because I have known many of their attorneys for several years and have watched them prevail numerous times in hard-fought cases against powerful opposition, where success looked unlikely. From its founding case, *National Organization for Women, Inc., v. Scheidler*, to the present, TMS has consistently demonstrated this fighting spirit. In *Scheidler*, attorneys who would form TMS, and then TMS itself, defended its clients through three full-dress Supreme Court appeals, losing the first (*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994), and then prevailing on the latter two, *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9 (2006)). I have learned extensive amounts about TMS's high-quality work over at least the last fifteen years through many professional interactions

3

including some collaborative legal work, fundraising communications, special events, and other engagement opportunities with TMS and its attorneys.

9. Based on such experiences, I understand that TMS has been repeatedly successful in federal district court and courts of appeal. For instance, in the District Court, TMS recently obtained an acquittal for the defendant in *United States v. Houck*, No. 2:22-cr-00323 (E.D. Pa. Jan. 15, 2023). In that case, the defendant Mark Houck faced eleven years in prison for violating the Freedom of Access to Clinic Entrances (FACE) Act. TMS's phenomenal work, built upon its unparalleled expertise on the FACE Act, returned Mark to his family despite vigorous prosecution by premier Department of Justice attorneys. TMS is a true leader in pro-life and religious liberty litigation, excelling in dedication, passion, and litigation expertise.

10. I also am aware that TMS secured a $155,000 award of attorney's fees and costs following a swift victory in *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688 (N.D. Ill. 2023). I understand that thanks to an expertly drafted complaint and motion for preliminary injunction, TMS's plaintiffs obtained an injunction just eight days after Governor Pritzker signed the subject bill into law. The State of Illinois later agreed to a permanent injunction and agreed to pay that amount, under 42 U.S.C. § 1988, for a case that ended before discovery had even begun. TMS obtained swift, total relief for its

4

clients, including sidewalk counselors and pregnancy help centers whose speech Illinois had tried to curtail and outlaw. This litigation victory was highly publicized as a landmark victory, significantly advancing free speech constitutional rights of all citizens in and beyond Illinois.

11. As a result of these and many, many other cases, I know that TMS is recognized within the Chicago legal community as a premier firm whose lawyers are on par with the best litigators in the city. TMS's lawyers are recognized for their work at the highest levels of cutting edge First Amendment litigation, and I know the quality of their work easily compares to the best large firms in Chicago. TMS's many hard-won court victories, challenging cases, and steady expansion over the last several years speak volumes as to their attorneys' consistent high caliber.

12. I have reviewed the hours log assembled by the TMS legal team and their proposed billing rates.

13. Based on my knowledge of billing practices of Chicago-based attorneys including litigators, the rates Plaintiffs requested for their TMS attorneys are reasonable and significantly below market for attorneys of this caliber, experience, and specialization.

14. In my firm and most firms in Chicago, attorneys are compensated as partners after they have obtained several years of experience post law-

school. I would expect Michael McHale and Tyler Brooks to be compensated as partners based on their experience of over eight years each, and my fee-paying clients would expect to pay them as such. Managing partners would be expected to charge clients a higher rate than other partners. I think Peter Breen, TMS Executive Vice President & Head of Litigation, and Joan Mannix, TMS Executive Vice President & Managing Counsel, who are both in TMS's management, would reasonably charge similar rates.

15. Associates in my firm charge varying rates depending on when and where they attended law school, their experience, and other notable attributes such as judicial clerkships, military service, other degrees, and honors. I understand that Nathan Loyd graduated with honors from Georgetown Law in 2020 and worked for two years prior to law school as a student associate at a top patent litigation firm. I understand Loyd also holds the rank of Major in the United States Air Force Reserves and has earned advanced degrees in nuclear engineering and theology and bioethics. Based on this experience, fee paying clients involved in complex litigation such as he has handled with TMS would expect to pay him as a top-tier fifth year associate.

16. I understand that Plaintiffs request that the Court award Mr. Breen and Ms. Mannix rates of $875 per hour, $800 per hour for Mr. Brooks, $775 for Mr. McHale, and $550 per hour for Mr. Loyd. From my experience,

these are consistent with the rates that fee paying clients would expect to pay similarly-qualified litigators in Chicago.

17. To cross-check my opinion, I reviewed the 2023 Wolters Kluwer Real Rate Report ("2023 Report"), which is also attached to Mr. Breen's declaration. I was unsurprised to learn that the ranges recorded for Chicago-based litigators accurately reflected the rates I understand that many firms charge in Chicago. For example, I know that partner-level litigators in Chicago can charge over $1,200 per hour, and some associates charge approximately or more than $800 per hour. The 2023 Report shows rates right in this range: $1,235 per hour is the third quartile for partners ($873 per hour is the median), and $828 is the third quartile for associates ($618 is the median). 2023 Report at 36. I therefore believe the 2023 Report is a reliable indicator of market rates for 2023, and TMS's proposed rates are at or below these market rates.

18. I reviewed the time expended and the staffing of the case. Based on my experience and understanding of this litigation, I think that TMS efficiently staffed and prosecuted this case.

19. For example, TMS staffed this case principally with two partners and one associate, with two additional partners providing less than 30 hours each. TMS therefore primarily relied on just three attorneys. A case of this complexity could easily require twice that many attorneys.

20. Based on my review of the hours logs, I think that TMS efficiently staffed all phases of the case, from preparation, through its successful defense against the City's Motion to Dismiss, and through discovery. The majority of TMS's time was expended in discovery, which I understand included at least ten productions by the City, along with productions for Plaintiffs. I understand that the City's productions raised significant issues of privilege, overlap, and improper clawbacks. I also understand Plaintiffs were required to identify and review responsive and nonprivileged documents among about 300,000 potentially responsive items from Plaintiffs. TMS very efficiently staffed this discovery process with a lean team of three attorneys. As well, according to the normal course of litigation in Chicago, TMS appropriately staffed the three depositions taken and the defense of four more by tasking one attorney as lead and an additional attorney (from its core three-person team) assisting the lead attorney. The use of a second attorney was more than appropriate in view of the significant document burden and the complexity and importance of the case—especially in view of the information I was provided that the City had at least two, if not three, attorneys present for all depositions.

21. Based on the amount of work done during discovery and its complexity, the hours TMS expended are reasonable. Had our law firm submitted

similar amounts and quality of work to a fee-paying client for this kind of complex federal litigation, the client would have expected and paid for it.

22. I understand that TMS has not included numerous time entries from other attorneys in the firm who assisted the core team on one-off bases, and I understand that TMS has entirely cut its paralegal and secretarial time from the log. These steps even more clearly show that the remaining time entries reflect work that was reasonable and necessary to the complete victory in this case, and that a fee-paying client would not request further reductions.

23. I also reviewed the costs expended. The amount is reasonable and the expenses are of a nature that they would regularly be billed to clients, to include discovery vendor costs, video depositions, transcripts, and travel expenses.

24. In conclusion, in my experience, my clients would find the attorney hourly rates, the total number of hours, and the litigation costs to be reasonable, particularly given the complexity of this case, the Defendant's aggressive litigation choices, and the complete victory obtained.

I declare under penalty of perjury that the foregoing is true and correct.

**Dated:** January 23, 2025

*/s/ Sally R. Wagenmaker*
Sally Wagenmaker