### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| Pro-Life Action Ministries, Lucy Maloney, Thomas Wilkin, and Debra Braun, | 23-CV-00853 (ECT/DJF) |
| Plaintiffs, v. | **DEFENDANT CITY OF MINNEAPOLIS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PETITION FOR FEES AND COSTS** |
| City of Minneapolis, a Minnesota municipality, Defendant. | |

Defendant City of Minneapolis respectfully submits these objections to Plaintiffs Pro-Life Action Ministries, et al.'s petition for fees and costs. The Court should substantially reduce Plaintiffs' exorbitant request for attorney's fees because Plaintiffs' attorneys' claimed rates are unreasonable, they billed excessively, and they obtained no other relief than a Rule 68 judgment in the amount of $40.

### RELEVANT FACTS

A.     <u>First Complaint, dismissed *sua sponte* by the Court</u>

Plaintiffs commenced this lawsuit on April 5, 2023. Doc. 1. The lawsuit asserted that Minneapolis Code of Ordinances Ch. 405, entitled Security of Reproductive Healthcare Facilities, violated Plaintiffs' First Amendment rights under three theories: free speech (Count I); right of expressive association (Count II); and free exercise of religion (Count III). Doc. 1 at 25-57.

Plaintiffs requested that the Court grant them ten separate forms of relief:

A. Declare the ordinance facially unconstitutional or unconstitutional as applied;

B. Declare the ordinance violated Plaintiffs' First Amendment free speech rights;

C. Declare the ordinance violated Plaintiffs' First Amendment right to expressive association or assembly;

D. Declare the ordinance violated Plaintiffs' First Amendment right to exercise religion;

E. Declare the ordinance violated Plaintiffs' rights under Section 1983;

F. Grant a permanent injunction against the enforcement of the ordinance;

G. Award nominal damages;

H. Award compensatory damages;

I. Award Plaintiffs reasonable attorney fees, litigation expenses, and costs as allowed under 42 U.S.C. § 1988; and

J. All other relief, monetary or otherwise, this Court deemed just or reasonable.

Doc. 1 at 58-59.

On April 13, 2023, the Honorable Jerry W. Blackwell issued an order dismissing, *sua sponte*, the Complaint for failure to comply with Fed. R. Civ. P. 8. Doc. 5. The Court wrote, "the Court finds the Complaint's allegations disorganized and unstructured, making the understanding of the relevant facts and claims hard to discern." *Id*. at 3. The Court noted the Complaint was "substantially repetitive" and "impose[d] an unnecessary burden on both the Court and the Defendant, leading to confusion in some instances." *Id.* at 2. The Court stated, "[t]he Complaint is not the appropriate platform for sprawling and imprecise assertions…" and concluded, "[a]t bottom, this elaborate Complaint is a poignant reminder that doing too much can prove to be not enough." *Id*. at 3.

In their fee petition, Plaintiffs seek $19,842.50[1] for 65.2 hours of time preparing the Complaint Judge Blackwell dismissed *sua sponte*. Doc. 134-12 (billing statement, entries 1/12/23 through 2/13/23). The only professionals listed in billing entries before Judge Blackwell's order are from the Minneapolis firm Mohrman, Kaardal & Erickson ("MKE"). Doc. 134-12 (entries 1/12/23-2/13/23); Doc. 114. The first billing entry from the Thomas More Society ("TMS") was the day after Judge Blackwell's order. Doc. 134-12.

B.    Amended Complaint and Motion to Dismiss

On May 15, 2023, Plaintiffs filed an Amended Complaint, asserting the same claims and seeking the same relief. Doc. 7 at 18-33. The City moved to dismiss. Doc. 10.

This Court, the Honorable Eric C. Tostrud presiding, issued an Opinion and Order granting in part and denying in part the City's motion to dismiss. See Doc. 35. Out of Plaintiff's three claims, the Court dismissed the void-for-vagueness portion of Plaintiffs' free speech claim (Count I), and dismissed all of Plaintiffs' right of expressive association claim (Count II). Doc. 35. In their fee petition, Plaintiffs requested the Court order the City to pay its attorneys $50,180 to oppose the motion to dismiss. See Doc. 134-12 (entries 6/21/23 through 10/17/23).

C.    Discovery

Discovery in this case was limited. Plaintiffs served 21 interrogatories, 21 document requests, and 19 requests for admission upon the City, and the City served 10

---

[1] Plaintiffs' billing statement, Doc. 134-12, does not reflect the rates requested or the claimed cost per entry. For each of Plaintiffs' billing amount set forth in this memorandum, the City multiplied the claimed hours by each biller's requested rate. Lathrop Decl., ¶ 16.

interrogatories and 12 document requests upon Plaintiffs. Lathrop Decl., ¶ 2. The parties combined produced 6,569 pages of documents. *Id.* Planned Parenthood produced 1,220 pages of documents pursuant to a subpoena. The City deposed the Plaintiffs, and Plaintiffs deposed two employees of Planned Parenthood and the City Council member who sponsored the ordinance at issue. *Id.* Plaintiffs noticed a corporate deposition of the City, but the case settled before the deposition occurred. *Id.*

From this modest scale, Plaintiffs ask this Court to order the City to pay Plaintiffs' attorneys $708,467.50 for discovery-related billing entries, representing 89% of the claimed fees. Doc. 133 at 31-32. The billing records reflect voluminous entries for standard litigation tasks. For example, Plaintiffs spent 54.4 attorney hours preparing for the 3-1/2-hour deposition of former City Council member Lisa Goodman, for a total of $37,232.50. Doc. 134-12 (various entries between 8/13/24 and 8/27/24); Lathrop Decl., ¶ 2 (length of deposition). Plaintiffs spent 48.6 attorney hours preparing for the 3-1/4-hour deposition of Planned Parenthood employee Tim Stanley, for a total of $37,535. Doc. 134-12 (various entries between 8/20/24 and 9/16/24); Lathrop Decl., ¶ 2. Plaintiffs billed 42.8 hours, nearly all by two attorneys billing $800 and $875 per hour, for a total of $33,397.50, to draft discovery requests to the City (21 interrogatories, 21 document requests, and 19 requests for admission). Doc. 134-12 (various entries 12/18/23-1/22/24; 3/22/24; 4/5/24-4/10/24). Other litigation tasks were billed in similar fashion. See generally Doc. 134-12. Plaintiffs' lawyers billed 8.3 hours on stipulations to extend the scheduling order (Doc. 134-12 at various entries on 4/16, 4/25, 5/8/, 5/9, 7/8, 7/9, 9/13, 10/29 and 10/30/24), including 3.3 hours on a three-page stipulation to amend the scheduling order (Doc. 79)

that was extremely similar to others filed previously (Docs. 50, 57, 73). Plaintiffs' lawyers billed 4.6 hours preparing *pro hac vice* applications, a task that consists of ordering a certificate and completing a form. (Doc. 134-12 for various entries on 6/21, 6/26, 6/27, 5/2, 5/3 and 5/7/24).

Plaintiffs complain that the City was overly aggressive in discovery, and drove up Plaintiffs' fees. E.g., Doc. 133 at 25, 26, 28, 29. Plaintiffs twice asked the Court to compel the City to produce more documents or information, and both motions were largely unsuccessful.[2] On July 11, 2024, the Honorable Magistrate Judge Dulce J. Foster held an Informal Dispute Resolution conference about numerous discovery disputes. *See* Doc. 60. Among other things, Plaintiffs asked the Court to order the City to re-collect documents. See Doc. 121 at 5-9. The City noted that Plaintiffs had never accepted the City's offer to meet and confer on search terms and custodians. *Id*. at 14. Judge Foster denied Plaintiffs' request, noting, "the way to resolve these -- this issue is the thing that it sounds like you initially rejected out of hand, which is you have a meet and confer and you talk about search terms and custodians." *Id*. at 17-18. Judge Foster agreed with the City's position that a single councilmember did not have the authority to unilaterally waive the City's attorney-client privilege. *Id*. at 42, 48.  The Court ordered the City to re-review the documents on

---

[2] In fee petition motions, trial-court judges need not "become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). However because of the eye-popping fee Plaintiffs have requested for discovery here, and because of Plaintiffs' complaint that the City's "pernicious" "litigation tactics" drove up fees, some discussion of the nature of discovery disputes in this case is warranted. In fact, Judge Foster repeatedly stated that the City's attorneys did not behave "unreasonably" in discovery and that revisions in productions were due to an attempt to hew closely to her IDR guidance. Doc. 122 at 55-56.

its privilege log to determine if the City had waived privilege.[3] The City did so, and found none. Lathrop Decl., ¶ 3.

Plaintiffs later brought a formal motion to compel. Doc. 82. Plaintiffs requested an astonishing breadth of relief, asking that the Court order the City to produce all privileged documents essentially touching on every aspect of the legal dispute,[4] *see* Doc. 88, and arguing that the City had waived subject matter privilege in the case, *see* Doc. 84. In their motion papers, Plaintiffs failed to discuss the pertinent court rule relating to privilege waiver, Fed. R. Evid. 502, and failed to discuss the provision in this case's stipulated protective order directly applicable to the alleged waiver by production of a protected document. *See* Doc. 84. The Court noted in the hearing that Plaintiffs cited caselaw that no longer applied once Rule 502 was added to the federal rules, and that Plaintiffs' argument ignored contrary language in the protective order. Doc. 122 at 8-11. Plaintiffs also puzzlingly argued that the City had waived privilege by producing documents in which City attorneys discussed non-privileged matters with third parties. See Doc. 84 at 10-14. The Court rejected Plaintiffs' arguments that the City's claw-back was ineffective, rejected

---

[3] Plaintiffs' attorney Peter Breen states in his declaration that "the IDR hearing, which was held on July 11, 2024, established that the City waived privilege when one of its attorneys consented to disclosures to third parties, either by personally sharing privileged material, or being included on communications where non-attorney staff shared privileged material." Doc. 134 at 26. This is decidedly *not* what occurred at the IDR hearing, as is set forth in the transcript, Doc. 121.

[4] Due to a technical error of non-attorney staff in the City Attorney's office, some documents that the City's attorneys had coded as privileged in e-discovery software were inadvertently produced to Plaintiffs without protection. See Doc. 95. The City clawed the inadvertently disclosed documents back. See Doc. 94. These can hardly be labeled pernicious litigation tactics.

Plaintiffs' argument that the City waived subject-matter privilege, and rejected Plaintiffs' requests for fees. Doc. 122 at 54-59. The Court noted that Plaintiffs made a new argument in the hearing ("at least here today and I'm not sure that it's fully developed enough") that perhaps a City Attorney did know that a City official shared privileged information with a third party, and ordered the City to reconfirm that this was not the case. *Id*. at 57-58. The City did so and reported to Plaintiffs that the City's attorneys did not know that the official had shared privileged information. Lathrop Decl., ¶ 4; Ex. 1 (Humayun 12/17/24 letter). Because this review confirmed that the City's attorneys did not know the privileged information was being shared, the City produced no previously-withheld documents to Plaintiffs pursuant to this review. Lathrop Decl., ¶ 4.

    D.    <u>Plaintiffs' settlement demand</u>

On November 5, 2024, Plaintiffs' counsel sent the City's lawyers a settlement demand. Lathrop Decl., Ex. 2. Plaintiffs proposed setting the lawsuit "through entry of an injunction preventing the enforcement or attempted enforcement of Chapter 405 of the Minneapolis Code of Ordinances by the City and an award of nominal damages ($1.00) as well as an award to Plaintiffs of reasonable attorneys' fees and costs of the action, in such amount as either agreed to by the parties or determined by the Court." *Id.* Plaintiffs' proposed settling their claim for attorney's fees and costs for $655,720.[5]

---

[5] Plaintiffs described their settlement demand as based on what they called "Minneapolis rates" which differed in many cases significantly from the rates claimed in their petition:

E.    City amends Chapter 405

On December 5, 2024, the City Council amended Minneapolis Code of Ordinances 405. Lathrop Decl., Ex. 3. The amended language created exceptions for "[a]ny person or group engaging in conduct protected by the United States Constitution, the Minnesota Constitution, or federal or Minnesota law." *Id.* at 2. While Plaintiffs claim that the City then "confirmed that Plaintiffs' sidewalk counseling does not violate Chapter 405" (Doc. 133 at 3), the City never did so. Instead, Plaintiffs' attorneys asked that the City proclaim that the amended ordinance language specifically protected all of Plaintiffs' activity. Lathrop Decl., ¶ 7; Ex. 4 (Brooks 12/10/24 letter). The City's lawyers refused and stated that the amendment only exempted Plaintiffs' actions to the extent their conduct is protected by the federal or state constitution or law. *Id.*, Ex. 5 (Lathrop email 12/10/24).

|  | Rate in settlement demand | Petition rate | Difference |
|---|---|---|---|
| Breen | $750 | $875 | +17% |
| Mannix | $750 | $875 | +17% |
| Kaardal | $750 | $700 | -7% |
| Brooks | $625 | $800 | +28% |
| McHale | $625 | $775 | +24% |
| Loyd | $450 | $550 | +22% |
| Nielsen | $450 | $450 | 0% |
| Grzybek | $250 | $275 | +10% |

Compare Lathrop Decl., Ex. 2 to Doc. 133 at 21.

F.    City makes Rule 68 Offers of Judgment in the amount $10 per Plaintiff, and Plaintiffs accept.

On December 6, 2024, the City served on Plaintiffs Offers of Judgment in the amount of $10 per Plaintiff, "plus reasonable attorneys' fees and costs incurred by Plaintiff prior to the date of this offer; that is, with the costs then accrued. The attorneys' fees and costs will be in an amount to be set by the Court." Doc. 99-1. Plaintiffs accepted the Offers of Judgment on December 18, 2024. Doc. 99. As such, the Court never ruled that the ordinance violated Plaintiffs' rights, never issued declaratory relief, never issued an injunction, and no jury ever awarded Plaintiffs any damages. Plaintiffs' judgment totaled $40.

## ARGUMENT

## I.    PLAINTIFFS' REQUESTED FEES SHOULD BE SUBSTANTIALLY REDUCED, IF NOT DENIED ENTIRELY.

In an action to enforce 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C. § 1988(b). In this case, the Rule 68 offers that Plaintiffs accepted included any *reasonable* attorneys' fees and costs incurred by Plaintiff prior to the date of the offer, in an amount set by the Court. Doc. 99-1. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Whether fees should be awarded is a decision committed to the court's sound discretion and may include a substantial reduction of the requested amount or no fees at all. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (affirming *no* attorney's fee award to the prevailing party under 42 U.S.C. § 1988 because,

as here, the party sought compensatory damages but received only nominal damages). A reasonable fee is one that is adequate to attract competent counsel, but Section 1988 was never intended to produce windfalls to attorneys. *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988); *Blum v. Stenson*, 465 U.S. 886, 897, (1984) (quoting S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, reprinted in 1976 U.S.Code Cong. & Admin.News 5908, 5913); *Farrar*, 506 U.S. at 115. Section 1988 was "not designed as a form of economic relief to improve the financial lot of attorneys, nor… intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

The starting point for determining a reasonable attorney's fee is the "lodestar" calculation, which multiplies (1) the number of hours reasonably expended on the litigation, by (2) a reasonable hourly rate. *Hensley,* 461 U.S. at 433; *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). With regard to hours expended, courts should exclude hours that were not "reasonably expended," such as excessive or redundant hours, or instances where overstaffing or poor billing judgment has occurred. *Hensley*, 461 U.S. at 434.

With regard to a reasonable hourly rate, the Court looks to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S.at 895 n.11.

In determining a reasonable fee, the Court may consider: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073–74 (D. Minn. 2019), citing *Hensley* at 430 n.3.

The "most critical factor" is the plaintiff's degree of success. *Hensley* at 436. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440. In that case, hours reasonably expended on the litigation as a whole multiplied by a reasonable hourly rate may be an excessive amount. *Id*. at 436. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* The Supreme Court has cautioned that this principle is particularly important in complex civil rights litigation, because "the range of possible success is vast" and being the prevailing party "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.*

The Court has discretion to reject Plaintiffs' fee petition outright as unreasonable and excessive, as Section 1988 states the court in its discretion *may* allow the prevailing party a reasonable attorney's fee. Fee petitions may be so shocking and in excess of what is reasonable that they shock the conscience and are denied in full. *See, e.g., Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 99 (4th Cir. 1993) (discussing cases). Here, Plaintiffs' claimed hourly rates are unreasonable, the number of hours they billed are unreasonable, Plaintiffs obtained only $10 in nominal damages per plaintiff and

11

did not obtain significant results from the litigation. The fee petition overall is not supported by the facts or the law, and is so oversized that it gives the strong impression that it seeks to produce a windfall to Plaintiffs' attorneys. On this basis, the Court would be within its discretion to award Plaintiffs zero in fees. If the Court does in its discretion decide to award Plaintiffs some reasonable fees, they should be reduced significantly pursuant to the following analysis.

A.    **Reasonable hourly rates**

The party seeking attorneys' fees must "produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (emphasis added). A reasonable fee is "one that is adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys." *McDonald*, 860 F.2d at 1458 (quoting *Blum*, 465 U.S. at 897). The "skill, experience, and reputation of counsel are key factors bearing on a rate's reasonableness." *Id*. at 1459. Here, Plaintiffs' requested hourly rates are not reflective of rates prevailing in the Minneapolis community for similar services by lawyers of reasonably comparable skill, expertise, and reputation.

|  | Plaintiff's Requested rate |
|---|---|
| Breen | $875 |
| Mannix | $875 |
| Kaardal | $700 |
| Brooks | $800 |
| McHale | $775 |
| Loyd | $550 |
| Nielsen | $450 |

| Grzybek | $275 |
|---------|------|

1. Breen and Mannix

Regarding the $875/hour sought for Breen and Mannix, Plaintiffs have not met their burden to support these exceptionally high rates with evidence. Plaintiffs have not supplied any evidence that any court has awarded any party anything close to $875/hour for Breen or Mannix's time, and the City's counsel was not able to find such evidence despite an exhaustive search. While TMS may have been involved in cases involving the First Amendment, there is nothing in the record showing that they have been awarded high hourly rates for achieving success on the merits in any of those cases. For example, in *Coalition for Life St. Louis v. City of Carbondale*, 2023 WL 4681685 (S.D. Ill. July 6, 2023), a case involving a "bubble zone ordinance," the district court in a one-page order granted Carbondale's motion to dismiss, noting that the plaintiff acknowledged that Supreme Court precedent preclude it from succeeding. *Id*. at *1. The Seventh Circuit affirmed in a one-page opinion. *Coal. Life v. City of Carbondale, Illinois*, No. 23-2367, 2024 WL 1008591, at *1 (7th Cir. Mar. 8, 2024). And contrary to the suggestion in Plaintiffs' memo, the City could find no court that has ever concluded that TMS's lawyers are "leaders in the field" with "extensive experience defending the rights of sidewalk counselors across the country." Doc. 133 at 11.

The declaration of Sally Wagenmaker is not helpful because she has no knowledge of the Twin Cities civil rights attorney community. In fact, she is not a civil rights lawyer in Chicago, either. She is a corporate, tax, employment, and real estate attorney. Doc. 116. Plaintiffs and Wagenmaker's reliance on the Wolters Kluwer Real Rate Report is also

unavailing. First, Plaintiffs attached only a few pages from a document that has over 88 pages, and therefore there is no evidence before the Court establishing foundation for the report, including how or from whom the information was collected, calculated or verified. Second, even the pages submitted are not relevant here. They appear to be rates for an unstated "matter type," rates for commercial litigation, and rates for technology and telecommunications. See Doc. 134-15. Third, the Wolters Kluwer report is so simplified that it is absurd to apply it to the issue here. As the Supreme Court wrote, in the "traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm." *Blum*, 465 U.S. at 896.

Importantly, there are many local attorneys who successfully practice constitutional civil rights litigation who charge far lower than the rates sought by Plaintiffs in this case. Indeed, that TMS retained MKE to litigate this case belies Plaintiffs' argument that they could not find adequate local counsel to represent them. Not only did they find local counsel, TMS paid them apparently to draft the entire initial complaint, as no TMS billing entries appear until after Judge Blackwell dismissed the Complaint *sua sponte*.

Many local attorneys practice proficiently in constitutional claims such as this one, and charge far lower rates than what is sought here. For example, in the well-known local case *Stallings v. Bittell*, which involved a First Amendment free speech and free assembly claim, the plaintiff accepted a Rule 68 offer in the amount of $1.5 million. See 21-cv-02395-ADM-TNL, Docs. 58, 59-1. The plaintiff's attorney is a graduate of Harvard Law School and was named one of Minnesota Lawyer's Attorneys of the Year in 2021. Lathrop

Decl., Ex. 6. That attorney accepted a rate of $450/hour for his work on that case in 2022. *Id;*, Lathrop Decl, ¶ 8. In *Khounedaleth v. City of Minneapolis*, which involved a First Amendment free speech and free assembly claim, the plaintiff accepted a Rule 68 offer. See 20-cv-2325-WMW-BRT, Doc. 42. That plaintiff's attorney accepted $400/hour to resolve the attorneys fee claim in 2022. Lathrop Decl., ¶ 9.

Here, Plaintiffs did not submit any affidavits from *uninvolved* local attorneys to establish that Plaintiffs could not have found adequate local counsel, and instead submitted only one from Plaintiffs' own attorney, Kaardal, who has an interest in this litigation.[6] To meet their burden, fee applicants should include counsels' attestations to their own usual billing rates as well as affidavits from local attorneys on the prevailing market rates in the area for similar work. *W. Virginia Coal. Against Domestic Violence, Inc. v. Morrisey*, No. 2:19-CV-00434, 2023 WL 8582593, at *5 (S.D.W. Va. Dec. 11, 2023), citing *Grissom v. Mills Corp.*, 549 F.3d 313, 322 (4th Cir. 2008); *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 246 (4th Cir. 2009) (affidavit of lead counsel, "standing alone, [was] not sufficient evidence of the prevailing market rates"). Plaintiffs submitted no affidavits from other local attorneys.

Incredibly, the rates sought for Breen and Mannix are even greater than the exceptionally high $855/hour awarded to well-known longtime local civil rights litigator Robert Bennett in *Stevenson v. Bauer* (Doc. 114-4). Respectfully, Plaintiffs' attorneys' work

---

[6] To the extent the Court gives weight to Kaardal's declaration regarding local rates despite his involvement in this case, it should also weigh the declaration of Sara Lathrop, who has practiced Section 1983 law in this district for 17 years and who is exceptionally familiar with the billing rates for constitutional litigators in the local market.

in this case is simply not equivalent to the work performed by Bennett and his team, which includes a 1998 graduate of Cornell Law School who was awarded $530/hour in that case. His teams represent the very upper limit of rates awarded for Section 1983 work locally. Here, as set forth above, the original complaint here was dismissed by the Court *sua sponte*, and Plaintiffs' motion to compel did not discuss or analyze the applicable rule or how the stipulated protective order, which specifically addressed the privilege issue raised, applied. High rates may sometimes be justified because of lawyers' experience and ability to handle a case more efficiently than a lawyer without comparable experience. See *Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995). Here, Plaintiffs' lawyers spent 54.4 hours preparing for a 3-1/2-hour deposition, 48.6 hours preparing for an even shorter one, and billed 42.8 hours for basic discovery requests. They spent 13.1 amending the Complaint. Clearly this is not efficient, expert legal work. In other words, Plaintiffs' lawyers "did not display the excellence, or achieve the time savings, implied by [their] higher rate." *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014).

Considering the work in this case and the record relating to Breen and Mannix's skill and experience, compared against similar services by local lawyers, Breen and Mannix's reasonable rate is at most $400/hour.

2. Brooks

Regarding the $800/hour sought for attorney Brooks,[7] just last month Brooks was awarded $350/hour for his work (the rate he requested) in a Section 1983 First Amendment

---

[7] Brooks's entries account for 54% of the total fees sought. Doc. 133 at 27.

lawsuit. *Hebb v. City of Asheville, N. Carolina*, No. 1:22-CV-00222, 2025 WL 256999, at *7 (W.D.N.C. Jan. 21, 2025). Plaintiffs have sought a "Chicago rate" for Brooks, but he is not a Chicago lawyer. *If* attorneys are "leaders in the field" with "extensive experience," and "able to handle the case in a shorter length of time than a local lawyer, without comparable experience, would have needed" courts may consider paying the "*prevailing rate from which the attorney has traveled*." *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014) (emphasis added). But Brooks' local market is in North Carolina, not Chicago. See Doc. 134-12 (travel to and from North Carolina *e.g.* 6/16, 6/20, 7/3/ and 8/26/24); Lathrop Decl. Ex. 7 (2024 declaration of attorney North Carolina attorney stating the $350/hour rate Brooks requested is "very consistent with the market rate for his level of experience"; Ex. 8 (Brooks law firm website); Ex. 9 (Brooks redacted voting record through Nov. 2024). And as set forth above, the work on this case does not "display the excellence, or achieve the time savings" suggesting a higher rate is warranted. *Miller*, 764 F.3d at 831.

Considering the work in this case and the record relating to Brooks's skill and experience, compared against similar services by local lawyers, his reasonable rate is at most $350/hour, the rate he was awarded last month.

### 3. McHale

Regarding the $775/hour sought for McHale, he never sought *pro hac vice* admission in this district, unlike the other out of state attorneys included in Plaintiffs' petition. *Pro hac vice* rules exist to ensure that an attorney is eligible and qualified to practice law in this district. Without filing a motion for admission *pro hac vice* with the proper supporting documentation, this Court cannot conclude that McHale was ever

qualified to practice law here. *See Shapiro v. Paradise Valley Unified School Dist. No. 69*, 374 F.3d 857, 862 (9th Cir. 2004) (affirming district court's award of attorneys' fees only from date of attorney's admission pro hac vice); *Idaho Sporting Congress, Inc. v. Alexander*, 23 Fed. Appx. 713, 714 (9th Cir. 2001) (failure to properly and timely secure pro hac vice admission before the district court was a sufficient reason to deny application for attorneys' fees); *Gilmore v. Elmwood S., L.L.C.*, 2015 WL 1245770, at *3 (E.D. La. Mar. 18, 2015). The reasonable fee for McHale is therefore $0/hour. If this Court were to award Plaintiffs some fees for McHale's work, it should not be awarded at the rate of an attorney who has been admitted to this Court and instead should be commensurate with a law clerk or paralegal, at most $200/hour.

### 4. Loyd

As for the $550/hour rate asserted for Loyd,[8] as laudable as his military service, computer skill, and homeschooling work may be, those facts have no bearing on a reasonable rate. Like Brooks, he is not a Chicago lawyer; instead has a business address in Alpharetta, Georgia. Lathrop Decl., Ex. 10 (Loyd 2024 lawsuit); Ex. 11 (civil cover sheet). Loyd graduated law school in 2020. Doc. 133 at 19.

Considering the work in this case and the record relating to Loyd's skill and experience, compared against similar services by local lawyers, and compared against the reasonable rate for Brooks (who has 12 years more experience), Loyd's reasonable rate is at most $250/hour.

---

[8] Loyd's entries account for 24% of the total fees sought. Doc. 133 at 27.

5. MKE

As to the rates sought for local firm MKE ($700 for Kaardal, $450 for Nielsen and $275 for Grzybek), Plaintiffs assert that TMS retained and paid MKE at an hourly rate, Kaardal Decl. at 4; Breen Decl., at 7, but curiously Plaintiffs did not submit evidence of the rate in the retainer agreement. This is particularly confounding because Plaintiffs assert that they paid MKE by the hour, which should have made it a fixed cost, but the rates for Kaardal and Grzybek differed between the settlement demand and the fee petition. Compare Lathrop Decl., Ex. 2 to Doc. 133 at 27. In any case, Kaardal was awarded $550 per hour in *Minnesota Voters All. v. City of Saint Paul*, No. 19-CV-0358 (WMW/HB), 2021 WL 1100901, at *2 (D. Minn. Mar. 23, 2021), and if his work in this case had been successful, as it had in Minnesota Voters, perhaps $550 would have been reasonable here. However, here the MKE billing entries were nearly exclusively for drafting the doomed initial Complaint, which was dismissed *sua sponte* by the Court. Without diminishing Kaardal's accomplishments, given Judge Blackwell's order, and the fact that Kaardal only billed for time related to drafting the dismissed Complaint, the reasonable rate for Kaardal in this case is $200. Proportionately, and reflective of the Court's order, MKE associate Nielsen and paralegal Grzybek's reasonable rates are $150 and $100, respectively.

|  | Defendant's requested rate |
|---|---|
| Breen | $400 |
| Mannix | $400 |
| Kaardal | $200 |
| Brooks | $350 |
| McHale | $0 |
| Loyd | $250 |
| Nielsen | $150 |

| Grzybek | $100 |
|---------|------|

**B.    Reasonable hours expended**

With regard to hours expended, courts should exclude hours that were not "reasonably expended," such as excessive or redundant hours, or instances where overstaffing or poor billing judgment has occurred. *Hensley*, 461 U.S. at 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (quotations and citation omitted).

1. Original complaint

On April 13, 2023, the Honorable Jerry W. Blackwell issued an order dismissing, *sua sponte*, the Complaint for failure to comply with Fed. R. Civ. P. 8. Doc. 5. The Court wrote, "the Court finds the Complaint's allegations disorganized and unstructured, making the understanding of the relevant facts and claims hard to discern." *Id*. at 3. The Court noted the Complaint was "substantially repetitive" and "impose[d] an unnecessary burden on both the Court and the Defendant, leading to confusion in some instances." *Id.* at 2. The Court stated, "[t]he Complaint is not the appropriate platform for sprawling and imprecise

assertions…" and concluded, "[a]t bottom, this elaborate Complaint is a poignant reminder that doing too much can prove to be not enough." *Id.* at 3.

In their fee petition, Plaintiffs seek fees for 65.2 hours of time preparing the Complaint Judge Blackwell dismissed *sua sponte*. Doc. 134-12 (billing statement, entries 1/12/23 through 2/13/23). Plaintiffs additionally submitted entries for drafting the Amended Complaint. Given Judge Blackwell's order, none of the hours attributed to the original complaint could have been reasonably expended. Therefore, 60.7 hours should be deducted for Grzybek and 4.5 hours should be deducted for Kaardal.

2. Motion to dismiss

First, the hours Plaintiffs' lawyers billed on their response to the motion to dismiss should be reduced because the Court granted the City's motion with respect to the void-for-vagueness portion of Plaintiffs' free speech claim (Count I), and dismissed all of Plaintiffs' right of expressive association claim (Count II). Doc. 35. Thus, the hours billed for the motion to dismiss should be reduced by 40%. Therefore, 1.12 hours should be deducted for Nielsen, 3.36 hours should be deducted for McHale, 6.92 hours should be deducted for Breen, and 35.5 hours should be deducted for Brooks.

Plaintiffs also billed excessive hours with duplicative staffing of their response to the City's motion to dismiss. Plaintiffs billed for MKE attorney Nielsen's work on Plaintiffs' response to the City's motion to dismiss, including her attendance at the hearing. Yet her involvement and her attendance at the hearing were entirely unnecessary. Plaintiffs have claimed that three attorneys from TMS —Breen, Brooks, and McHale—were heavily involved in responding to the City's Motion to Dismiss. This included their conversing

with one another about the motion and response, reviewing the City's motion paperwork, analyzing, researching, outlining, drafting, preparing for and presenting oral argument, and then reviewing and digesting the Court's order on the motion to dismiss. It is not at all clear, then, why Nielsen's involvement was reasonably necessary. Courts have rejected arguments that such overstaffing and duplicative work are reasonably necessary for purposes of a fee petition, in similar contexts, such as when a corporation engages outside counsel but also insists on its in-house counsel's attendance at and involvement with the litigation. "If corporate entities with in house counsel deem it in their best interest to engage private counsel to assert their claims and at the same time permit their in house attorney to participate in all phases of the litigation, it seems incongruous to expect the losing adversary to finance the services of both." *Minneapolis Star & Trib. Co. v. United States*, 713 F. Supp. 1308, 1312 (D. Minn. 1989). *See also Turner v. Mukasey*, No. 01-CV-1407JMRAJB, 2008 WL 62261, at *6 (D. Minn. Jan. 3, 2008) (reducing by roughly half the amount of time billed for an attorney's initial file review and his review of another attorney's appellate argument because it "replicates work already completed by other lawyers"); *Dinosaur Merch. Bank Ltd. v. Bancservices Int'l LLC*, No. 1:19 CV 84 ACL, 2020 WL 3489344, at *8-*9 (E.D. Mo. June 26, 2020) (reducing fee award to two firms by 50 and 70 percent because of "redundant and excessive work related to the drafting of the Complaint and other pleadings"); *St. Louis Effort for AIDS v. Lindley-Myers*, No. 13-4246-CV-C-ODS, 2018 WL 1528726, at *5 (W.D. Mo. Mar. 28, 2018) (finding "it was not necessary for four attorneys to research, draft, discuss, and edit the motion for preliminary

injunction" and reducing fee award by $85,000). Therefore the remaining 1.68 hours for Nielsen's involvement in the motion to dismiss should be deducted.

### 3. Discovery

Plaintiffs acknowledge that their billing for discovery is enormous, accounting for $708,467.50 out of the total $791,427.50 sought in the petition, or 89.5% of the fees. See Doc. 133 at 27, 31-32. They attempt to blame the City for these costs, but as set forth in the statement of facts, and as established in Judge Foster's rulings, the City never took unreasonable positions in this case. The City did have technical problems with privilege coding on documents in its e-discovery system, and according to Plaintiffs had to reproduce 179 documents. It is hard to fathom how this could have caused Plaintiffs to bill over $700,000 in discovery in approximately one year between when the Court issued its order on the motion to dismiss and when the City sent Offers of Judgment.

The billing records reflect instead voluminous entries for standard litigation tasks. As noted above, Plaintiffs' lawyers spent 54.4 hours preparing for Goodman's 3-1/2-hour deposition, 48.6 hours preparing for Stanley's even shorter one, and billed 42.8 hours to draft 21 interrogatories, 21 document requests, and 19 requests for admission. Doc. 134-12 (various entries between 8/13/24 and 9/16/24); Lathrop Decl., ¶ 2 (length of depositions). Plaintiffs billed 42.8 hours, nearly all by two attorneys billing $800 and $875 per hour, to draft discovery requests 21 interrogatories, 21 document requests, and 19 requests for admission. Lathrop Decl., ¶ 2; Doc. 134-12 (various entries 12/18/23-1/22/24; 3/22/24; 4/5/24-4/10/24). Plaintiffs' lawyers billed 8.3 hours on stipulations to extend the scheduling order (Doc. 134-12 at various entries on 4/16, 4/25, 5/8/, 5/9, 7/8, 7/9, 9/13,

10/29 and 10/30/24), including 3.3 hours on a three-page stipulation to amend the scheduling order (Doc. 79) that was extremely similar to others filed previously (Docs. 50, 57, 73). Plaintiffs' lawyers billed 4.6 hours preparing *pro hac vice* applications, a task that consists of ordering a certificate and completing a form. (Doc. 134-12 for various entries on 6/21, 6/26, 6/27, 5/2, 5/3 and 5/7/24).

Plaintiffs have also argued that the City's depositions of Plaintiffs were unnecessary, criticizing that the City demanded "redundant depositions of Plaintiffs, including *three* sidewalk counselors with no history of violating the FACE Act or Ch. 405, and who had nearly identical experiences with Chapter 405," Doc. 134 at 24-25, and that the depositions were unnecessary and immaterial to any issue in the case Doc. 133 at 25-26. In other words, Plaintiffs' counsel's view was that any evidence obtained at these depositions could have no effect on the outcome of the case, because it was evidence obtained after the ordinance was passed. Despite their conviction that these depositions could not materially affect the outcome of the case, Plaintiffs sent three attorneys to Minneapolis to defend the depositions, see Doc. 134-12, entries 6/16/ to 6/21/24. The staffing was excessive.

Plaintiffs' fees during discovery should also be discounted for pursuing unsuccessful or abandoned discovery IDR and motion practice. *See, e.g., United States v. 27.09 Acres of Land, More or Less, Situated in Town of Harrison & Town of N. Castle*, 43 F.3d 769, 773 (2d Cir. 1994) ("However, where all of the fees were expended on discrete efforts that achieved no appreciable advantage, and where the claim of the prevailing parties rests largely on a result to which the claimant made no contribution, a district court may consider whether special circumstances render an award of attorney's fees less just.")

Plaintiffs should not receive fees for unnecessary work on their IDR and motion to compel discovery from the City, which resulted in their obtaining a tiny fraction of the relief they had sought. In both, Plaintiffs took positions on several issues related to attorney-client privilege and waiver of privilege that were completely unsupported by applicable law. For example, they devoted a significant portion of their motion brief to the bizarre argument that when an attorney for the City requested information from an outside organization (communications on which the City had never asserted attorney-client privilege), that constituted *waiver* of the City's attorney-client privilege. *See* Doc. 84 at 12-14. (This argument showed a failure to grasp the basic concept of when attorney-client privilege applies to a communication in the first place, waiver being an issue that would arise only if a communication was privileged to begin with.)

Also, as noted above, Plaintiffs failed to identify the pertinent rule, and failed to analyze the protective order's impact on the claimed privilege waiver. Judge Foster correctly rejected Plaintiffs' argument. She denied Plaintiffs nearly all the relief they sought and agreed with the City on the vast majority of issues raised, including that the City was entitled to claw back privileged documents that were inadvertently disclosed; and that there had been no subject-matter waiver of the City's attorney-client privilege. Doc. 98. Magistrate Judge Foster also denied Plaintiffs' request for fees and expenses in connection with their motion to compel. *Id.* The narrow relief Plaintiffs received on their motion was an instruction by the Magistrate to the City to inquire with the attorney and staff involved in several attorney-client communications whether the attorney was made aware that staff had disclosed their privileged communications to an outside organization. *Id.* If the inquiry

revealed any such knowledge on the attorney's part and the attorney had not taken steps to prevent disclosure, privilege would be deemed waived and the City was instructed to produce those communications to Plaintiffs. *Id.* The City complied with the instruction and, after completing the required inquiries, determined that no attorney at the City had authorized or been aware of staff's disclosures of privileged communications to any outside party, and no further production to Plaintiffs was warranted. Effectively, then, Plaintiffs' motion to compel was poorly conceived, yielded little and represented a failure to adequately research or brief issues presented to the Court. It also created an unfair burden on the City to repeatedly respond to unfounded arguments. A deduction of at least 75 percent of the fees attributable to meeting and conferring, discussing, planning, writing, and arguing the IDR and motion is warranted.

Plaintiffs also seek fees for 5.9 hours (3.3 for Loyd and 2.6 for Brooks) spent preparing a motion to compel deposition testimony of employees of third party Planned Parenthood, which was never filed. Instead, Plaintiffs capitulated soon thereafter and agreed to Planned Parenthood's main condition for the depositions (which had not changed since before Plaintiffs worked on drafting the motion to compel): that Plaintiffs and Planned Parenthood agree in advance to the specific topics that would and would not be inquired into at the depositions. Plaintiffs make no attempt to explain the necessity of spending extensive time drafting a premature, never-filed motion to compel. These hours were not reasonably expended.

The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection, so trial courts may take into account their overall sense of a suit, and may use

estimates in calculating and allocating an attorney's time. *Fox v. Vice*, 563 U.S. 826, 838 (2011). Here, because of the genuinely gigantic number of billing entries, and the manner in which Plaintiffs' attorneys' approach permeated a one-year discovery period with limited discovery such that the fees totaled over $700,000, it is not practical to address deductions from the discovery period billing statement line by line. See *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (where fee documentation is voluminous, an hour-by-hour review is simply impractical and a waste of judicial resources) (citing cases).

Here, a blanket deduction to entries during the discovery period is warranted. In *Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019), the Eighth Circuit affirmed a reduction of all attorneys by 40% for excessive billing and overstaffing. The court noted that the case was not factually complex and that the volume of discovery and motion practice was relatively modest (ten depositions and five motions). In *Minnesota Voters Alliance*, where the Court declaring two city ordinances facially unconstitutional and enjoined the cities from enforcing them, Judge Wright reduced MKE's total fees by a cumulative 32% for billing excessive time in portions of the lawsuit. *Minnesota Voters All.*, 2021 WL 1100901, at *5-*7 (deducting $69,193.17 from the $213,222.50 attorneys' fees sought by plaintiffs). Here, given that 89% of the total hours were billed during this period, a fair approach to account for the issues would be to deduct 50% of the hours remaining after the other deductions to hours above are made:

|  | Plaintiffs' claimed hours | Defendant's requested reductions | Remainder of hours claimed | Reasonable hours after 50% reduction from remainder for approach to billing and motion practice |
|---|---|---|---|---|
| Breen | 146.1 | 6.92 | 139.18 | 69.59 |
| Mannix | 24.2 | 0 | 24.2 | 12.1 |
| Kaardal | 4.5 | 4.5 | 0 | 0 |
| Brooks | 531.3 | 0 | 531.3 | 265.65 |
| McHale | 10.2 | 3.36 | 6.84 | 3.42 |
| Loyd | 340 | 0 | 340 | 170 |
| Nielsen | 5.9 | 2.8 | 3.1 | 1.55 |
| Grzybek | 60.7 | 60.7 | 0 | 0 |

Therefore, multiplying each biller's reasonable hourly rate by the number of hours reasonably expended on the litigation, the lodestar is calculated as follows:

|  | Defendant's requested rate | Defendant's reasonable hours expended | Lodestar |
|---|---|---|---|
| Breen | $400 | 69.59 | $27,836.00 |
| Mannix | $400 | 12.1 | $4,840 |
| Kaardal | $200 | 0 | 0 |
| Brooks | $350 | 265.65 | $92,977.50 |
| McHale | $0 | 3.42 | 0 |
| Loyd | $250 | 170 | $42,500 |
| Nielsen | $150 | 1.55 | $232.50 |
| Grzybek | $100 | 0 | 0 |
| Total |  |  | $168,386.00 |

## C.    Adjustments to the lodestar

After calculating the lodestar, a court may consider other variable in determining whether it is reasonable, including (1) the time and labor required; (2) the novelty and

28

difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Adventure Creative Grp., Inc. v. CVSL, Inc.*, 412 F. Supp. 3d 1065, 1073–74 (D. Minn. 2019), citing *Hensley* at 430 n.3. However, "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, (1986).

     1.    <u>Plaintiffs are not entitled to an enhancement</u>

Plaintiffs asks for fee enhancement. A fee applicant bears the burden of burden of proving that enhancement is necessary and must produce specific evidence that support such an award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). Enhancement of attorney's fees under Section 1988 is reserved for rare and exceptional circumstances unlike those here. *See Id*. at 552. "Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Id*. (*quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), supplemented, 483 U.S. 711 (1987)). The lodestar method yields a fee that is presumptively sufficient to achieve this objective. *Id*. This presumption is a strong one at that. *Id*. The lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee. *Id*. at 553.

It may be appropriate to enhance a fee where the attorney's performance includes an extraordinary outlay of expenses in exceptionally protracted litigation; or the attorney's performance involves exceptional delay in the payment of fees. *Perdue* at 555–56.

Plaintiffs argue they are entitled to a fee enhancement because they secured a "total victory." To the contrary, Plaintiffs obtained nothing sought in their Amended Complaint except nominal damages totaling $40. Plaintiffs also argue they are entitled to an enhancement because they were forced to undertake an extraordinary outlay of expenses during exceptionally protracted litigation. This is perplexing because (1) Plaintiffs were represented by attorneys working for a pro bono nonprofit whose entire purpose is to represent litigants like Plaintiff free of charge; and (2) the litigation was not protracted, having begun in mid-2023 and where judgment was entered before the close of 2024. See *Christoff v. Unum Life Ins. Co. of Am.*, No. CV 17-3512 (DWF/KMM), 2019 WL 6715067, at *4 (D. Minn. Dec. 10, 2019) (in case stretching just over two years, attorneys not entitled to enhancement due to length and depth of involvement this case required when they are already asking to be paid by the hour).

Plaintiffs cite decades-old Circuit cases to support enhancement. *See Taylor v. Jone*s, 653 F.2d 1193, 1206 (8th Cir. 1981) (affirming 20% enhancement); *Shipes v. Trinity Indus.*, 46 F.3d 67 (5th Cir. 1995) (affirming 33% enhancement). But *Taylor* is not only an enhancement case based on complexity—and in *Perdue*, the Supreme Court held in that complexity generally may not be used as a ground for enhancement—but it is also a case where the complexity enhancement was based on there being two separate trials—whereas, here, there were none. *Taylor*, 653 F.2d at 1206. *Shipes* fares no better. *Shipes* is an

enhancement case about performance—the same factor upon which the United States Supreme Court recognized it had never sustained enhancement. *Shipes*, 46 F.3d 67. Neither *Taylor* nor *Stipes* support enhancement and following either decision simply invites error. Plaintiffs have not met their burden for enhancement.

      2.    <u>The lodestar should be adjusted down due to the degree of success.</u>

After identifying the lodestar, the "most critical factor" in determining a reasonable fee is the plaintiff's degree of success. *Hensley* at 436. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*. at 440. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* The Supreme Court has cautioned that this principle is particularly important in complex civil rights litigation, because "the range of possible success is vast" and being the prevailing party "may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* Indeed, in some circumstances, even a plaintiff who formally prevails under § 1988 should receive no attorney's fees at all. *Farrar,* 506 U.S. at 115, where a plaintiff who sought compensatory damages but received no more than nominal damages and was entitled to no fees at all. *Id.* at 114-15.

Here, Plaintiffs sought "declaratory judgment," "injunctive relief," nominal damages, and compensatory damages. Doc. 7, ¶¶ 117, 130, 147, and p. 32; *see also* Lathrop Decl., Ex. 5 (Rule 26(a)(1) disclosures). The City made a Rule 68 offer to Plaintiffs, offering "to allow Plaintiff Pro-Life Action Ministries to take judgment against Defendant on all claims made or which could have been made in Plaintiff's Amended Complaint *in*

the amount of $10.00 (ten dollars), plus *reasonable* attorneys' fees and costs incurred by Plaintiff prior to the date of this offer; that is, with the costs then accrued." Doc. 99-1 (emphasis added). Plaintiffs accepted that offer. Doc. 99. No injunction or declaratory judgment was ever issued in this case. The Court never ruled that the City's ordinance was unconstitutional. And the Plaintiffs were never awarded compensatory damages. Even the $40 in nominal damages were made via a settlement offer made pursuant to Fed. R. Civ. P. 68, not a decision of the Court.

Even though Plaintiffs obtained none of the relief from this Court that they sought, apart from a $40 judgment of nominal damages, they seek $791,427.50 in attorneys' fees, arguing that they "secured a total victory over Defendant City of Minneapolis." Docs. 132 at 2, 133 at 1.

Plaintiffs point to the City's amendment of the ordinance in December 2024 as evidence of this alleged "total victory." Doc. 133 at 3-4. But the Supreme Court has squarely rejected the idea that a defendant's voluntary change in conduct constitutes "relief" for purposes of determining the *lawsuit's* success. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). "We cannot agree that the term 'prevailing party' authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the 'sought-after destination' without obtaining any judicial relief." *Id.* at 606. The rationale for this principle is sound:

>Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims. For only in that event has there been a determination of the "substantial rights of the parties," which Congress determined was a necessary foundation for departing from the usual rule in this country that each party is to bear the expense of his own attorney.

*Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980), quoted in *Buckhannon*, 532 U.S. at 603.

*Buckhannon* remains good law and has been followed in several Eighth Circuit decisions.

*See Doe v. Nixon*, 716 F.3d 1041, 1051 (8th Cir. 2013) (noting the Supreme Court's rejection of catalyst theory and denying fees and costs because voluntary action taken by government officials did not confer prevailing party status on plaintiffs); *Fish*, 295 F.3d at 852 n. 3 (noting *Buckhannon* decision and finding that, although defendant university promoted 55 women faculty members while class action lawsuit alleging gender discrimination in promotion and other aspects of employment was pending, this was not "success" secured by plaintiffs).

Certainly, *Buckhannon* acknowledged that an award of nominal damages could confer prevailing party status. 532 U.S. at 604. But Plaintiffs seek an end run around *Buckhannon* by trying to claim the City's voluntary amendment of the ordinance *as part of* the judicial "relief" they secured. This they cannot do, under *Buckhannon* and its progeny. Instead, "[t]his litigation accomplished little beyond giving [plaintiffs] the moral satisfaction of knowing that a federal court concluded that their rights had been violated *in some unspecified way*." *Farrar*, 506 U.S. at 114 (citation and quotation omitted; emphasis added). In other words, a judgment granting nominal damages does not equal a pronouncement that the ordinance was unconstitutional.

In short, Plaintiffs are the prevailing party *only* because of the Rule 68 offer of judgment for nominal damages, *not* because of the City's voluntary amendment of its ordinance, and certainly not because of any judicial relief touching on the constitutionality of the ordinance. The question, then, is how much in fees is appropriate for a prevailing party that achieved only nominal damages despite having sought far more substantive relief.

"Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988." *Farrar*, 506 U.S. at 114. "[T]he most critical factor" in deciding the reasonableness of a fee award "is the *degree* of success obtained." *Id.* (emphasis added; citation omitted). "That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Hensley*, 461 U.S. at 436. "A reduced fee award is appropriate if the relief [obtained], however significant, is limited in comparison to the scope of the litigation as a whole." *Id.* at 440; *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("[t]he amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988.").

The degree-of-success inquiry must go beyond symbolic wins to take into account a party's actual success or real-world change in position. In *Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 748 (8th Cir. 2003), for example, a jury found that a challenged hiring decision was motivated by gender and therefore discriminatory, but also found that the defendant employer would not have hired plaintiff even if there had been no

34

discrimination. Thus, plaintiff was awarded no actual damages. *Id.* The Eighth Circuit affirmed the district court's reduction of plaintiff's attorneys' fees in light of this limited "success," finding that "the reduction correctly reflected the 'same decision' verdict." *Id.* at 754.

Here, Plaintiffs filed this lawsuit hoping the Court would declare the City's Security of Reproductive Healthcare Facilities ordinance unconstitutional under three theories, permanently enjoin it, and award Plaintiffs compensatory damages. Plaintiffs achieved none of this success. Plaintiffs cannot boast that they got a federal court to strike down an ordinance related to abortion clinics. Plaintiffs cannot use this case to appeal to the Eighth Circuit in an effort to get binding caselaw permitting abortion clinic "bubble zone laws" overturned at the Supreme Court. Instead, at the outset of the case the Court dismissed the first complaint *sua sponte*, dismissed Plaintiffs' void-for-vagueness portion of their free speech claim, and dismissed Plaintiffs' right of expressive association claim. The Court never declared any portion of the ordinance unconstitutional, and the ordinance was never enjoined. The ordinance is still on the books, and its amendment was voluntary. Plaintiffs won no compensatory damages. The only relief Plaintiffs obtained was a nominal Rule 68 judgment via an accepted settlement offer, not a judicially-created form of relief. Clearly, the degree of Plaintiffs' success here was exceedingly minimal. Accordingly, a reduction to the lodestar amount is warranted. The $40 settlement judgment, compared with the relief sought in the Amended Complaint, is but a fraction of the relief requested. To award Plaintiffs nearly $800,000 for such minimal success would not be just and would be the windfall the Supreme Court warned against in cases like *Farrar*. 506 U.S. at 115. In

*Orduno*, the jury awarded the plaintiff $85,000 in punitive damages, and the court awarded another $15,000 in liquidated damages. 932 F.3d at 720. After deducting 40% of fees for excessive billing, the district court reduced the fees by an additional 20% for limited degree of success, and the Eighth Circuit affirmed. The success obtained here is much smaller than what was achieved in *Orduno*.

Because degree of success is the most critical aspect of determining a reasonable fee award, if Plaintiffs had achieved every form of relief they sought, they would be entitled to the total of reasonable rates multiplied by reasonable hours billed, that is, the full lodestar. If Plaintiffs had even obtained a declaration that the ordinance was even in part unconstitutional under any theory, and obtained an injunction, or if they had been awarded compensatory damages, perhaps they would be entitled to the majority of the lodestar. Plaintiffs achieved none of these, and as degree of success is the most critical factor in determining reasonable fees, the award must reflect the minimal success here. Accordingly, the lodestar amount should be reduced by another 75%.

| Lodestar | Reduction for degree of success | Final reasonable fees |
|---|---|---|
| $168,386 | 75% | $42,096.50 |

## II.    THE CITY DOES NOT OBJECT TO PLAINTIFFS' REQUESTED COSTS AND REQUEST FOR POST-JUDGMENT INTEREST ON ATTORNEYS FEES.

The City does not object to Plaintiffs' requests for costs totaling $60,661.34, and does not object to Plaintiffs' request for post-judgment interest on attorney's fees.

## CONCLUSION

The City respectfully requests that the Court award Plaintiffs $42,096.50 in attorney's fees and $60,661.34 in costs, for a total award of $102,757.84.

Dated: February 20, 2025                Respectfully submitted,

                                        KRISTYN ANDERSON
                                        City Attorney

                                        By *s/ Sara J. Lathrop*
                                        SARA J. LATHROP (# 0310232)
                                        TRACEY N. FUSSY (# 0311807)
                                        MUNAZZA HUMAYUN (# 0390788)
                                        ADAM E. SZYMANSKI (#0397704)
                                        Assistant City Attorneys
                                        Minneapolis City Attorney's Office
                                        City Hall, Room 210
                                        350 South Fifth Street
                                        Minneapolis, MN 55415
                                        (612) 431-1826
                                        sara.lathrop@minneapolismn.gov
                                        tracey.fussy@minneapolismn.gov
                                        munazza.humayun@minneapolismn.gov
                                        adam.szymanski@minneapolismn.gov

                                        *Attorneys for Defendant*
                                        *City of Minneapolis*